IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUITY ANALYTICS, LLC, operating as      :
EQUITY METHODS                            :
14614 North Kierland Boulevard            :
Suite N-240                               :
Scottsdale, AZ 85254,                     :
                                          :
          Plaintiff,                      :
                                          :
     v.                                   :      CIVIL ACTION NO:
                                          :
TIMOTHY D. LUNDIN                         :
2901 18th Street, NW, Apt. 207            :
Washington, D.C. 20009-2956,              :
                                          :
          Defendant.                      :

## COMPLAINT

Equity Analytics, LLC, operating as Equity Methods, by its undersigned attorneys, hereby brings the following Complaint for injunctive relief against Defendant Timothy D. Lundin for (i) breach of contract; (ii) misappropriation and misuse of trade secrets; (iii) conversion of confidential business information; (iv) breach of duty of loyalty; and (v) unfair competition; and in support thereof avers as follows:

## I. INTRODUCTION

1. Equity Analytics, LLC ("Equity Analytics") is a Delaware Corporation maintaining its principal place of business at 14614 North Kierland Boulevard, Suite N-240, Scottsdale, Arizona, 85254 and transacting business in this judicial district. Equity is a citizen of the States of Delaware and Arizona. Equity Analytics, LLC is the assignee of and successor in interest to all rights and obligations of Equity Methods, LLC.

2.  Timothy D. Lundin ("Lundin") is a former employee of Equity Analytics. Defendant Lundin is a citizen and domiciliary of the District of Columbia and, on information and belief, resides at 2901 18th Street, NW, Apt. 201, Washington, D.C. 2009-2956.

3.  Upon information and belief, the Defendant's acts set forth herein, which form the basis for the Plaintiff's claims, occurred in the District of Columbia.  This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

4.  Immediate injunctive relief is sought pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## II.  THE FACTS

5.  Equity Analytics is a global leader in equity award reporting, forecasting and valuation services that helps public and private companies solve their option valuation calculations, assists in option valuation, financial reporting and option expense forecasting to achieve FAS123R compliance.

6.  Defendant Lundin commenced his employment with Equity Analytics on or about, August 25, 2005, rising to the position of Northeast Director of Sales and Business Development.

7.  As a condition of his employment with Equity Analytics, Defendant Lundin executed a Non-Disclosure, Assignment of Intellectual Property and Non-Competition Agreement. See Exhibit "**A**."

8.  Specifically, Defendant Lundin agreed in his Non-Disclosure, Assignment of Intellectual Property and Non-Competition Agreement, inter alia, that:

**Nondisclosure of Confidential Information**

a)    In the course of employment at Equity Methods, employees will have access to confidential information.

b)   For purpose of this Agreement, Confidential Information shall mean information which is not generally known outside of Equity Methods. ... However, Confidential Information shall not include data or other information which is generally known outside Equity Methods or data or information which falls into the public domain through no fault of [the employee].

c)   Employees of Equity Methods, and at all times thereafter, employees shall not directly or indirectly, disclose to anyone outside of Equity Methods any Confidential Information or use any Confidential Information for his/her benefit or for the benefit of others.

d)   Employees of Equity Methods shall not remove Confidential Information or material derived from embodying Confidential Information from Equity Methods premises without the express written consent of one of Equity Methods executive staff members.

**Covenant Not to Compete**

Because the disclosure and/or use of Confidential Information in certain circumstances will cause irreparable damages to Equity Methods, employees covenant and agree as follows:

a)  No staff member employed by Equity Methods shall participate, directly or indirectly, in any capacity, in any business or activity that competes in any manner whatsoever with the business of Equity Methods

b)  For a period of two years after the termination of employment with Equity Methods for any reason, employees shall not, directly or indirectly, in any capacity: (1) accept employment from, render service to (with or without compensation) own or otherwise participate or engage in any business or activity which provides products or services related to analysis of corporate insider activity, analysis of institutional holdings, analysis of fund managers' actions, analysis of earnings quality, analysis of brokers' and analysts' recommendations and forecasts, Section 16 compliance software, option administration and valuation software, wealth identification databases or software, or other products of Equity Methods ongoing business development areas or in business development areas where Equity Methods has instituted research and development efforts, or (2) accept employment from, render services to, or to otherwise participate or engage in any activity, analysis of institutional holdings, analysis of fund managers' actions, analysis of earnings quality, analysis of brokers' and analysts recommendations and forecasts Section 16 compliance software, option administration and valuation software, wealth identification databases or software, for a client with or from which Equity Methods has done or solicited business during the two-year term preceding termination of employment.

Exhibit "**A**" at pp. 1, 3.

9. As a condition of his employment with Equity Analytics, Defendant Lundin executed a <u>Non-Disclosure, Assignment of Intellectual Property and Non-Competition Agreement</u>. <u>See</u> Exhibit "**A**."

10. As a condition of his employment with Equity Analytics, Defendant Lundin also agreed, in writing and on an annual basis, to abide by Equity Analytics' <u>Computer Resource Policy</u>, which provides, in pertinent part, as follows:

### 2. PROHIBITED ACTIVITIES

*Communication of confidential information.*   Unauthorized sending, transmitting, or otherwise disseminating proprietary data or confidential information of the company is strictly prohibited unless it is specifically required to perform the functions of your position.

*       *       *

### 6. MISCELLANEOUS ACTIVITIES

*Compliance with all applicable laws and licenses.*  In their use of Computer Resources, Users must comply with all software licenses; copyright; and all other state, federal and international laws governing intellectual property and on-line activity.

*Other policies applicable.*  In their use of Computer Resources, Users must observe and comply with all other policies and guidelines of the Company.

I have read and agree to comply with the terms of this Policy governing use of EQUITY ANALYTICS, LLC's Computer Resources. I understand that violation of this Policy may result in disciplinary action, including possible termination of employment, and civil and criminal liability.

Exhibit "**B** (emphasis added).

11. In consideration for the above agreements, Equity Analytics: (a) compensated Defendant Lundin and provided him with employment-related benefits; (b) provided Defendant

Lundin with support and training; and (c) provided Defendant Lundin with other good and valuable consideration.

12. As Equity Analytics provided the above consideration to Defendant Lundin, it has satisfied all conditions precedent.

13. Equity Analytics compensated Defendant Lundin at all times during his employment with Equity Analytics, provided Defendant Lundin with opportunities for training, provided Defendant Lundin with extensive support services, paid for facilities, computer equipment, market reporting services, and other business expenses, provided Defendant Lundin with abundant sales opportunities, and provided Defendants with all Equity Analytics' benefits, systems and support.

14. More specifically, Defendant Lundin received many benefits throughout his employment with Equity Analytics.   Equity Analytics compensated Lundin at all times throughout his employment and provided him with employment-related benefits and opportunities.  Equity Analytics provided Defendant Lundin with extensive equity compensation and FAS123(R) training, professional sales training as well as office facilities, secretarial services, computer systems, research, the benefit of Equity Analytics' advertising, goodwill and name recognition and promotional marketing and sales support

15. In connection with his employment at Equity Analytics, Defendant Lundin had access to information regarding Equity Analytics' business, the confidential information contained therein, and specifically the identity of Equity Analytics' customers and prospects, including their names and addresses, and the services provided and/or needed.

17.    Defendant Lundin was terminated in December 2006.

18.    According to a company press release, on or about October 2, 2007, Equity Administration Service, Inc. (EASI), a competitor of Equity Analytics, hired Defendant Lundin as its Director of Sales.

19.    Upon information and belief, for some time prior to his employment with ESAI and immediately thereafter, Equity Analytics believes and therefore avers that Defendant Lundin wrongfully converted Equity Analytics' information to secretly divert Equity Analytics customers to his new employer by the unauthorized use of Equity Analytics' computer system and through interstate commerce.

20.    For some time prior to his employment with ESAI and immediately thereafter, Equity Analytics believes and therefore avers that Defendant Lundin prepared to engage in, engaged in, and continues to engage in, inter alia, the following acts:

(a)  accessing or attempting to access Equity Analytics' computer system with misappropriated user IDs and passwords and without authorization at least twenty-five times between May 28, 2007 and October 28, 2007.

(b)  removing and/or converting for his own use the information contained in confidential Equity Analytics business records, and specifically including Equity Analytics customer account numbers, addresses, telephone numbers, product information, sales history, pricing information and business strategy;

(c)  transmitting verbally, in writing, or otherwise to his new employer and/or others, clients' names and addresses and/or other information contained in the records of Equity Analytics and described supra at sub-paragraph (a);

(d)  using Equity Analytics' misappropriated customer information to solicit Equity Analytics' clients to terminate their relationship with Equity Analytics and transfer their business to EASI; and

(e)  other such acts contrary to the terms, conditions and provisions of his employment agreements and Equity Analytics' guidelines and policies, and/or otherwise in violation of state and/or federal law.

21.    Defendant Lundin's conduct was and is in furtherance of a scheme to obtain and convert to his personal use and gain the information contained in the records of Equity Analytics, the property of Equity Analytics, the names and addresses and other customer information used to conduct business at Equity Analytics, the client lists and contacts of Equity Analytics, the trade secrets of Equity Analytics, confidential information of Equity Analytics, Equity Analytics procedures and systems, Equity Analytics marketing and promotional techniques, and the goodwill generated, directly and indirectly, by his association with Equity Analytics, and to use this information to solicit the Equity Analytics clients Defendant Lundin serviced and whose names became known to Defendant Lundin while employed by Equity Analytics and to transfer business to Defendant Lundin's new employer.

22.    Equity Analytics believes and, therefore, avers that:

(1)    Defendant Lundin has possession or control of extensive confidential Equity Analytics customer information, Equity Analytics proprietary information, Equity Analytics trade secrets, and lists of Equity Analytics customer accounts and/or account information for customers they serviced;

(2)    Defendant Lundin has used and will continue to use this information to solicit Equity Analytics accounts and to divert the business of Equity Analytics customers from Equity Analytics to his new employer; and

(3)    Defendant Lundin will otherwise continue to engage in acts constituting a breach of the terms of his agreements and Equity Analytics' policies and guidelines; a breach of his duty of loyalty; and other tortious conduct, including conversion of trade secrets and unfair competition, as well as other violations of state and federal law.

## COUNT I

## INJUNCTIVE RELIEF

23.     The averments of Paragraphs 1 through 22 are incorporated by reference herein with the same force and effect as if set forth in full below.

24.     By virtue of the foregoing, Equity Analytics has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendant Lundin.

25.     Unless Defendant Lundin is preliminarily and permanently enjoined from the foregoing conduct, Equity Analytics will be irreparably harmed by:

(a)     Disclosure of trade secrets, customer lists, and other confidential information which is solely the property of Equity Analytics and its clients;

(b)     Loss of confidentiality of the information contained in clients' records, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c)     A threat to the enforcement of reasonable contracts; and

(d)     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

26.     Equity Analytics has no adequate remedy at law.

WHEREFORE, Equity Analytics respectfully requests that a Temporary Restraining Order and/or a Preliminary Injunction issue immediately enjoining Defendant

Timothy D. Lundin, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee and/or representative of his new employer from:[1]

(a)  soliciting or otherwise initiating any further contact or communication with any current or prospective client of Equity Analytics (i) whom Defendant Lundin served or whose name became known to Defendant Lundin while in the employ of Equity Analytics or (ii) from the unauthorized access Defendant Lundin obtained to Equity Analytics' trade secrets, for the purpose of advising said clients of his new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any business patronage from Equity Analytics;

(b)  using, disclosing, or transmitting for any purpose, including the solicitation of business or account transfers, the information contained in the records of Equity Analytics;

(c)  destroying, erasing, or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer media) in Defendant Lundin's possession or control which were obtained from or contain information derived from any Equity Analytics records, which pertain to Equity Analytics clients, or which relate to any of the events alleged in the Complaint in this action;

(d)  accessing or attempting to access Equity Analytics' customer information on Salesforce.com; and

---

[1]  Although Lundin's <u>Non-Disclosure, Assignment of Intellectual Property and Non-Competition Agreement</u> prohibits him from working for a competitor, Equity Analytics is not seeking to enforce the non-competition provision of the Agreement.

(e)    any and all other such acts as this Court deems appropriate for injunctive relief.

## COUNT II

## BREACH OF CONTRACT

27.    The allegations of Paragraphs 1 through 26 are incorporated herein by reference with the same force and effect as if set forth in full below.

28.    Defendant Lundin has violated his Agreements with Equity Analytics, as well as Equity Analytics' confidentiality and non-disclosure policies, which Defendant Lundin agreed to abide by in writing.

29.    Defendant Lundin is continuing to violate his contractual obligations under his agreements and other Equity Analytics policies.

30.    As a consequence of the foregoing, Equity Analytics has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, Equity Analytics, LLC requests judgment in its favor and against Defendant Timothy D. Lundin in an amount in excess of $150,000, exclusive of interests and costs.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS
### (A.R.S. § 44-401, et. seq. (2007))

31.    The allegations of Paragraphs 1 through 33 are incorporated herein by reference with the same force and effect as if set forth in full below.

32.    The books and records of Equity Analytics, the confidential information contained therein, and especially the identity of Equity Analytics customers, including their

names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in their Equity Analytics accounts and other financial information, are trade secrets of Equity Analytics subject to protection under Arizona law.

33.    Equity Analytics' customer information is a compilation of information used in Equity Analytics business which gives Equity Analytics an opportunity to obtain a competitive advantage over other competitors who do not know or have access to the contents of this customer list and additional customer related information.

34.    Equity Analytics has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including by having Defendant Lundin and other employees, as a condition of their employment, enter into the agreements described above prohibiting, inter alia, the use and disclosure of such information outside of Equity Analytics.

35.    Equity Analytics believes and therefore avers that Defendant Lundin is presently misusing Equity Analytics' confidential customer information in furtherance of his employment with a direct Equity Analytics competitor and in violation of his agreements not to do so.

36.    The foregoing conduct of Defendant Lundin constitutes a misappropriation and misuse of Equity Analytics' confidential trade secret information in violation of Arizona law.  See A.R.S. § 44-401, et seq.

37.    Equity Analytics believes and therefore avers that Defendant Lundin's actions are willful and malicious, requiring the imposition of exemplary damages.

38.    As a consequence of the foregoing, Equity Analytics has suffered and will continue to suffer irreparable harm and loss.

39.     The foregoing conduct of Defendant Lundin may be restrained by the issuance of an injunction. See A.R.S. § 44-402.

WHEREFORE, Equity Analytics, LLC requests judgment in its favor and against Defendant Timothy D. Lundin in an amount in excess of $150,000, exclusive of interests and costs, exemplary damages, attorney's fees, interests and costs and respectfully requests this Honorable Court enter a Temporary Restraining Order and/or a Preliminary Injunction immediately enjoining Defendant Lundin, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee and/or representative of his new employer as set forth in the *ad damnum* clause to Count I herein,

## COUNT IV

## CONVERSION OF CONFIDENTIAL BUSINESS INFORMATION

40.     The allegations of Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

41.     The foregoing conduct of Defendants constitutes a conversion of Equity Analytics' confidential business information, Equity Analytics' property, and Equity Analytics' proprietary rights and interests.

42.     As a consequence of the foregoing, Equity Analytics has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, Equity Analytics, LLC requests judgment in its favor and against Defendant Timothy D. Lundin in an amount in excess of $150,000, exclusive of interests and costs.

## COUNT V

## BREACH OF DUTY OF LOYALTY

43.    The allegations of Paragraphs 1 through 44 are incorporated herein by reference with the same force and effect as if set forth in full below.

44.    Defendant Lundin has violated the common law duty of loyalty and the fiduciary duty arising under his agreements and relationship with Equity Analytics in that Defendant Lundin secretly conspired with others to deprive Equity Analytics of its clients, business information, and trade secrets, including by, on information and belief, removing from Equity Analytics and transferring to his new employer, a direct competitor of Equity Analytics, or its designee, highly confidential trade secret customer lists and customer information for competitive use adverse to the interests of Equity Analytics.

45.    As a consequence of the foregoing, Equity Analytics has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, Equity Analytics, LLC requests judgment in its favor and against Defendant Timothy D. Lundin in an amount in excess of $150,000, exclusive of interests and costs.

## COUNT VI

## UNFAIR COMPETITION

46.    The allegations of Paragraphs 1 through 45 are incorporated herein by reference with the same force and effect as if set forth in full below.

47.    The foregoing conduct of Defendant Lundin constitutes an unfair method of competition.

48. As a consequence of the foregoing, Defendant Lundin has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, Equity Analytics, LLC requests judgment in its favor and against Defendant Timothy D. Lundin in an amount in excess of $150,000, exclusive of interests and costs.

## COUNT VII

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

49. The allegations of Paragraphs through 48 are incorporated herein by reference with the same force and effect as if set forth in full below.

50. On information and belief, Defendant Lundin intentionally accessed computers and data owned or controlled by Equity Analytics and did so without authorization.

51. On information and belief, Defendant Lundin obtained Equity Analytics' trade secrets, including customer identification, sales information and business strategy information and thereby harmed Equity Analytics.

52. Defendant's acts set forth in detail above violate the Federal Computer Fraud and Abuse Act, codified at 18 U.S.C. § 1030(a).

WHEREFORE, Equity Analytics, LLC requests judgment in its favor and against Defendant Timothy D. Lundin in an amount in excess of $150,000, exclusive of interests and costs.

Respectfully submitted,

MURPHY & SHAFFER LLC

Robert T. Shaffer, III
(MD USDC Bar No. 04074)
John J. Connolly
(MD USDC Bar No. 09537 & DC Bar No. 495388)
Suite 1400
36 South Charles Street
Baltimore, Maryland 21201
Phone:  (410) 783-7000
Fax:  (410) 783-8823

Of Counsel:

Joseph J. McAlee, Esquire
Christopher Y. Young, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
MCS Building
Paoli, Pennsylvania 19301
(610) 408-2031
(610) 854-4302 (telecopy)

# EXHIBIT A

LUNDIN NON-COMPETE AGREEMENT



### *Nondisclosure, Assignment of Intellectual Property and Non-Competition*

Each Employee of Equity Methods is required to sign and date a "Nondisclosure, Assignment of Intellectual Property and Non-Competition Agreement" on their first day of employment. To the extent an employee's agreement included additional provisions, those additional provisions continue in full force and effect and are not superseded by this manual.

### *Nondisclosure of Confidential Information*

a) In the course of employment at Equity Methods, employees will have access to confidential information.

b) For the purposes of this Agreement, Confidential Information shall mean information which is not generally known outside of Equity Methods and shall include, by way of illustration and not of limitation: technical data, computer programs, source code, object code, technical designs or specifications, subroutines, databases, patterns, formulas, processes, techniques, practices, algorithms, surveys, research data, compilations of information, research findings, manuals, research method, documentation, product or service specifications, plans for new or revised products or services, business, marketing, financial or sales records, customer lists, pricing policies, and any other record or information or data relating to Equity Methods present or future business or Equity Methods present or future services and/or products, whether prepared for developed by Equity Methods, or received by Equity Methods from an outside source, and whether revealed to me as an employee or invented, discovered, originated, made, or conceived by me in connection with my employment with Equity Methods  However, Confidential Information shall not include data and information which is generally known outside Equity Methods or data and information which falls into the public domain through no fault of mine.

c) Employees of Equity Methods, and at all times thereafter, employees shall not, directly or indirectly, disclose to anyone outside of Equity Methods any Confidential Information or use any Confidential Information for his/her benefit or for the benefit of others.

d) Employees of Equity Methods shall not remove Confidential Information or material derived from embodying Confidential Information from Equity Methods premises without the express written consent of one of Equity Methods executive staff members.

### *Ownership of Intellectual Property*

a) All Confidential Information, and copies thereof, and all other inventions, discoveries, improvements, ideas, processes, methods, computer programs, and other works of authorship conceived, developed, originated, written, or otherwise made by me, either alone or jointly with others, during the entire period of my employment with Equity Methods whether on Equity Methods premises, at home, or elsewhere which are (1) performed in the course of my employment, or (2) relate to the actual or anticipated business or research  and development efforts of  Equity Methods, or (3) involve the use of Equity Methods time, material, equipment, or facilities or Confidential Information and whether or not patentable, copyrightable, or subject to other forms of protection and whether or not reduced to tangible form or reduced to practice (collectively referred to herein in Intellectual Property) shall be the sole property of Equity Methods

b) Employees hereby assign and agree to assign to Equity Methods all their right, title, and interest throughout the world in and to all Intellectual Property as defined in Paragraph 2a above and to any invention, idea, expression, or work relating to Equity Methods existing or reasonably foreseeable business generated, conceived, first reduced to practice or created anywhere by an employee for one year after the termination of their employment.

c) At any time upon Equity Methods request, and at Equity Methods expense, employees shall execute all documents and perform, without charge to Equity Methods, all lawful acts Equity Methods considers necessary or advisable to perfect, secure, or enforce its rights to Intellectual Property as defined in Paragraph 2a above.

d) Each employee will list on Attachment A all Intellectual Property which they claim as their own and intend to exclude from this Agreement.

## *Return of Property*

At any time upon Equity Methods request, and in any event upon termination of employment with Equity Methods for any reason, employees shall promptly return to Equity Methods all Equity Methods property including, by way of illustration and not of limitation, all copies of documents, papers, or other material in employee possession or under employee control which may contain or be derived from Confidential Information as defined in Paragraph 2a above, together with documents, notes, or other work product which is connected with or derived from employment with Equity Methods

## *Duty to Invent and Disclose*

In addition to other duties and responsibilities, employees have been, and are, hired by Equity Methods to invent, discover, develop, improve, or automate new or existing methods, formulas, algorithms, processes, software tools, products, and other devices relating to, but not limited to, statistical and econometric modeling; analysis of corporate insider trading; analysis of institutional investors' holdings and fund managers' actions; assessment of earnings quality; analysis of brokers' and analysts' recommendations and forecasts; collecting, cleansing, and storing financial data; corporate SEC compliance systems; option and other incentive plans; and wealth identification. Employees shall make and maintain adequate and current written records of all discoveries, inventions, improvements, ideas or innovations and disclose such to Equity Methods promptly after development or any time upon Equity Methods request.

## *Covenant Not to Compete*

Because the disclosure and/or use of Confidential Information in certain circumstances will cause irreparable damage to Equity Methods, employees covenant and agree as follows:

a) No staff member employed by Equity Methods shall participate, directly, or indirectly, in any capacity, in any business or activity that competes in any manner whatsoever with the business of Equity Methods

b) For a period of two years after the termination of employment with Equity Methods for any reason, employees shall not, directly or indirectly, in any capacity: (1) accept employment from, render service to (with or without compensation), own or otherwise participate or engage in any business or activity which provides products or services related to analysis of corporate insider activity, analysis of institutional holdings, analysis of fund managers' actions, analysis of earnings quality, analysis of brokers' and analysts' recommendations and forecasts, Section 16 compliance software, option administration and valuation software, wealth identification databases or software, or other products in Equity Methods ongoing business development areas or in business development areas where Equity Methods has instituted research and development efforts, or (2) accept employment from, render services to, or to otherwise participate or engage in any activity or business relating to the analysis of corporate insider activity, analysis of institutional holdings, analysis of fund managers' actions, analysis of earnings quality, analysis of brokers' and analysts' recommendations and forecasts, Section 16 compliance software, option administration and valuation software, wealth identification databases or software for a client with or from which Equity Methods has done business or solicited business during the two-year period preceding termination of employment.

c) For a period of one year after termination of employment with Equity Methods, for any reason, employees shall not hire or attempt to hire or assist in the hiring by anyone else of any Equity Methods employee or encourage any employee to terminate his or her employment with Equity Methods

*Miscellaneous*

If any provision of this Agreement is unenforceable for any reason, the validity of the remaining provisions shall not be affected. The parties agree and request that the group construe the provision to achieve the parties' intuitions. Equity Methods waiver of, or failure to enforce, any provision of this agreement, shall not constitute a waiver of any other provision of this Agreement.

Employee Signature: _____ / Lundin, Timothy D.

Date Signed: 26 Aug 2005

# EXHIBIT B

COMPUTER RESOURCE USE POLICY



| | |
|---|---|
| **Subject:** | UPDATE TO EXISTING CODE OF CONDUCT POLICY |
| **Date:** | March 14, 2006 |
| **Policy:** | Computer Resource Use Policy |

**Purpose:**

Equity Methods, LLC. (EQUITY METHODS, LLC) relies on its computer network to conduct its business. To ensure that its computer resources are used properly by its employees, independent contractors, agents, and other computer users, EQUITY METHODS, LLC has created this Computer Resource Use Policy.

The rules and obligations described in this Policy apply to all users of EQUITY METHODS, LLC's computer network, wherever they may be located. Violations will be taken very seriously and may result in disciplinary action, including possible termination of employment, and civil and criminal liability.

It is every employee's duty to use EQUITY METHODS, LLC computer resources responsibly, professionally, ethically, and lawfully.

**Definitions:**

From time to time in this Policy, we refer to terms that require definitions: The term *Computer Resources* refers to the EQUITY METHODS, LLC computer network. Specifically, Computer Resources include, but are not limited to: host computers, file servers, application servers, communication servers, mail servers, fax servers, Web servers, workstations, stand-alone computers, laptops, software, data files, and all internal and external computer and communications networks, (for example, Internet, commercial online services, e-mail systems), that may be accessed directly or indirectly from EQUITY METHODS, LLC's computer network.

The term *Users* refers to all employees, independent contractors, consultants, temporary workers, and other persons or entities who use our Computer Resources.

**Policy:**

The Computer Resources are the property of EQUITY METHODS, LLC and may be used only for legitimate business or approved purposes. The User's department manager, prior to use, must approve any Computer Resource use unrelated to the daily business of EQUITY METHODS, LLC in writing. Users are permitted access to the Computer Resources to assist them in performance of their jobs. Use of the computer system is a privilege that may be revoked at any time.

In using or accessing our Computer Resources, Users must comply with the following provisions.

**1   No Expectation of Privacy**

*No expectation of privacy.* The computers and computer accounts given to Users are to assist them in performance of their jobs. Users should not have an expectation of privacy in anything they create, store, send, or receive on the computer system.

*Waiver of privacy rights.* Users expressly waive any right of privacy in anything they create, store, send, or receive on the computer or through the Internet or any other computer network. Users consent to allowing management and authorized EQUITY METHODS staff of EQUITY METHODS, LLC to

access and review all materials Users create, store, send, or receive on the computer or through the Internet or any other computer network. Users understand that EQUITY METHODS, LLC may use human or automated means to monitor use of its Computer Resources.

## 2  Prohibited Activities

*Inappropriate or unlawful material.* Material that is fraudulent, harassing, embarrassing, sexually explicit, profane, obscene, intimidating, defamatory, or otherwise unlawful or inappropriate may not be sent by e-mail or other form of electronic communication, (such as bulletin board systems, newsgroups, chat groups), or displayed on or stored in EQUITY METHODS, LLC's computers. Users encountering or receiving this kind of material should immediately report the incident to their supervisors.

*Prohibited uses.* Without prior written permission from the EQUITY METHODS, LLC Chief Information Officer, EQUITY METHODS, LLC's Computer Resources may not be used for dissemination or storage of commercial or personal advertisements, solicitations, promotions, destructive programs, (that is viruses or self-replicating code), or any other unauthorized use.

*Waste of computer resources.* Users may not deliberately perform acts that waste Computer Resources or unfairly monopolize resources to the exclusion of others. These acts include, but are not limited to, sending mass mailings or chain letters, spending excessive amounts of time on the Internet, engaging in online chat groups, or otherwise creating unnecessary network traffic.

*Communication of confidential information.* Unauthorized sending, transmitting, or otherwise disseminating proprietary data or confidential information of the company is strictly prohibited unless it is specifically required to perform the functions of your position.

## 3  Passwords

*Responsibility for passwords.* Users are responsible for safeguarding their passwords for access to the computer system. Individual passwords should not be printed, stored online, or given to others. Users are responsible for all transactions made using their passwords. No User may access the computer system with another User's password or account.

*Passwords do not imply privacy.* Use of passwords to gain access to the computer system or to encode particular files or messages does not imply that Users have an expectation of privacy in the material they create or receive on the computer system. EQUITY METHODS, LLC has global passwords that permit it access to all material stored on its computer system-regardless of whether that material has been encoded with a particular User's password.

## 4  Security

*Accessing other user's files.* Users may not alter or copy a file belonging to another User without first obtaining permission from the owner of the file. Ability or access to read, alter, or copy a file belonging to another User does not imply permission to read, to alter, or copy that file. Users may not use the computer system to "snoop" or pry into the affairs of other users by unnecessarily reviewing their files or e-mail.

*Accessing other computers and networks.* A User's ability to connect to other computer systems through the network or by a modem does not imply a right to connect to those systems or to make use of those systems unless specifically authorized by the operators of those systems.

*Computer security.* Each User is responsible for ensuring that use of outside computers and networks, such as the Internet, does not compromise the security of EQUITY METHODS, LLC's Computer Resources. This duty includes taking reasonable precautions to prevent intruders from accessing the company's network without authorization and to prevent the introduction and spread of viruses.

## 5 Viruses

*Virus detection.* Viruses can cause substantial damage to computer systems. Each user is responsible for taking reasonable precautions to ensure he or she does not introduce viruses into EQUITY METHODS, LLC's network. To that end, all material received on floppy disk or other magnetic or optical medium and all material downloaded from the Internet or from computers or networks that do not belong to EQUITY METHODS, LLC *MUST* be scanned for viruses and other destructive programs before being placed onto the computer system. Users should understand that their home computers and laptops may contain viruses. All disks transferred from these computers to EQUITY METHODS, LLC's network MUST be scanned for viruses.

*Accessing the Internet.* To ensure security and avoid the spread of viruses, Users accessing the Internet through a computer attached to EQUITY METHODS, LLC's network must do so through an approved Internet firewall. Accessing the Internet directly, by modem, is strictly prohibited unless the computer you are using is not connected to the company's network.

## 6 Miscellaneous

*Compliance with applicable laws and licenses.* In their use of Computer Resources, Users must comply with all software licenses; copyrights; and all other state, federal, and international laws governing intellectual property and online activities.

*Other policies applicable.* In their use of Computer Resources, Users must observe and comply with all other policies and guidelines of the company.

*Amendments and revisions.* This Policy may be amended or revised from time to time as the need arises. Users will be provided with copies of all amendments and revisions.

I have read and agree to comply with the terms of this Policy governing use of EQUITY METHODS, LLC's Computer Resources. I understand that a violation of this Policy may result in disciplinary action, including possible termination of employment, and civil or criminal liability.

Date: _17 March 2006_

_____
Signature

_____
Printed Name

Equity Methods, LLC

---

### *Acknowledgment*

I acknowledge that I have received a written copy of the Internet Usage Policy for Equity Methods, LLC. I understand the terms of this policy and agree to abide by them and to any changes made by the company. I realize that the company's security software may record and store for management use the electronic e-mail messages I send and receive, the Internet address of any site that I visit, and any network activity in which I transmit or receive any kind of file. I understand that any violation of this policy could lead to my dismissal from employment or criminal prosecution.


26 Aug 2005
_____
Date


_____
Employee's Signature


Ludins, Timothy
_____
Name (Printed)

---

**Equity Methods, LLC**

---

## *Acknowledgment*

I acknowledge that I have received a written copy of the Internet Usage Policy for Equity Methods, LLC. I understand the terms of this policy and agree to abide by them and to any changes made by the company. I realize that the company's security software may record and store for management use the electronic e-mail messages I send and receive, the Internet address of any site that I visit, and any network activity in which I transmit or receive any kind of file. I understand that any violation of this policy could lead to my dismissal from employment or criminal prosecution.


*14 MAR 06*
Date

*[signature]*
Employee's Signature

*Timothy Lundin*
Name (Printed)

*Equity Methods HR Policy al.    Procedure Manual*

**Acceptance Policy Document (Required by all employees to sign)**

**This is a copy of the actual form- original forms are located on**

\\Em-storage\EM-Storage\Corporate Compliance Manuals

**Equity Methods LLC**

**Acceptance of Policies and Prcedures Manual**

**I have read, understand and accept the policies and procedures set forth by Equity Methods and agree to abide by them.**

LUNDIN, TIMOTHY D. _____ Printed Name

_____ Signature

26 Aug 2005 _____ Date

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Equity Analytics, LLC, operating as Equity Methods
14614 North Kierland Boulevard, Suite N-240, Scottsdale, AZ 85254
85856

**DEFENDANTS**

Timothy D. Lundin
2901 18th Street, NW, Apt. 207, Washington, DC 20009-2956

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert T. Shaffer, III
(MD USDC Bar No. 04074)
John J. Connolly
(MD USDC Bar No. 09537 & DC Bar No. 495388)
Suite 1400
36 South Charles Street
Baltimore, Maryland 21201

AT

Case: 1:07-cv-02033
Assigned To : Lamberth, Royce C.
Assign. Date : 11/8/2007
Description: TRO/PI

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☒ **D.** *Temporary Restraining Order/Preliminary Injunction*

**Any nature of suit from any category may be selected for this category of case assignment.**

***(If Antitrust, then A governs)***

○ **E.** *General Civil (Other)*    **OR**    ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

2 8 USC § 1331, 332

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

breach of contract, misappropriation and misuse of trade secrets, conversion of confidential business information, breach of duty of loyalty, unfair compet

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ $150,000.00 | Check YES only if demanded in compl. |
|---|---|---|---|
| | | JURY DEMAND: | YES ☐   NO ☒ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

**DATE** November 8, 2007   **SIGNATURE OF ATTORNEY OF RECORD** *Robert Shel...*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.