IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

———————————————————— )
Equity Analytics, LLC,                                    )
operating as Equity Methods,                         )
                                                                     )
      Plaintiff,                                          )
v.                                                                    )          Civil Action No:  07-2033
                                                                     )          (RCL/JMF)
Timothy D. Lundin,                                       )
                                                                     )
      Defendant.                                      )
———————————————————— )

## PLAINTIFF EQUITY ANALYTICS, LLC'S MOTION FOR ORDER AUTHORIZING EXAMINATION OF DEFENDANT'S COMPUTER

Plaintiff Equity Analytics, LLC, respectfully requests this Court enter an Order authorizing it to duplicate and conduct a forensic examination of defendant Timothy D. Lundin's computer hard drives in accordance with a Protocol for Imaging and Review submitted by Equity Analytics, LLC.  The grounds in support of its Motion are set forth in the accompanying Memorandum.

**WHEREFORE**, Equity Analytics, LLC respectfully prays that this Honorable Court grant its Motion and enter the attached Order.

## REQUEST FOR HEARING

Plaintiff respectfully requests a hearing.

## LOCAL RULE CERTIFICATION

Pursuant to LCvR 7(m), counsel hereby certifies that plaintiff's counsel Joseph McAlee has conferred with opposing counsel by telephone for purposes of ascertaining whether there is any opposition to the relief requested in this motion and to narrow the areas of any disagreement. Defendant opposes the Motion.

Respectfully submitted,

MURPHY & SHAFFER LLC

/s/ *Robert T. Shaffer, III*
Robert T. Shaffer, III
Bar No. 04074
36 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone: 410 783-7000
Fax: 410 783-8823
Email: rshaffer@murphyshaffer.com

Of Counsel:

Joseph J. McAlee, Esquire
Christopher Y. Young, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
MCS Building
Paoli, Pennsylvania 19301
Phone:  (610) 408-2000
Fax:  (610) 408-9000
E-mail: jmcalee@rubinfortunato.com

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

_____
                                        )
**Equity Analytics, LLC,**              )
**operating as Equity Methods,**        )
                                        )
      **Plaintiff,**                )
**v.**                                  )    **Civil Action No:  07-2033**
                                        )    **(RCL/JMF)**
**Timothy D. Lundin,**                  )
                                        )
      **Defendant.**                )
_____)

**PLAINTIFF EQUITY ANALYTICS, LLC'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR ORDER
<u>AUTHORIZING EXAMINATION OF DEFENDANT'S COMPUTER</u>**

      Equity Analytics, LLC respectfully requests this Court enter an Order approving a protocol for the forensic examination of defendant Timothy D. Lundin's computer hard drives by a forensic expert of Equity Analytics, LLC's choice.  In support of its motion, Equity Analytics, LLC submits this Memorandum.

**I.      Procedural History**

      This action involves claims for injunctive relief and damages arising from the unlawful misappropriation and misuse by Defendant Timothy Lundin ("Defendant" or "Lundin") of information pertaining to Equity Analytics, LLC ("Plaintiff" or "Equity Analytics") accounts, representing substantial revenue to Equity Analytics, and Defendant's efforts to wrongfully divert these accounts, commissions, and assets for his own benefit.  Equity Analytics filed a Complaint in the this matter, and, at the same time, filed a Motion for a Injunctive Relief requesting, _inter alia,_ the Court enter an Order compelling Lundin, to turn over his computer to

Equity Analytics to allow a forensic expert of its choice to perform a forensic examination on the computer hard drive.

On November 8, 2007, following a hearing, the Court entered an Order granting Equity Analytics's request for injunctive relief. (A copy of the Court's November 8, 2007 Order is attached as Ex. "A.")[1] In addition to placing significant and necessary restraints on the ability of the Defendant to access his computer and use any of the confidential customer information he downloaded from his unauthorized access to the files of Equity Analytics, the November 8th Order required Defendant to turn over his computer to counsel for Equity Analytics, but deferred any forensic examination of the computer. (*See*, Ex. "A", ¶¶ 3 and 5.)

The Court's November 8, 2007 Order also granted the parties leave to conduct discovery in aid of the preliminary injunction. (*See*, Ex. "A", ¶ 7.) From the very beginning of this case, Equity Analytics has sought to examine the hard drive on Defendant's computer in an effort to determine the extent, nature and severity of the violation of its rights following Defendant's unauthorized access to and downloading of the confidential information contained in Equity Analytics's electronic files. While Lundin has agreed to turn over his computer for a forensic examination, the parties have been unable, after months of negotiating, to agree upon a protocol for the examination.

The issue of a protocol for the review of Lundin's computer has been at the forefront of this case since the beginning of the litigation. Lundin was deposed on November 14, 2007, at which time he invoked his right against self-incrimination to questions regarding whether he accessed information from Equity Analytics's Salesforce.com account after his separation from employment. While the invocation of Lundin's Fifth Amendment was resolved in early

---

[1] The Court's November 8th Order was later extended by the Court on November 20, 2007 following the execution of a stipulation by the parties to maintain the status quo by extending the TRO.

December 2007, the issue of a complete forensic examination of Lundin's computer hard drives continued to be an issue. Indeed, while Lundin always conceded Equity Analytics's right to conduct a search of his computer, no forensic examination was scheduled, principally due to Lundin's and his counsel's insistence on the use of "search terms," which Equity Analytics immediately rejected upon the issue first being raised by Lundin, and continues to reject. Equity Analytics continued to request and insist upon a protocol forensic search of Lundin's computer (without the use of search terms), but its efforts were completely frustrated.

After substantial and continuous negotiations, Equity Analytics submitted a proposed protocol to Lundin's counsel on December 20, 2007. Thereafter, Lundin provided Equity Analytics with his response to Equity Analytics's proposed protocol. Equity Analytics provided a revised redlined version of the protocol to Lundin the next day, January 3, 2008. (A copy of the revised redlined version of the protocol and letter transmitting the same are collectively attached hereto as Ex. "B.") Lundin provided Equity Analytics with his response to its protocol shortly before the close of business on January 7, 2008. (A copy of Lundin's proposed Protocol is attached hereto as Ex. "C.") With the exception of new appendices, Lundin's revised Protocol, received on January 7, 2008, varied little from his earlier proposed version. On January 8th, counsel for Equity Analytics advised Lundin's counsel by telephone that it was not possible to bridge the gap between the parties' respective two protocol proposals.

The issue of a protocol for the forensic examination of Mr. Lundin's computer was first addressed by the Court in a Conference Call on December 21, 2007. Subsequent thereto, the Court ordered that if the parties were unable to agree on a protocol for the forensic examination of Mr. Lundin's computer, Equity Analytics was to file a motion for relief on January 8, 2008. Equity Analytics now seeks relief from this Court.

## II.    Argument

Early in this litigation, Lundin proposed the use of "search terms" to locate relevant information contained in the files of the imaged hard drive. Counsel for Equity Analytics has repeatedly insisted that the use of search terms precludes a meaningful review of the imaged hard drives. Lundin downloaded a new operating system on his laptop computer only days before the November 8, 2007 Order was entered and after Equity Analytics provided Lundin with notice it intended to file suit against him.[2] Equity Analytics has consistently maintained that the effect of this action was to override or impair the integrity of files or information on the computer at that time possibly creating fragments of information relevant to the inquiry but difficult to locate without a comprehensive forensic search.

After weeks of discussions, and on the cusp of the date for filing the within motion, Lundin has finally provided a "search protocol." (Appendix A to Ex. "C.")[3] The cursory "search protocol" proposed by Mr. Lundin would not allow the forensic consultant to locate and examine these fragments of information and frustrate the primary purpose behind a forensic examination of the imaged hard drive — i.e., to determine whether the confidential customer information Lundin downloaded from Equity Analytics's electronic files was disseminated to any third party.

Indeed, the "search protocol" does little to provide a road map for the forensic consultant to conduct a competent forensic search. Lundin's identification of "Programs and File Types" at page 1 of Appendix A to Ex. "C" is unnecessarily limiting. Files can be converted from one form to another to disguise their identity. Simply because a file is identified as ".jpg" does not

---

[2] Plaintiff's counsel's letter of November 1, 2007 and the relevant pages of Mr. Lundin's deposition indicating he downloaded a new operating system on or about November 4, 2007 are collectively attached hereto as Ex. "D."

[3] Counsel for Lundin raised the issue of "search terms" as early as November 16, 2007, a process Plaintiff's counsel rejected as impractical, even at that time. Counsel for Mr. Lundin stated as early as November 29, 2007 that he would be providing Plaintiff's counsel with a list of proposed search terms. No search terms were forthcoming until equity Analytics received Lundin's January 7, 2008 proposed protocol.

mean it is a photograph.  For example, if a person downloads an advertisement for an automobile, the use of search terms (such as the word "Jaguar") would identify the advertisement.  However, if a picture or "screen shot" of the advertisement is taken, the use of search terms will most likely *not* identify the advertisement.  It is possible that Equity Analytics information was downloaded and saved in this format, making it very difficult (if not impossible) to locate using Lundin's proposed "search protocol."  Similarly, if there are "fragments" of information which contain Equity Analytics information the key words identified by Lundin will not necessarily reveal that information in a search.

Equity Analytics also has difficulty with that portion of Lundin's proposed Protocol entitled "E-mail."  Equity Analytics does not dispute the information identified by Lundin in this section comprises Lundin's recollection of information he believes to be in his possession and on the hard drives.  However, Lundin's computer hard drives have been in the possession of Lundin's counsel since mid-November 2007. There is undoubtedly more information on Lundin's hard drives than he can not recall at this time.

Moreover, Lundin has only provided information in the "E-mail" section regarding those current and potential clients Equity Analytics suspects Lundin contacted. Lundin has agreed Equity Analytics may search for information regarding any current or prospective client contacts by Lundin subsequent to his termination (Ex. "C" at ¶ 13), yet limits that search to only those clients Equity Analytics has identified it believes were contacted by Lundin. This is unacceptable.  Equity Analytics must be able to search for information regarding any of its client or potential clients, as Lundin has agreed.

The use of "search terms" in a forensic examination is usually mandated when the forensic consultant will be sailing the unchartered waters of a party's computer files resulting in

a "fishing expedition" of that party's potentially personal and confidential information.  *Frees, Inc. v. McMillian*, 2007 U.S. Dist. LEXIS 4343 January 22, 2007, *3 (W.D. La. 2007); *Ameriwood Indus., Inc. v. Liberman*, 2006 U.S. Dist. LEXIS 93380, *5-6, Dec. 27, 2006 (E.D. Mo. 2006).  Cf.  *Caylon v. Mizuho Securities USA, Inc.*, 2007 U.S. Dist. LEXIS 36961, May 18, 2007 (S.D. N.Y. 2007) (discussing the use of search terms in forensic examinations, but declining to order the same).

In this case, Equity Analytics is aware of when Lundin accessed its accounts and what information Lundin downloaded.[4]  Equity Analytics has proposed that this be the starting point for its forensic examination.  (*See* Ex. 1, ¶¶ 6 and 7.)  However, the forensic expert should be allowed to follow where that trail may lead him.  Consequently, while the proposed computer expert does not have a literal "roadmap" to discover what Lundin did with Plaintiff's confidential information after he illegally downloaded it on to his computer, the forensic expert has a starting point for his examination and will be able to find relevant evidence along the way.

Lundin has expressed concerns of confidentiality in relation to the use of search terms. Equity Analytics believes its proposed Protocol for Review and Imaging, attached hereto as Ex. 1, adequately addresses these concerns.  Equity Analytics has proposed a protocol for the examination of the imaged hard drive of Mr. Lundin's computer which is based on that information Equity Analytics has regarding the unauthorized downloads by Lundin.  (*See* Ex. 1, ¶¶ 6 and 7 and footnote 4.)  Equity Analytics has agreed that such a forensic examination will

---

[4] Lundin obtained the user ID of an Equity Analytics employee and logged in or attempted to log in to Equity Analytics' customer and sales database twenty-three times between May 2007 and September 2007.  (*See* Affidavit of Melissa Kirk, ¶¶ 10 through 16, and Supplemental Affidavit of Melissa Kirk, amending original Affidavit, attached hereto.)  Thereafter, Ms. Kirk was able to determine when Lundin logged onto Equity Analytics's accounts, how many files he reviewed, whether he downloaded any files, the number of files downloaded and when he logged off.  (The Affidavit of Melissa Kirk, with exhibits, is attached as Ex. 1 to Memorandum in Support of Injunctive Relief.  The Affidavit of Melissa Kirk (without exhibits) as well as the Supplemental Affidavit and Second Supplemental Affidavit of Melissa Kirk are collectively attached hereto as Ex. "E.")

only take place after the execution of a Confidentiality Agreement by the parties and, further, that any forensic expert that examines Mr. Lundin's computer will be bound by the Confidentiality Agreement.[5]  (*See* Ex. 1, ¶ 4.)  Perhaps, most importantly, Equity Analytics has agreed to allow Lundin and his counsel to review any documents and/or information generated as a result of the forensic review prior to their disclosure to Equity Analytics and the opportunity to object to the disclosure of any privileged or irrelevant materials.  (See Ex. 1, ¶ 8.)  Equity Analytics submits that any concerns of confidentiality are adequately addressed.[6]

Another area of concern is the appearance, for the first time, of Lundin's proposed Confidentiality Agreement and Protective Order (Appendices B and C to Lundin's proposed Protocol at Ex. "C.") Confidentiality Agreements, while common in cases, are often carefully negotiated by the parties. The Confidentiality Agreement put forth by Lundin is broader and more complicated than the Confidentiality Agreement provided to Lundin's counsel nearly two months ago.[7]  Lundin's Confidentiality Agreement encompasses a great many areas and is styled as a proposed Protective Order to be entered by the Court. At no point until now did Lundin insist on a Protective Order. At no point until now did Lundin suggest in anyway there was some problem with the Confidentiality Agreement proposed by Equity Analytics nearly two months ago.  Equity Analytics respectfully submits the Confidentiality Agreement proposed by it is

---

[5] Equity Analytics has provided for the review of the computer by two experts, working in tandem, each of whom will be bound by the Confidentiality Agreement. Lundin did not object to the use of two computer forensic expert, but his proposed protocol does not provide for it.

[6] Plaintiff's Protocol for Review and Imaging also provides for the protection of any material Lundin believes to be confidential or irrelevant to the litigation, even providing for a method to restore information that is mistakenly deleted. (Ex. 1, ¶ 12)

[7] Plaintiff's counsel first provided a copy of the Confidentiality Agreement for review and comment by Lundin's counsel on November 15, 2007.  Plaintiff's counsel thereafter repeatedly requested comments and suggestions on his proposed confidentiality Order, but received none.

narrowly tailored to address the issue currently before the Court and should be the agreement executed by the experts who will conduct the forensic examination.

Equity Analytics has objected to the inclusion of certain factual allegations in certain clauses in Lundin's proposed protocol. (*See* Ex. "C", WHEREAS clauses 1 through 7, pgs. 1 and 2.) Equity Analytics respectfully asserts that in determining the contents of any language in a Court approved stipulation, the relevant inquiry is whether any language in the stipulation is necessary to accomplish the purpose behind the agreement *and* whether any language in the stipulation is necessary to obtain the approval of the Court. The first seven WHEREAS clauses containing a version of certain events in the litigation in Lundin's proposed protocol, are not necessary to accomplish the purpose behind the stipulation, *to wit*, the examination of the hard drives on Mr. Lundin's computer. It is also respectfully submitted the language in these clauses is not required to obtain the approval of protocol by the Court as the issues described therein do not address the burdens or obligations of the parties or the experts bound by the stipulation. The language is superfluous and unnecessary.

Similarly unnecessary are those clauses preserving Lundin's right to assert certain defenses and abrogating the right of the parties to petition the Court for costs. (See Ex. "C", WHEREAS clauses 9 through 11, pgs. 2 and 3.) Stipulating that Lundin does not waive the rights and defenses enumerated in these clauses, Equity Analytics may be waiving the concomitant right to assert Lundin's waiver of a right or defense. Equity Analytics asserts that any issues of the waiver of any defenses or the shifting of any costs are best addressed under the Federal Rules of Civil procedure and appropriate case law, not by agreement of the parties. Additionally, Equity Analytics respectfully submits the language in these clauses is not necessary to accomplish the purpose behind the stipulation or obtain the approval of the Court.

Finally, Equity Analytics has agreed that submission to any forensic review shall *not* be deemed a waiver of the attorney-client privilege, the attorney work-product doctrine or an admission or waiver by any party of the confidential, proprietary, or trade secret status of any information. (*See*, Ex. 1, ¶ 4.)[8]

Lundin has also insisted on the return of Lundin's original hard drives *after* the forensic review but *prior* to the conclusion of the litigation.  Lundin states he has information and documents on the computer hard drives that are necessary for the operation of his business as well as information of a personal nature that is useful to him.  Counsel for Equity Analytics has insisted, verbally and in writing that the hard drives should be maintained in an unaltered state until after the litigation is concluded to prevent any unanticipated evidentiary problems. Specifically, Plaintiff's counsel has stated that if the hard drives are returned to Mr. Lundin for his use prior to the end of the litigation and some evidentiary issue or the issue of spoliation arises, the parties will be unable to review of the original hard drives to resolve the issue because they would have altered by Lundin's use.  Despite requests for any rationale to alleviate Plaintiff's counsel's concerns, Lundin's counsel has provided none.

Lundin has also stated that the forensic expert must address the issue of unauthorized access and issue a report under the Federal rules.  (*See*, Ex. "C", ¶ 13.) Equity Analytics disagrees.  The issue of unauthorized access issue is a question of fact, best addressed by lay

---

[8] Indeed, counsel's research did not yield any cases wherein the parties agreed that by entering into the protocol, one or the other parties would not waive any substantive or jurisdictional defenses.  It is, however, not unusual for the parties to agree or the Court to order that by entering a protocol for forensic review, the parties do not waive any claims of privilege.  *See*, *e.g.*, *Playboy Enterprises, Inc. v. Welles*, et al. 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999) (disclosure of materials to the forensic expert will not result in a waiver of the attorney-client privilege); *Experian Information Solutions, Inc., et al. v. I-Centrix, LLC, et al.*, 2005 U.S. Dist. LEXIS 42868 * 6, July 21, 2005(N.D. Ill. 2005) (same); *Easton Sports, Inc. v. Warrior Lacrosse, Inc., et al.*, 2005 U.S. Dist. LEXIS 37051, September 14, 2005, (E.D. Mich. 2005) (no waiver of attorney-client privilege where forensic consultant was deemed an officer of the court); *Simon Property Group, L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 642 (S.D. Ind. 2000) (same)  Curiously, Lundin provided that any information for his current employer, EASi, would be protected as confidential, but did not extend that same right to Equity Analytics.  (*See*, Ex. "C", WHEREAS clause 9.)

witnesses, not experts.    The forensic experts can describe the recovered information, how the information was recovered and what was done with the recovered information.   However, the issue of unauthorized use is not within the scope of the expert's review or his opinions.

Equity Analytics submits it has been reasonable in its efforts to resolve this matter. However the issues discussed herein, which have been at the forefront of the discovery disputes in this case since the beginning of the litigation, have become intractable requiring the intervention of the Court.

**III.    Conclusion**

For all these reasons, Equity Analytics, LLC requests the Court allow an inspection of the imaged hard drive of Mr. Lundin's laptop computer in accordance with the Protocol for Review and Imaging attached hereto as Ex. 1.

**WHEREFORE**, Equity Analytics, LLC respectfully prays that this Honorable Court grant its Motion and enter the attached Order.

Respectfully submitted,

MURPHY & SHAFFER LLC

/s/ *Robert T. Shaffer, III*
Robert T. Shaffer, III
Bar No. 04074
36 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone: 410 783-7000
Fax: 410 783-8823
Email: rshaffer@murphyshaffer.com

Of Counsel:

Joseph J. McAlee, Esquire
Christopher Y. Young, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
MCS Building
Paoli, Pennsylvania 19301
Phone:  (610) 408-2000
Fax:  (610) 408-9000
E-mail: jmcalee@rubinfortunato.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

_____
                                          )
**Equity Analytics, LLC,**                )
**operating as Equity Methods,**          )
                                          )
    **Plaintiff,**     )
**v.**                                    )    **Civil Action No:  07-2033**
                                          )    **(RCL/JMF)**
**Timothy D. Lundin,**                    )
                                          )
    **Defendant.**     )
_____)

### ORDER

Upon consideration of Plaintiff, Equity Analytics, LLC's Motion for Order Permitting Forensic Examination of Defendant's Computer, defendant's response thereto, and oral argument, if any, it is this ___ day of _____, 2008;

ORDERED that Plaintiff, Equity Analytics, LLC's Motion be and hereby is GRANTED;

ORDERED that defendant shall produce to plaintiff's expert his computer and any external hard drives used by him since termination of his employment at Equity Analytics; and it is further

ORDERED that plaintiff's designated experts shall duplicate and conduct a forensic examination of the defendant's computer and computer hard drives in accordance with the Protocol for Imaging and Review submitted by plaintiff.

BY THE COURT:


_____
Hon. John M. Facciola
United States Magistrate Judge

EXHIBIT "1"

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EQUITY ANALYTICS, LLC, operating as | : | |
| EQUITY METHODS | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 07-2033 |
| | : | (RCL/JMF) |
| TIMOTHY D. LUNDIN | : | |
| | : | |
| Defendant | : | |
| | : | |

**PROTOCOL FOR IMAGING AND REVIEW**

IT IS HEREBY STIPULATED AND AGREED by the undersigned parties as follows:

WHEREAS, Plaintiff Equity Analytics, LLC ("Equity Analytics") and Defendant

Timothy D. Lundin ("Lundin"), by and through their respective counsel, have agreed to allow a

forensic consultant access to the hard drive on Lundin's computer and two external hard drives

owned by Lundin; and

WHEREAS, this process may involve the production or disclosure of information,

documents, or data that is of a personal, private, confidential, proprietary, or business nature

and/or concerns the parties and/or individuals or entities who are or are not parties to this

proceeding; and

WHEREAS, the parties have voluntarily agreed to enter into this Protocol for Imaging

and Review ("Protocol") to provide a process: (1) to allow a forensic consultant to image and

review the original hard drives; (2) require the forensic consultant to produce a report regarding

his or her examination of the imaged hard drives; (3) provide for the retention of the original

hard drives and any imaged hard drives during this litigation; (4) provide for a process for the

deletion of certain information from the original hard drives and the destruction of any imaged hard drives subsequent to the conclusion of this litigation; and:

IT IS HEREBY AGREED, by and between the undersigned parties that the following restrictions and procedures shall apply to the Protocol:

1. The parties agree that FTI Consulting will produce a digital or mirror image of all computers and portable hard drives that have been in Lundin's custody, possession, or control since January 2005, which include, Lundin's Macintosh laptop computer model number, MacBookPro, including its hard drive ("the internal hard drive") and the external hard drives, specifically a Western Digital external hard drive and a LaCie external hard drive, LaCie handheld portable (orange) external hard drive, and a Wolverine MV9000 portable photography hard drive ("the external hard drives"), along with power cables suitable for said hard drives (collectively "the original hard drives").

2. Counsel for Lundin will deliver to FTI Consulting the original hard drives in his possession. FTI consulting will image the original hard drives. The internal hard drive must be imaged using the forensic software EnCase, by Guidance Software, to preserve the electronic media ("original media"). All original media must be protected from contamination by using forensically tested equipment. The external hard drives should be imaged using a hardware based write-blocker, preferably from a well known forensic vendor. The internal hard drive can alternatively be imaged using the provided "Target" mode backup. If this backup method is used, steps must be taken to ensure the geometry of the internal hard drive matches the geometry of the EnCase backup. All actions taken must be logged in an imaging sheet to ensure admissibility. FTI Consulting shall retain possession of the original hard drives for sixty days after the unappealable conclusion of this litigation. Lundin may be present at the imaging of the

2

original hard drives, but shall not interfere with the said imaging. The imaging and deletion service performed by FTI Consulting shall be performed in the Washington, D.C. Metropolitan area.

3. FTI Consulting shall release the imaged hard drives to a forensic consultant retained by Equity Analytics ("the forensic consultant") for review. The forensic consultant will personally take possession of the imaged hard drives. The forensic consultant may designate an assistant to aid him in his review. Lundin shall be permitted to propound reasonable questions, in writing and through counsel for Equity Analytics, to the forensic consultant and his assistant regarding their qualifications and/or expertise. Lundin may, through his counsel, request that the Court rule upon the technical qualifications and/or expertise of the forensic consultant or his assistant if they are challenged by Lundin. Any objection to the technical qualifications and/or expertise of the forensic consultant or his assistant must be made by motion within ten business days of the date of the approval of this agreement by the Court. Lundin's agreement to the use of the forensic consultant and his assistant retained by Equity Analytics shall not be unreasonably withheld.

4. Prior to any examination of the imaged hard drives, the forensic consultant and his assistant shall execute a confidentiality agreement (attached hereto as Exhibit "A") agreed to by the parties. The parties specifically agree the disclosure of any data or documents during the data recovery or subsequent review of the imaged hard drives shall not be deemed a waiver of the attorney-client privilege or any other privilege or waiver of the attorney work-product doctrine. Nor does Equity Analytics's or Lundin's agreement to enter into this Protocol constitute an admission or waiver by any party of the confidential, proprietary, or trade secret

status of any information disclosed as a result of the forensic review of the original hard drives or imaged hard drives.

5.   Counsel for the parties (or their designated representatives) may communicate with the forensic consultant during his review, but such communications must be by email with a copy to opposing counsel.   The forensic consultant may also communicate with counsel for the parties (or their designated representatives) during his review, but such communications must be by email with a copy to opposing counsel.   Except as otherwise provided in this Protocol, neither the forensic consultant nor his assistant shall disclose the contents of any files or documents to Equity Analytics or its counsel or other persons.   Any act or task described in this Protocol as being undertaken by the forensic consultant may be undertaken by the forensic consultant's assistant.

6.   The forensic consultant shall search for information and/or data reasonably believed to be generated by and/or the property of Equity Analytics. ("Equity Analytics material") on the imaged hard drives.   In addition to identifying, copying and cataloguing in a reasonably convenient and searchable form any Equity Analytics material on the imaged hard drives, the forensic consultant shall determine and record when Lundin accessed any Equity Analytics material on Equity Analytics's Salesforce.com account, whether, when and to whom Lundin transmitted any Equity Analytics material and identify the Equity Analytics material so transmitted, as well determine whether Lundin communicated or attempted to communicate with any current client or prospective client of Equity Analytics ("the forensic search").

7.   The forensic consultant shall maintain a copy of any data or information copied during the forensic search.   Within ten business days of the completion of his review, the forensic consultant shall provide to Lundin any data or information copied during the forensic search,

along with, to the extent possible, information showing when any Equity Analytics material was created, accessed, downloaded, transmitted, copied, or deleted by Lundin. The forensic consultant shall also provide Equity Analytics notice, only, of when this information is provided to Lundin. To the extent that documents cannot be retrieved from the imaged hard drives or the documents or data retrieved are less than the whole of data contained on the imaged hard drives, Lundin's counsel shall submit a Declaration to the Court together with a written report signed by the forensic consultant explaining the limits of retrieval achieved. The forensic consultant shall retain a copy of the imaged hard drives and all Equity Analytics material and other information obtained during the forensic search until sixty days after the unappealable conclusion of this litigation.

8. Within ten business days of receipt, Lundin shall review the Equity Analytics materials for privilege and send to counsel for Equity Analytics all non-privileged responsive documents, data or information, as well as a privilege log complying with Federal Rules of Civil Procedure 26(b)(5)(A). Counsel for the parties shall meet and confer either in person or by telephone to resolve any disputes regarding any materials withheld by Lundin within five business days of the receipt of the privilege log. The parties, through counsel, shall advise the Court within five business days after the meeting described in the immediately preceding sentence as to whether there are any disputes regarding the withheld documents and/or information that might need to be resolved by the Court. Nothing in this Protocol shall prevent Equity Analytics from filing a motion to compel if it is unable to resolve a claim of privilege or relevance with Lundin.

9. Within ten business days after any disputes regarding the confidentiality of any data or information have been resolved, the forensic consultant shall prepare a written report which shall set forth in detail the results of the forensic examination, and identify and catalogue any Equity

Analytics material on the imaged hard drives in addition to containing any other information deemed pertinent by the forensic consultant to the forensic examination. .

10. Sixty days after the unappealable conclusion of this litigation, the forensic consultant will provide FTI Consulting with a list of the Equity Analytics material. Within ten business days thereafter, FTI Consulting will delete any Equity Analytics material from the original hard drives based on information provided by the forensic consultant and over write the deleted space to prevent it from being recovered. Sixty days after the unappealable conclusion of this litigation, the forensic consultant will delete any information from the imaged hard drives the parties determine is not Equity Analytics material, but maintain a copy of the deleted material. Equity Analytics will be able to keep copies of any Equity Anlaytics material obtained from the imaged hard drives after the termination or resolution of the litigation.

11. Within 10 days of the deletion of any material from the original hard drives by FTI Consulting, the hard drives will be returned to Lundin for review. If after Lundin reviews the original hard drives and is satisfied the proper information was removed from them, the imaged hard drives (less any Equity Analytics material) and the copy of the deleted information from the imaged hard drives in the possession of the forensic consultant will be destroyed.

12. If after Lundin reviews the original hard drives, he believes information personal to him was inadvertently deleted, that information will be restored using the copy of the deleted information in the possession of the forensic consultant Lundin will have the burden to show that any of the deleted information he wants restored is not Equity Analytics material. Thereafter, if Lundin is satisfied the previously deleted information has been restored, the imaged hard drives (less any Equity Analytics material) and the copy of the deleted information in the forensic consultant's possession will be destroyed.

13. FTI and the forensic consultant will utilize U.S. Department of Defense Standard 522022-M (or other industry standard method) to ensure the complete erasure of any material from the imaged hard drives and the original hard drives. The deletion of any material must be certified by FTI or the forensic consultant in a manner that is acceptable to the parties. Lundin may be present at the deletion of the imaged or original hard drives, but shall not interfere with the same.

14. Sixty days after the unappealable conclusion of this litigation, all reports and copies thereof, generated by the forensic consultant shall be returned to Equity Analytics and destroyed. The return or destruction of reports shall be certified by counsel for Equity Analytics.

15. Any expense or cost associated with this Protocol shall be borne by Equity Analytics.


IT IS SO STIPULATED.


_____            _____
Robert B. Fitzpatrick, Esquire                    Robert T. Shaffer, Esquire
Robert B. Fitzpatrick, PLLC                       Murphy & Shaffer

Attorney for Defendant                            Joseph J. McAlee, Esquire
Timothy D. Lundin                                 Christopher C. Young, Esquire
                                                  Rubin, Fortunato & Harbison P.C.

                                                  Attorneys for Plaintiff
                                                  Equity Analytics, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUITY ANALYTICS, LLC, operating as :
EQUITY METHODS :
 :
        Plaintiff :
 :
    v. : CIVIL ACTION NO. 07-2033
 : (RCL/JMF)
TIMOTHY D. LUNDIN :
 :
        Defendant :
 :

## CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

IT IS HEREBY STIPULATED AND AGREED by the undersigned parties as follows:

WHEREAS, the parties are engaging in discovery that involves the production of

documents and information by Plaintiff Equity Analytics, LLC ("Equity Analytics") and

Defendant Timothy D. Lundin ("Lundin"), by and through their respective counsel, solely in

connection with this action; and

WHEREAS, such discovery may involve the production or disclosure of information,

documents, or data that is of a personal, private, confidential, proprietary, or business nature

and/or concerns individuals or entities who are or are not parties to this proceeding, including but

not limited to information, documents, or data concerning Equity Analytics' current or former

employees, customers and/or clients, and/or confidential or proprietary information about Equity

Analytics (hereinafter "Confidential Information");[1] and

---

[1] This Agreement shall not be construed to be an admission or waiver by any party of the
confidential, proprietary, or trade secret status of the Confidential Information disclosed in the
parties' production of documents pursuant to discovery.

WHEREAS, the parties have voluntarily agreed to enter into this Confidentiality Agreement to limit the use and disclosure of Confidential Information provided hereunder by Equity Analytics and Lundin, and/or any third parties:

IT IS HEREBY AGREED, by and between the undersigned parties, that the following restrictions and procedures shall apply to Confidential Information produced by the parties or by any third party (regardless of whether such Confidential Information is produced informally or in response to a formal discovery request or subpoena):

1.    To preserve the confidentiality of Confidential Information, or any part thereof, a party shall so designate in writing any such Confidential Information or shall stamp "Confidential" on such Confidential Information prior to its production or disclosure.  The parties shall act in good faith in designating documents to be "Confidential" and shall take reasonable measures to determine actual confidentiality before designating documents as such.

2.    Confidential Information so designated by the parties pursuant to the terms of this Confidentiality Agreement shall be maintained in strict confidence by the parties, to be used only for the purposes of this arbitration action, and shall not be disclosed by the non-designating parties to any person, except to:

(a)    the parties themselves;

(b)    counsel of record for the parties in this action only, including in-house counsel, partners, associates, co-counsel, legal assistants, secretaries or other support staff of such counsel assigned to assist such counsel;

(c)    experts, consultants, accountants and other third parties expressly retained or employed by counsel of record for the parties to assist in the preparation of this action,

whether or not said third parties shall subsequently testify, provided such third parties are first given a copy of this Confidentiality Agreement and agree to be bound by its terms;

        (d)     any person from whom testimony is taken in this action;

        (e)     any court reporter or Court personnel engaged in proceedings in this action;

        (f)     the Judge(s) assigned to hear this action;

        (g)     the Department of Justice, the attorneys general for the several states, the prosecuting attorney for the District of Columbia or any other government agency having jurisdiction over a party to this matter (hereinafter "government agency") pursuant to an inquiry initiated by them; and

        (h)     as otherwise required by law.

3.     Any person receiving Confidential Information shall not reveal any part of such Confidential Information to, or discuss such Confidential Information with, any person who is not entitled to disclosure of such materials under paragraph 2 above.

4.     Any person to whom Confidential Information is disclosed pursuant to paragraph 2(c) hereof shall be required, prior to and as a condition of seeing any such Confidential Information, to sign the acknowledgment attached hereto as Exhibit A.  With respect to paragraph 2(d), the parties shall advise the witness of the confidentiality of the documents and ask that he/she not disclose and/or discuss the contents of the documents outside this action.

5.     Production of any Confidential Information by the parties does not waive objections by the parties as to the admissibility of such documents in evidence.

6.     If the Confidential Information is subpoenaed (other than by a government agency), the parties shall not produce such Confidential Information without first giving written

notice to the party who has produced the Confidential Information or who has claimed that the materials constitute Confidential Information, so as to enable that party to have a reasonable opportunity to seek protective relief.

7.    The inadvertent failure to designate any Confidential Information as such shall not be deemed a waiver of such status if such Confidential Information is properly designated as such by the party promptly upon discovery of such failure.

8.    Inadvertent disclosure of Confidential Information shall not be deemed a waiver of the confidential nature of such Confidential Information or the right and/or obligations of the parties with respect to such Confidential Information under this Confidentiality Agreement.

9.    With respect to any Confidential Information that has been produced or disclosed in connection with discovery and which is designated as Confidential Information by a party, should the recipient claim to have received the Confidential Information from another source without any restriction of confidentiality and seek to be relieved of the confidentiality restrictions of this Confidentiality Agreement with respect to that Confidential Information, the recipient must move the Court before the conclusion of the trial of this action for a determination that said information is not "confidential."  The information shall continue to be treated as Confidential Information until such time as the Court determines that it is not confidential.

10.    Nothing contained herein shall be construed to prohibit either party from seeking such further provisions or relief as they may deem appropriate or desirable regarding this Confidentiality Agreement or the matter of confidentiality.

11.    At the conclusion of this action, all Confidential Information (and copies thereof) shall be returned to the producing party, upon the written request of the producing party and at the producing party's expense, or destroyed.  The return or destruction of

4

such Confidential Information shall be certified in writing by the respective parties' attorneys.


     IT IS SO STIPULATED.


_____     _____

Robert B. Fitzpatrick, Esquire     Robert T. Shaffer, Esquire
Robert B. Fitzpatrick, PLLC     Murphy & Shaffer

Attorney for Defendant     Joseph J. McAlee, Esquire
Timothy D. Lundin     Christopher C. Young, Esquire
     Rubin, Fortunato & Harbison P.C.

     Attorneys for Plaintiff
     Equity Analytics, LLC

## EXHIBIT A

## CERTIFICATE REGARDING CONFIDENTIALITY

Name:

Company/Affiliation:

Position:

Signature:

Date:

     I understand that confidential documents, data and/or information will or may be disclosed to me solely for purposes of the action captioned Equity Analytics, LLC v. Timothy D. Lundin, Civil Action No. 07-2033 in the United States District Court for the District of Columbia (the "Litigation"). I have been advised that, by agreement between the parties to this proceeding, such confidential documents, data and/or information may not be used for any purposes other than preparation and litigation of this matter. I agree to be bound by the terms and conditions set forth in the Confidentiality Agreement and Protective Order entered in this Litigation.

     I have been advised that any unauthorized use or disclosure by me of such documents, data and/or information will be treated as a breach of the Confidentiality Agreement and Protective Order, for which I may be liable for damages.

EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FILED

NOV - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

EQUITY ANALYTICS, LLC,
operating as
EQUITY METHODS

        Plaintiffs,

    v.

TIMOTHY D. LUNDIN,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO:  07 2033

### ORDER

AND NOW, this ___8th___ day of November 2007, upon consideration of the

submissions of record and having determined that:

1.     Equity Analytics, LLC has demonstrated a substantial likelihood of

success on the merits of its claims;

2.     The rights of Equity Analytics, LLC with respect to its property,

proprietary and confidential information, competitive interests, and the <u>Non-Disclosure,</u>

<u>Assignment of Intellectual Property and Non-Competition Agreement</u> executed by

Defendant Timothy D. Lundin ("Lundin") are being and will continue to be violated by

Lundin unless he is restrained therefrom;

3.     Equity Analytics, LLC will suffer irreparable harm and loss if Lundin is

permitted to: (a) convert the property of Equity Analytics, LLC to his own personal use

and benefit, and/or that of his new employer, Equity Administration Solutions, Inc.,

(EASI), and (b) solicit Equity Analytics, LLC accounts, clients, and customers;

4.     Equity Analytics, LLC has no adequate remedy at law; and

5.     Greater injury will be inflicted upon Equity Analytics, LLC by the denial

of temporary injunctive relief than would be inflicted upon Lundin by the granting of

such relief.

**IT IS HEREBY ORDERED AND DECREED THAT:**

(1)     A Temporary Restraining Order issue immediately and that

security in the amount of $ _1,000.00_ be posted no later than the _7th_ day of

November, 2007.

(2)     Lundin will be immediately enjoined and restrained, directly and

indirectly, whether alone or in concert with others, including any officer, agent,

employee, and/or representative of EASI, until hearing and thereafter until further Order

of this Court, from doing any of the following:

(a)     soliciting or otherwise initiating any further contact or

communication with any client of Equity Analytics, LLC whom Lundin

served or whose name became known to Lundin while in the employ of

Equity Analytics, LLC for the purpose of advising said clients of his new

affiliation or for the purpose of inviting, encouraging or requesting the

transfer of any accounts or business patronage from Equity Analytics, LLC;

(b)     accessing or attempting to access Equity Analytics, LLC's data

on Salesforce.com for any purpose;

(c)     using, disclosing, or transmitting for any purpose, including

the solicitation of business or account transfers, the information contained

in the records of Equity Analytics, LLC; and

2

(d)    destroying, erasing, or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer media) in Lundin's possession or control which were obtained from or contain information derived from any Equity Analytics, LLC records, which pertain to Equity Analytics. LLC clients, or which relate to any of the events alleged in the Complaint in this action.

(3)    Lundin, and anyone acting in concert or participation with Lundin, specifically including Lundin's counsel and any agent, employee, officer or representative of Lundin, are further ordered to return to Equity Analytics, LLC's Pennsylvania counsel any and all records, documents and/or other types of information pertaining to Equity Analytics, LLC customers ("Customer Information"), whether in original, copied, handwritten, computerized (including computer software, disks, computer hard drive and/or any other type of computer or digital information storage device) or memorialized in any other form, within twenty-four (24) hours of notice to Lundin or his counsel of the terms of this Order;

(4)    Any and all Customer Information within the possession, custody or control of Lundin that is contained in any computerized form, including on computer software, disks, computer hard drive, and/or any other type of computer or digital information storage device, returned pursuant to paragraph 3 above shall be permanently deleted by an Equity Analytics, LLC representative.  Such Customer Information shall be permanently deleted, if possible without affecting any other information or software on the computer.  Lundin, and anyone acting in concert with Lundin, is precluded from

3

reconstituting or in any way restoring any Customer Information deleted pursuant to this

paragraph and returned to Equity Method, LLC pursuant to paragraph 3 above;

(5)    Lundin will allow Equity Analytics, LLC's computer forensic

expert to make forensic images of his home and/or business computers beginning at 9:00

a.m. on November __, 2007 and until said computers are made available to Equity

Analytics, LLC neither Lundin nor anyone else (including the members of his family)

shall use or access said computers. The review of these images will be limited to

confirming: (a) whether and when Defendant accessed Equity Analytics, LLC's

confidential customer data and/or trade secrets referenced in Equity Analytics LLC's

TRO papers; (b) whether the data has been forwarded to or used by Equity

Administration Solutions, Inc. ("EASI") in any form; and (c) whether any such data were

deleted, purged, or overwritten. To the extent any of the information may not have been

permanently deleted, or it still resides or is somehow accessible on said computers, it will

be deleted, but not until Equity Analytics, LLC has been able to image said computers.

(6)    The Court's Order remain in full force and effect until such time as

either a request for preliminary ~~permanent~~ injunctive relief is granted or this Court specifically orders

otherwise;

(7)    The parties are granted leave to commence discovery immediately

in aid of preliminary injunction proceedings before this Court; and

(8)    Lundin shall show cause before this Court on the _16th_ day of

_Nov._ , 2007 at _11_ o'clock _A_.m., or as soon thereafter as counsel may be heard, why

a Preliminary Injunction should not be ordered according to the terms and conditions set

forth above. Any motion to dissolve this order will also be heard at that time.

4

This order is issued this __8th__ day of November, 2007 at __5:30__ o'clock in the __p__ .m.

BY THE COURT:

United States District Judge

EXHIBIT "B"



**RubinFortunato**

10 South Leopard Road
Paoli, Pennsylvania 19301
T: (610) 408-2000    F: (610) 408-9000
www.rubinfortunato.com

## FACSIMILE TRANSMITTAL SHEET

| TO: | FAX: |
|---|---|
| Robert B. Fitzpatrick. | 202-588-5023 |

| CC: | FAX: |
|---|---|
| Robert T. Shaffer III, Esq. | 410-783-8823 |

| FROM: | DATE: |
|---|---|
| Joseph J. McAlee, Esq. | 1/3/08 |

| SENDER'S PHONE NUMBER: | SENDER'S FAX NUMBER: |
|---|---|
| (610) 408-2004 | 610-854-1317 |

| RE: | PAGES: |
|---|---|
| Equity Analytics v. Timothy Lundin | 20 (including the cover sheet) |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached.

IF YOU HAVE ANY TRANSMISSION PROBLEMS, PLEASE CALL SENDER AT PHONE NUMBER ABOVE.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.



**Rubin**Fortunato

JOSEPH J. McALEE
DIRECT DIAL: (610) 408-2004
DIRECT FAX: (610) 854-4317
EMAIL: jmcalee@rubinfortunato.com

January 3, 2008

<u>**Via Facsimile, E-mail & Regular Mail**</u>

Robert B. Fitzpatrick, Esquire
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728

**Re:    Equity Analytics, LLC (operating as Equity Methods) v. Timothy D. Lundin**
**U.S.D.C., District of Columbia, Docket No. 1:07-CV-02033-RCL**

Dear Mr. Fitzpatrick:

Thank you for your suggested changes to my Protocol for Imaging and Review ("Protocol"), which I received yesterday.

I have incorporated many of your suggestions. Nevertheless, I would also like to set forth the rationale for my position on various issues in an effort to come to a mutual agreement on the Protocol without burdening the Court.

I cannot agree to the inclusion of the majority of the recitations in the WHEREAS clauses because I believe they are superfluous. With respect to the inclusion of any language in a stipulation, the relevant inquiry is whether any language in the stipulation is necessary to accomplish the purpose behind the agreement *and* whether any language in the stipulation is necessary to obtain the approval of the Court. The first seven WHEREAS clauses containing your version of certain events in the litigation, are not necessary to accomplish the purpose behind the stipulation, *to wit*, the examination of the hard drives on Mr. Lundin's computer, nor are they required to obtain the approval of the Court.

The issue regarding who will pay for the forensic review discussed in the eighth WHEREAS clause is covered by paragraph 15 of the Protocol.

The ninth and portions of the eleventh WHEREAS clauses are superfluous because I believe any issues of the waiver of any defenses or the shifting of any costs are best addressed under the Federal Rules of Civil procedure and appropriate case law, not by

Robert B. Fitzpatrick, Esquire
January 3, 2008
Page 2

agreement of the parties. Nor is this language necessary to accomplish the purpose
behind the stipulation or obtain the approval of the Court.

The issue raised in tenth WHEREAS clause and your paragraph 7 is addressed in
paragraph 4 of the Protocol.

As I have stated to you, verbally and in writing (e.g., my email of 11/30/07 and my letter
of 12/14/07), I have concerns about the use of search terms. I think we agree the fact Mr.
Lundin recently loaded a new operating system on his computer may have overridden
or impaired the integrity of the files on the system at that time. I understand this may
have created fragments of information which may be highly relevant to our inquiry but
difficult to locate using search terms. Simply stated, the use of search terms may not
provide the necessary results a complete forensic search of the hard drives will yield.

Additionally, I have amended the Protocol, based on your suggestion, to focus the
forensic search of the imaged hard drives on data and/or information regarding Equity
Analytics. I certainly think this should ease any concerns you or your client has about
confidentiality. Additionally, if my client is willing to pay for such a search and you
have the opportunity to review any documents/information before they are disclosed, I
am at a loss to understand your opposition to a complete forensic review?

I believe the scope of the examination in your paragraph 11 is adequately covered in the
Protocol. If Mr. Lundin contacted any additional clients of Equity Analytics, LLC
unknown to my client, I think we are entitled to this information. Indeed, that is a
purpose for the forensic examination.

The issue of unauthorized access issue referenced in your paragraph 13 is a question of
fact, best addressed by lay witnesses, not experts. The forensic experts can describe the
recovered information, how the information was recovered and what was done with the
recovered information, but I believe the issue of unauthorized use is not within the scope
of their review.

As we have discussed, I must insist that the original hard drives remain in a pristine state
until the end of the litigation. If the hard drives are returned to Mr. Lundin for his use
prior to the end of the litigation and some evidentiary issue or the issue of spoliation
arises, the original hard drives will be, for all practical purposes, useless. I cannot think
of any way around this issue and you have not offered me any suggestions to solve this
problem.

Robert B. Fitzpatrick, Esquire
January 3, 2008
Page 3

Kindly have your written comments to me, if any, by 2:00 p.m. tomorrow, Friday, January 4, 2008. If I do not hear from you by that time, I will assume you are not in agreement with the Protocol and proceed accordingly.

Although there are some intractable issues, I certainly think there is much common ground in our proposals.

Thank you for your anticipated courtesy and cooperation. I look forward to hearing from you.

Very truly yours,

RUBIN, FORTUNATO & HARBISON P.C.

Joseph J. McAlee, Esquire
Enclosures
cc: Robert T. Shaffer, III, Esquire (w/ enclosures)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DRAFT**

EQUITY ANALYTICS, LLC, operating as   :
EQUITY METHODS   :
  :
    Plaintiff   :
  :
   v.   :   CIVIL ACTION NO. 07-2033
  :     (RCL/JMF)
TIMOTHY D. LUNDIN   :
  :
    Defendant   :
  :

## PROTOCOL FOR IMAGING AND REVIEW

IT IS HEREBY STIPULATED AND AGREED by the undersigned parties as follows:

WHEREAS, Plaintiff Equity Analytics, LLC ("Equity Analytics") and Defendant

Timothy D. Lundin ("Lundin"), by and through their respective counsel, have agreed to allow a

forensic consultant access to the hard drive on Lundin's computer and two external hard drives

owned by Lundin; and

WHEREAS, this process may involve the production or disclosure of information,

documents, or data that is of a personal, private, confidential, proprietary, or business nature

and/or concerns the parties and/or individuals or entities who are or are not parties to this

proceeding; and

WHEREAS, the parties have voluntarily agreed to enter into this Protocol for Imaging

and Review ("Protocol")[i] to provide a process: (1) to allow a forensic consultant to image and

review the original hard drives; (2) require the forensic consultant to produce a report regarding

> Formatted: Strikethrough

---

[i] ~~This Protocol shall not be construed to be an admission or waiver by any party of the confidential, proprietary, or trade secret status of the Confidential Information disclosed in the parties' production of documents pursuant to discovery.~~

> Formatted: Strikethrough

his or her examination of the imaged hard drives; (3) provide for the retention of the original hard drives and any imaged hard drives during this litigation; (4) provide for a process for the deletion of certain information from the original hard drives and the destruction of any imaged hard drives subsequent to the conclusion of this litigation; and:

DRAFT

IT IS HEREBY AGREED, by and between the undersigned parties that the following restrictions and procedures shall apply to the Protocol:

1. The parties agree that FTI Consulting will ~~to~~ produce a digital or mirror image of all computers and portable hard drives that have been in Lundin's custody, possession, or control since January 2005, which include, Lundin's Macintosh laptop computer model number, MacBookPro, including its hard drive ("the internal hard drive") and the external hard drives, specifically a Western Digital external hard drive and a LaCie external hard drive ("the external hard drives"), along with power cables suitable for said hard drives (collectively "the original hard drives").

Formatted: Strikethrough

2. Counsel for Lundin will deliver to FTI Consulting the ~~hard drive from Lundin's laptop computer and two external hard drives (the "original hard drives")~~ in his possession. ~~FTI Consulting will create a digital or mirror image of the original hard drives ("the imaged hard drives"). FTI Consulting will use a Mac/Apple target disk mode to image the entire disk contents to an external drive with the "dd" utility which enables read-only access to a firewire connected disk. In the event the "dd" utility cannot be used the hard disk will be removed and a hardware "write-blocker" will be utilized to gain access to the disk drive. FTI Consulting will take a MD5 hash fingerprint of the source drive and resulting image file to confirm they are identical copies.~~ FTI consulting will image the original hard drives. The internal hard drive must be imaged using the forensic software EnCase, by Guidance Software, to preserve the

Formatted: Strikethrough

Formatted: Strikethrough
Formatted: Strikethrough

2

electronic media ("Original media"). All original media must be protected from contamination by using forensically tested equipment. The external hard drives should be imaged using a hardware based write-blocker, preferably from a well known forensic vendor. The internal hard drive can alternatively be imaged using the provided "Target" mode backup. If this backup method is used, steps must be taken to ensure the geometry of the internal hard drive matches the geometry of the EnCase backup. All actions taken must be logged in an imaging sheet to ensure admissibility. FTI Consulting shall retain possession of the original hard drives for sixty days after the unappealable conclusion of this litigation. Lundin may be present at the imaging of the original hard drives, but shall not interfere with the said imaging. The imaging and deletion service performed by FTI Consulting shall be performed in the Washington, D.C. Metropolitan area.

3. FTI Consulting shall release the imaged hard drives to a forensic consultant retained by Equity Analytics Gerald D. Weber ("Mr. Weber") ("the forensic consultant") for review. The forensic consultant Mr. Weber will personally take possession of the imaged hard drives. The forensic consultant may designate an assistant to aid him in his review. Lundin shall be permitted to propound reasonable questions, in writing and through counsel for Equity Analytics, to the forensic consultant and his assistant regarding their qualifications and/or expertise. Lundin may, through his counsel, request that the Court rule upon the technical qualifications and/or expertise of the forensic consultant or his assistant if they are challenged by Lundin. Any objection to the technical qualifications and/or expertise of the forensic consultant or his assistant must be made by motion within ten business days of the date of the approval of this agreement by the Court. Lundin's agreement to the use of the forensic consultant and his assistant retained by Equity Analytics shall not be unreasonably withheld.

DRAFT

Formatted: Strikethrough

Formatted: Strikethrough

3

4.  Prior to any examination of the imaged hard drives, ~~the forensic consultant and his assistant Mr. Weber~~ shall execute a confidentiality agreement (attached hereto as Exhibit "A") agreed to by the parties.  ~~Mr. Weber has designated Jose Martinez, CISSP, CIFI, CHFI, CEH, Security+, Network+, MCP, A+, P.I as his assistant to aid him in this project.  Mr. Martinez will sign the confidentiality agreement and will be subject to all provisions applicable thereto.~~  The parties specifically agree the disclosure of any data or documents during the data recovery or subsequent review of the imaged hard drives shall not be deemed a waiver of the attorney-client privilege or any other privilege or waiver of the attorney work-product doctrine.  Nor does Equity Analytics's or Lundin's agreement to enter into this Protocol constitute an admission or waiver by any party of the confidential, proprietary, or trade secret status of any information disclosed as a result of the forensic review of the original hard drives or imaged hard drives.

5.  Counsel for the parties (or their designated representatives) may communicate with the forensic consultant ~~Mr. Weber~~ during his review, but such communications must be by email with a copy to opposing counsel.  The forensic consultant ~~Mr. Weber~~ may also communicate with counsel for the parties (or their designated representatives) during his review, but such communications must be by email with a copy to opposing counsel.  Except as otherwise provided in this Protocol, neither the forensic consultant nor his assistant ~~Mr. Weber~~ shall not disclose the contents of any files or documents to Equity Analytics or its counsel or other persons.  Any act or task described in this Protocol as being undertaken by the forensic consultant may be undertaken by the forensic consultant's assistant.

6.  The forensic consultant shall search for information and/or data reasonably believed to be generated by and/or the property of Equity Analytics. ("Equity Analytics material") on the imaged hard drives.  In addition to identifying, copying and cataloguing in a reasonably

4

convenient and searchable form any Equity Analytics material on the imaged hard drives, the forensic consultant shall determine and record when Lundin accessed any Equity Analytics material on Equity Analytics's Salesforce.com account, whether, when and to whom Lundin transmitted any Equity Analytics material and identify the Equity Analytics material so transmitted, as well determine whether Lundin communicated or attempted to communicate with any current client or prospective client of Equity Analytics ("the forensic search").   ~~Within ten business days of inspection and imaging, Mr. Weber shall provide the parties with a report describing the computer equipment Lundin used and the actions he took with respect to each piece of equipment. This report shall include a detailed description of each piece of equipment inspected, including the name of the manufacturer and model and serial number of the equipment, wherever possible.~~

7. ~~Mr. Weber shall recover all documents and/or data from the imaged hard drives, including but not limited to all word processing documents, email messages, PowerPoint or similar presentations, spreadsheets and other files, including "deleted" files and metadata containing or related to information that is confidential to Equity Analytics ("the recovered files").~~ The forensic consultant ~~Mr. Weber~~ shall maintain a copy of any data or information ~~from the recovered files~~ copied during the forensic search.  Within ten business days of the completion of his review, the forensic consultant ~~Mr. Weber~~ shall provide ~~the recovered data or files~~ to Lundin any data or information copied during the forensic search ~~in a reasonably convenient and searchable form,~~ along with, to the extent possible, information showing when any ~~files were~~ Equity Analytics material was created, accessed, ~~downloaded, transmitted,~~ copied, or deleted by Lundin. The forensic consultant ~~Mr. Weber~~ shall also provide Equity Analytics notice, only, of when ~~the recovered materials were~~ this information is provided to Lundin.  To the extent that

5

documents cannot be retrieved from the imaged hard drives or the documents or data retrieved are less than the whole of data contained on the imaged hard drives. Lundin's counsel shall submit a Declaration to the Court together with a written report signed by ~~the forensic consultant Mr. Weber~~ explaining the limits of retrieval achieved. The forensic consultant ~~Mr. Weber~~ shall retain a copy of the imaged hard drives and all ~~recovered~~ Equity Analytics materials and other information obtained during the forensic search until sixty days after the unappealable conclusion of this litigation.

DRAFT

8.    Within ten business days of receipt, Lundin shall review the Equity Analytics materials for privilege and send to counsel for Equity Analytics all non-privileged responsive documents, data or information, as well as a privilege log complying with Federal Rules of Civil Procedure ~~26(b)(5)(A)~~. Counsel for the parties shall meet and confer either in person or by telephone to resolve any disputes regarding any materials withheld by Lundin within five business days of the receipt of the privilege log. The parties, through counsel, shall advise the Court within five business days after the meeting described in the immediately preceding sentence as to whether there are any disputes regarding the withheld documents and/or information that might need to be resolved by the Court. Nothing in this Protocol ~~order~~ shall prevent Equity Analytics from filing a motion to compel if it is unable to resolve a claim of privilege or relevance with Lundin.

9.    Within ten business days after any disputes regarding the confidentiality of any data or information have been resolved, the forensic consultant shall prepare a written report which shall set forth in detail the results of the forensic examination, and identify and catalogue any Equity Analytics material on the imaged hard drives in addition to containing any other information deemed pertinent by the forensic consultant to the forensic examination.

6

10. Sixty days after the unappealable conclusion of this litigation, the forensic consultant Mr. Weber will provide FTI Consulting with a list of the confidential information belonging to Equity Analytics material. Within ten business days thereafter, FTI Consulting will delete any of the information determined to be the confidential information belonging to Equity Analytics material from the original hard drives based on information provided by the forensic consultant Mr. Weber and over write the deleted space to prevent it from being recovered. Sixty days after the unappealable conclusion of this litigation, the forensic consultant will delete any information from the imaged hard drives the parties determine is not Equity Analytics material, but maintain a copy of the deleted material. Equity Analytics will be able to keep any of its own confidential information copies of any Equity Analytics material obtained from the imaged hard drives after the termination or resolution of the litigation.

11. Within 10 days of the deletion of any material from the original hard drives by FTI Consulting, the hard drives will be returned to Lundin for review. If after Lundin reviews the original hard drives and is satisfied the proper information was removed from them, the imaged hard drives (less any confidential information belonging to Equity Analytics material) and the copy of the deleted information from the imaged hard drives in the possession of the forensic consultant Mr. Weber will be destroyed.

12. If after Lundin reviews the original hard drives, he believes information personal to him was inadvertently deleted, that information will be restored using the copy of the deleted information in the possession of the forensic consultant Mr. Weber. Lundin will have the burden to show that any of the deleted information he wants restored is not confidential information belonging to Equity Analytics material. Thereafter, if Lundin is satisfied the previously deleted information has been restored, the imaged hard drives (less any confidential client information

DRAFT

Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough
Formatted: Strikethrough

~~belonging to~~ Equity Analytics material) and the copy of the deleted information in the forensic consultant's ~~Mr. Weber's~~ possession will be destroyed.

**Formatted:** Strikethrough

**Formatted:** Strikethrough

13. FTI and the forensic consultant ~~Mr. Weber~~ will utilize U.S. Department of Defense Standard 522022-M (or other industry standard method) to ensure the complete erasure of any material from the imaged hard drives and the original hard drives.  The deletion of any material must be certified by FTI or the forensic consultant ~~Mr. Weber~~ in a manner that is acceptable to the parties.  Lundin may be present at the deletion of the imaged or original hard drives, but shall not interfere with the same.

**Formatted:** Strikethrough

14. Sixty days after the unappealable conclusion of this litigation, all reports and copies thereof, generated by the forensic consultant ~~Mr. Weber~~ shall be returned to Equity Analytics and destroyed.  The return or destruction of reports shall be certified by counsel for Equity Analytics.

**Formatted:** Strikethrough

15. Any expense or cost associated with this Protocol shall be borne by Equity Analytics.

      IT IS SO STIPULATED.

---
Robert B. Fitzpatrick, Esquire
Robert B. Fitzpatrick, PLLC

Attorney for Defendant
Timothy D. Lundin

---
Robert T. Shaffer, Esquire
Murphy & Shaffer

Joseph J. McAlee, Esquire
Christopher C. Young, Esquire
Rubin, Fortunato & Harbison P.C.

Attorneys for Plaintiff
Equity Analytics, LLC

8

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EQUITY ANALYTICS, LLC, operating as EQUITY METHODS | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 07-2033 |
| | : | (RCL/JMF) |
| TIMOTHY D. LUNDIN | : | |
| | : | |
| Defendant | : | DRAFT |
| | : | |

### CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

IT IS HEREBY STIPULATED AND AGREED by the undersigned parties as follows:

WHEREAS, the parties are engaging in discovery that involves the production of documents and information by Plaintiff Equity Analytics, LLC ("Equity Analytics") and Defendant Timothy D. Lundin ("Lundin"), by and through their respective counsel, solely in connection with this action; and

WHEREAS, such discovery may involve the production or disclosure of information, documents, or data that is of a personal, private, confidential, proprietary, or business nature and/or concerns individuals or entities who are or are not parties to this proceeding, including but not limited to information, documents, or data concerning Equity Analytics' current or former employees, customers and/or clients, and/or confidential or proprietary information about Equity Analytics (hereinafter "Confidential Information");[1] and

---

[1] This Agreement shall not be construed to be an admission or waiver by any party of the confidential, proprietary, or trade secret status of the Confidential Information disclosed in the parties' production of documents pursuant to discovery.

DRAFT

WHEREAS, the parties have voluntarily agreed to enter into this Confidentiality Agreement to limit the use and disclosure of Confidential Information provided hereunder by Equity Analytics and Lundin, and/or any third parties:

IT IS HEREBY AGREED, by and between the undersigned parties, that the following restrictions and procedures shall apply to Confidential Information produced by the parties or by any third party (regardless of whether such Confidential Information is produced informally or in response to a formal discovery request or subpoena):

1.      To preserve the confidentiality of Confidential Information, or any part thereof, a party shall so designate in writing any such Confidential Information or shall stamp "Confidential" on such Confidential Information prior to its production or disclosure.  The parties shall act in good faith in designating documents to be "Confidential" and shall take reasonable measures to determine actual confidentiality before designating documents as such.

2.      Confidential Information so designated by the parties pursuant to the terms of this Confidentiality Agreement shall be maintained in strict confidence by the parties, to be used only for the purposes of this arbitration action, and shall not be disclosed by the non-designating parties to any person, except to:

(a)      the parties themselves;

(b)      counsel of record for the parties in this action only, including in-house counsel, partners, associates, co-counsel, legal assistants, secretaries or other support staff of such counsel assigned to assist such counsel;

(c)      experts, consultants, accountants and other third parties expressly retained or employed by counsel of record for the parties to assist in the preparation of this action,

2

DRAFT

whether or not said third parties shall subsequently testify, provided such third parties are first given a copy of this Confidentiality Agreement and agree to be bound by its terms;

      (d)    any person from whom testimony is taken in this action;

      (e)    any court reporter or Court personnel engaged in proceedings in this action;

      (f)    the Judge(s) assigned to hear this action;

      (g)    the Department of Justice, the attorneys general for the several states, the prosecuting attorney for the District of Columbia or any other government agency having jurisdiction over a party to this matter (hereinafter "government agency") pursuant to an inquiry initiated by them; and

      (h)    as otherwise required by law.

3.    Any person receiving Confidential Information shall not reveal any part of such Confidential Information to, or discuss such Confidential Information with, any person who is not entitled to disclosure of such materials under paragraph 2 above.

4.    Any person to whom Confidential Information is disclosed pursuant to paragraph 2(c) hereof shall be required, prior to and as a condition of seeing any such Confidential Information, to sign the acknowledgment attached hereto as Exhibit A.  With respect to paragraph 2(d), the parties shall advise the witness of the confidentiality of the documents and ask that he/she not disclose and/or discuss the contents of the documents outside this action.

5.    Production of any Confidential Information by the parties does not waive objections by the parties as to the admissibility of such documents in evidence.

6.    If the Confidential Information is subpoenaed (other than by a government agency), the parties shall not produce such Confidential Information without first giving written

3

DRAFT

notice to the party who has produced the Confidential Information or who has claimed that the materials constitute Confidential Information, so as to enable that party to have a reasonable opportunity to seek protective relief.

7.    The inadvertent failure to designate any Confidential Information as such shall not be deemed a waiver of such status if such Confidential Information is properly designated as such by the party promptly upon discovery of such failure.

8.    Inadvertent disclosure of Confidential Information shall not be deemed a waiver of the confidential nature of such Confidential Information or the right and/or obligations of the parties with respect to such Confidential Information under this Confidentiality Agreement.

9.    With respect to any Confidential Information that has been produced or disclosed in connection with discovery and which is designated as Confidential Information by a party, should the recipient claim to have received the Confidential Information from another source without any restriction of confidentiality and seek to be relieved of the confidentiality restrictions of this Confidentiality Agreement with respect to that Confidential Information, the recipient must move the Court before the conclusion of the trial of this action for a determination that said information is not "confidential." The information shall continue to be treated as Confidential Information until such time as the Court determines that it is not confidential.

10.    Nothing contained herein shall be construed to prohibit either party from seeking such further provisions or relief as they may deem appropriate or desirable regarding this Confidentiality Agreement or the matter of confidentiality.

11.    At the conclusion of this action, all Confidential Information (and copies thereof) shall be returned to the producing party, upon the written request of the producing party and at the producing party's expense, or destroyed. The return or destruction of

4

DRAFT

such Confidential Information shall be certified in writing by the respective parties' attorneys.


IT IS SO STIPULATED.


_____          _____
Robert B. Fitzpatrick, Esquire           Robert T. Shaffer, Esquire
Robert B. Fitzpatrick, PLLC              Murphy & Shaffer

Attorney for Defendant                   Joseph J. McAlee, Esquire
Timothy D. Lundin                        Christopher C. Young, Esquire
                                         Rubin, Fortunato & Harbison P.C.

                                         Attorneys for Plaintiff
                                         Equity Analytics, LLC


5

EXHIBIT "A"

## EXHIBIT A

## CERTIFICATE REGARDING CONFIDENTIALITY

Name:

Company/Affiliation:

Position:                                          DRAFT

Signature:

Date:

I understand that confidential documents, data and/or information will or may be disclosed to me solely for purposes of the action captioned Equity Analytics, LLC v. Timothy D. Lundin, Civil Action No. 07-2033 in the United States District Court for the District of Columbia (the "Litigation"). I have been advised that, by agreement between the parties to this proceeding, such confidential documents, data and/or information may not be used for any purposes other than preparation and litigation of this matter. I agree to be bound by the terms and conditions set forth in the Confidentiality Agreement and Protective Order entered in this Litigation.

I have been advised that any unauthorized use or disclosure by me of such documents, data and/or information will be treated as a breach of the Confidentiality Agreement and Protective Order, for which I may be liable for damages.

6

EXHIBIT "C"

# Robert B. Fitzpatrick, PLLC
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009
(202) 588-5300 (phone)
(202) 588-5023 (fax)

# Fax

Please deliver the following to:

Recipient:    Mr. Joseph McAlee, Esq.

Company:    Rubin, Fortunato & Harbison, PC    Fax:    (610) 854-4317

Sender :    Mr. Robert B. Fitzpatrick, PLLC

Re:    Lundin v. Equity Analytics

Date:    1.7.2008    Pages (including cover):    29

Message to Recipient:

## For F & A Staff Use Only

Client Name:_____    Client No.:_____

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Equity Analytics, LLC,<br>operating as Equity Methods,<br><br>　　　　　　Plaintiff,<br>v.<br><br>Timothy D. Lundin,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.  1:07-cv-02033<br><br>Judge Royce C. Lamberth |

## PROTOCOL FOR IMAGING AND REVIEW

IT IS HEREBY STIPULATED AND AGREED, through their respective counsel, by the

Plaintiff and the Defendant as follows:

WHEREAS, Plaintiff Equity Analytics, LLC ("EA") has filed a civil action in this Court

against Defendant, Timothy D. Lundin ("Lundin") in which EA alleges, *inter alia*, that

Defendant Lundin violated the provisions of the Computer Fraud and Abuse Act, 18 U.S.C. §

1030, and that Defendant Lundin violated the Arizona Trade Secrets Act, A.R.S. §§ 44-401, et.

seq. (2007), provisions respecting misappropriation of trade secrets; and

WHEREAS, the Computer Fraud and Abuse Act ("CFAA") has both criminal and civil

provisions; and

WHEREAS, during the initial phase of this litigation, specifically from November 14,

2007 until December 6, 2007, while Defendant Lundin's counsel was familiarizing himself with

the facts, Defendant Lundin declined to answer certain questions propounded to him at

deposition, invoking his Fifth Amendment rights; and

WHEREAS, during the aforesaid time frame, Defendant Lundin, asserting his Fifth Amendment rights as elucidated by the Supreme Court in *United States v. Hubbell*, 530 U.S. 27 (2000), declined to produce for inspection by the Plaintiff the hard drive of his Macintosh laptop computer and four external hard drives; and

WHEREAS, Defendant Lundin, being fully advised and counseled by independent counsel, knowingly and intelligently decided on December 6, 2007 to no longer assert Fifth Amendment rights and to produce for imaging and forensic review the aforesaid hard drive to his laptop and the aforesaid external hard drives; and

WHEREAS, Plaintiff EA has not propounded to Defendant Lundin a formal request for production of the aforesaid hard drives pursuant to Rule 34 of the Federal Rules of Civil Procedure and this Court's local Rules; and

WHEREAS, Defendant Lundin has voluntarily agreed to produce the hard drives without any formal discovery having been served upon him; and

WHEREAS, it is understood that Plaintiff EA has undertaken to image and forensically review the hard drives at its expense; and

WHEREAS, it is understood that the expenses being incurred by Plaintiff EA is not a "cost" within the meaning of Rule 54 of the Federal Rules of Civil Procedure, is not a "loss" as defined in 18 U.S.C. § 1030(e)(11) of the Computer Fraud and Abuse Act, and is not a recoverable cost or expense pursuant to any fee or cost shifting statute or rule applicable to this litigation; and

WHEREAS, it is understood by Plaintiff EA that Defendant Lundin's hard drives contain private matters (e.g., tax returns), proprietary matters (e.g., thousands of photographs from Defendant Lundin's photographic business), EASi confidential, commercial, and proprietary

matters, and privileged attorney-client communications between Defendant Lundin and his counsel; and

WHEREAS, Defendant Lundin's agreement to this stipulated Protocol does not constitute a waiver of any claim or defense herein, including any argument that Plaintiff EA has not established that the Court has federal jurisdiction pursuant to the Computer Fraud and Abuse Act and therefore should not assume supplemental jurisdiction over Plaintiff EA's state law claims; and

WHEREAS, in reliance on the foregoing understandings and representations, Defendant Lundin has agreed to enter into this Protocol for Imaging and Review ("Protocol"); and:

IT IS HEREBY AGREED, through their respective counsel, by and between the Plaintiff and the Defendant that the following terms and conditions shall apply to the Protocol and that the parties shall, in all instances, adhere scrupulously to these terms and conditions unless and until they agree otherwise in writing:

1.      Within two (2) business days of the Court's approval of this Protocol, Defendant Lundin, through his counsel, shall deliver to a representative of FTI Consulting Defendant Lundin's Macintosh laptop computer model number, MacBookPro, including its hard drive and the external hard drives, specifically a Western Digital external hard drive, a LaCie external hard drive, a LaCie handheld portable (orange) external hard drive, and a Wolverine MVP9000 portable photography hard drive (the "external hard drives"), along with power cables suitable for said hard drives (collectively "the original hard drives"), which constitute all of the Defendant Lundin's hard drives that contained any

3

Electronically Stored Information ("ESI"), entered, received, or stored prior to
November 9, 2007.

2.    FTI Consulting, with Defendant Lundin present should he choose to be
      present, shall produce a digital or mirror image of the five aforesaid hard
      drives, and shall complete said imaging within two (2) business days after
      delivery has been effectuated.

3.    FTI Consulting will create a digital or mirror image of the original hard drives.
      FTI Consulting will use a Mac/Apple target disk mode to image the entire disk
      contents to an external drive with the "dd" utility which enables read-only
      access to a firewire connected disk.  In the event the "dd" utility cannot be
      used, the hard disk will be removed and a hardware "write blocker" will be
      utilized to gain access to the disk drive.  FTI Consulting will take a MD5 hash
      fingerprint of the source drive and resulting image file to confirm they are
      identical copies.

4.    Upon completion of the imaging of the five aforesaid hard drives ("hard
      drives"), FTI Consulting ("FTI") shall retain the original hard drives until they
      are to be returned to Defendant Lundin in accordance with the provisions of
      the Protocol.

5.    FTI shall deliver the imaged hard drives to a fully qualified computer forensic
      examiner who shall take possession of the imaged hard drives.  Defendant
      Lundin shall be permitted to propound reasonable questions to Plaintiff EA
      regarding the qualifications of the forensic examiner that it has retained, and
      shall be permitted, if he, through his counsel, deems it appropriate to request

4

that the Court pass upon the qualifications of the forensic examiner if they be
challenged by Defendant Lundin.

6.    The forensic examiner retained by Plaintiff EA shall utilize search terms to
review the hard drives. Attached hereto as Appendix A are said search terms.

7.    The parties specifically agree that the review of the hard drives and subsequent
disclosure of ESI thereon shall not and may not be deemed in any
circumstance to be a waiver of the attorney-client privilege, the work product
doctrine, or any other privilege.

8.    All ESI identified by using the search terms set forth in Appendix A shall be
transmitted by Plaintiff EA's forensic examiner to counsel for Defendant
Lundin, and shall not be discussed or disclosed in any fashion to Plaintiff EA,
any agent of Plaintiff EA, or any of the attorneys for Plaintiff EA until
Defendant Lundin and his counsel have reviewed all such ESI to determine
what, in their judgment, is private and non-responsive to any issue in this case,
proprietary as to Defendant Lundin and non-responsive as to any issue in this
case, proprietary and commercial business information of EASi and non-
responsive to any issue in this case, or privileged.

9.    With respect to any ESI that Defendant Lundin deems to be non-responsive to
any issue in this case and/or privileged, Defendant Lundin, through his
counsel, shall submit a log of such ESI formatted like a privileged log
recognized under the Federal Rules of Civil Procedure.

10.   Defendant Lundin shall complete his examination of said ESI and submit any
such log within five (5) business days of his receipt of the ESI from Plaintiff
EA's forensic examiner.

11.   Within said five (5) business day time frame, Defendant Lundin shall transmit
to Plaintiff EA's attorneys all ESI identified by Plaintiff EA's forensic
examiner other than that which Defendant Lundin has withheld and listed on
the log.

12.   Counsel for the parties shall promptly meet and confer either by person or by
telephone to resolve any disputes regarding the ESI withheld by Defendant
Lundin.  The parties, through counsel, shall advise the Court within five (5)
business days after Defendant Lundin's counsel has submitted the aforesaid
log as to whether there are any disputes regarding the withheld ESI that might
need to be resolved by the Court.

13.   Plaintiff EA's forensic examiner, when examining the imaged hard drives,
may also determine when Defendant Lundin accessed any Plaintiff EA ESI on
the hard drives, when Defendant Lundin accessed Plaintiff EA's
Salesforce.com, when and whether Defendant Lundin downloaded any ESI
from Plaintiff EA's Salesforce.com, whether, when and to whom Defendant
Lundin distributed electronically any ESI downloaded from Plaintiff EA's
Salesforce.com, and whether and when Defendant Lundin electronically
communicated or attempted to communicate with any client or prospect of
Equity Analytics that existed in Equity Analytics, LLC's Salesforce.com

6

account on or before the last alleged successful Salesforce.com login date of September 18, 2007 at 7:44 a.m.

14.     Plaintiff EA's forensic examiner may retain in its possession the imaged hard drives until the conclusion of this litigation, including any appeals, and shall destroy the imaged hard drives within ten (10) business days of said conclusion and shall certify in writing to Defendant Lundin's counsel that it has done so.

15.     Plaintiff EA's forensic examiner shall prepare a written report in accordance with the provisions of the Federal Rules of Civil Procedure regarding opinion/expert witnesses.  Said written report shall set forth in detail the results of its examination of the imaged hard drives, and said report shall contain all information deemed pertinent by the forensic examiner regarding issues of misappropriation and/or unauthorized access, including all information acquired pursuant to paragraph 13 above.

16.     Upon the conclusion of Plaintiff EA's examination of the imaged hard drives by Plaintiff EA's forensic examiner, the aforesaid report also shall identify all ESI on any of the hard drives that is deemed to be confidential to Plaintiff EA, and shall provide copies of same to Defendant Lundin's counsel under an appropriate protective order.  Defendant Lundin shall have five (5) business days from receipt of said report to dispute whether any such identified ESI is confidential to Plaintiff EA.  Any disputes in that regard that cannot be resolved by counsel in a meet and confer conference may thereafter be submitted to the Court for resolution.

17.   All ESI that has been determined to be confidential to Plaintiff EA shall be deleted from the original hard drives within five (5) business days of an agreement on what ESI is confidential to Plaintiff EA, and at that time the original hard drives shall be returned to Defendant Lundin.  The deletion shall be performed in the presence of Defendant Lundin and shall be effectuated in a manner that assures that no other ESI is deleted or otherwise corrupted.  In the event that other ESI during the deletion process is deleted or corrupted, it shall be retrieved from the imaged hard drives.

18.   FTI and Plaintiff EA's forensic examiner will utilize U.S. Department of Defense Standard 522022-M (or other industry standard method) to ensure the complete erasure of any material from the imaged hard drives and the original hard drives.  The deletion of any material must be certified by FTI or Plaintiff EA's forensic examiner in a manner that is acceptable to the parties

19.   FTI , the forensic examiner, and all employees and assistants of FTI and said forensic examiner shall execute a confidentiality agreement, a copy of which is attached hereto as Appendix C.

20.   The imaging and deletion services to be performed by FTI in accordance with this Protocol shall be performed within the Washington, D.C. metropolitan area.

21.   Counsel for the parties and Defendant Lundin may communicate with Plaintiff EA's forensic examiner during the forensic examination, but all such communications must either be by email with a copy contemporaneously to opposing counsel, or by telephone with opposing counsel participating.

8

22.  Upon the conclusion of this litigation, including any appeals, all ESI confidential to Plaintiff EA, all reports and copies thereof, generated by Plaintiff EA's forensic examiner, shall be returned by Defendant Lundin and his counsel to Plaintiff EA.

23.  All expenses and costs associated with the implementation of this Protocol shall be borne exclusively by Plaintiff Equity Analytics, LLC.

IT IS SO STIPULATED AND AGREED ON THIS _____ day of _____, 2008.


Robert B. Fitzpatrick, Esquire
Robert B. Fitzpatrick, PLLC

Attorney for Defendant
Timothy D. Lundin

Robert T. Shaffer, Esquire
Murphy & Shaffer

Joseph J. McAlee, Esquire
Christopher C. Young, Esquire
Rubin, Fortunato & Harbison P.C.

Attorneys for Plaintiff
Equity Analytics, LLC

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| Equity Analytics, LLC,<br>operating as Equity Methods,<br><br>            Plaintiff,<br><br>    v.<br><br>Timothy D. Lundin,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:07-cv-02033<br><br>   Judge Royce C. Lamberth |

## CONSENT ORDER

Upon consideration of the foregoing stipulated Protocol for Imaging and Review, it is

ORDERED on this ____ day of ____, 2008 that the same be, and the same hereby is, approved

by the Court.


_____
Judge

10

## APPENDIX A

### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Equity Analytics, LLC, operating as Equity Methods, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No.  1:07-cv-02033 |
| Timothy D. Lundin, | ) ) | Judge Royce C. Lamberth |
| Defendant. | ) ) | |

## SEARCH PROTOCOL / KEYWORDS

When the Forensic Consultants for Equity Analytics, LLC perform their search on Defendant Lundin's imaged hard drives, they should look for the following information.

**Programs and File Types:**

The following programs and file types will contain information that the forensic consultants will be looking for: MS Word (.doc, .txt, .rtf), MS Excel (.csv, .xml), MS PowerPoint (.ppt), MS Entourage and/or Adobe Acrobat (.pdf).

To narrow down the search within those files, the forensic consultants should to use the following key words to help quickly narrow down the files: Customer Type, ON Contract Date, Customer Since, Equity Methods Customer Type, Converted to Option Navigator, Account Name, Activity, Opportunities, Optionees, Salesforce.com, Equity Methods, Option Navigator, and Equity Analytics.

**Email:**

In the deposition request of Equity Administration Solutions, Inc. ("EASi"), Equity

Analytics, LLC asked for information on the following companies: Kaman, WHX Corp, Edge

Petroleum, Accurray, Atheros, Allstate Corporation, SteinMart, and DynCorp.

While searching for these companies on the hard drive, it is possible that they will find

these companies listed in weekly emails sent out to the whole EASi sales team normally titled

Q3 or Q4 Forecast followed by a date, and example of such a file name will look like: "Q4

Forecast 11-21-07.xls". These are weekly sales forecasts that go out to the whole sales team and

the individual sales member working each prospective company will be listed.

Regarding the companies above, they will find information on the following:

Kaman: There will be emails to and from Kaman starting on 10/08/2007 @ 10:35am.

Lundin learned about Kaman from a public website where Equity Analytics, LLC had their

appointments and demos posted.

Allstate: The forensic consultants will find emails that were sent out to the sales team as a

whole, stating when a meeting was going to take place. These emails are automatically

forwarded to a folder.

There is one email communication on 09/12/2007 between Lundin and Don Gillotti. Don

is asking to talk to Lundin regarding Equity Analytics, LLC.

There will be other information contained on the imaged hard drives about Allstate.

However, this will be of a private matter regarding Lundin's car and home insurance because

Lundin has been an Allstate customer since 1991.

WHX Corp.: On 09/24/2007 @ 12:36pm, Susan Handler with WHX sent an email from

the EASi website with the following message, "Please call me to discuss your software further.

2

We are actively looking for recordkeeping and SFAS 123R valuation software. Thanks, Susan Handler"

Kelly Reed of EASi took that request since it fell into her territory. A record of that email will be in the MS Entourage email program for that date.

On 09/13/2007 Lundin sent Amy Damianakes, EASi Marketing Consultant, three files that he had from his Equity Analytics, LLC days. Those files are: 2006 EM_NASPP_FEI.ppt, 10-24-2006 EM_Marketing_Messages.ppt, and Equity Methods – Pegasystems FAS123R Solutions Overview 11-10-2006.ppt.

On 09/04/2007, Lundin sent Vito Pamieri and Michael Guerra of EASi a file that contained Equity Analytics, LLC information named: 09-04-2007A.xls and on 09/11/2007 Lundin sent the same two individuals another file named: Tim Lundin's Lisx.xls.


**External Hard Drives:**

Western Digital: Within this hard drive image under a file that Lundin believes to be named "classes" or "school", the forensic consultants will find the backups that Lundin made of his Equity Analytics, LLC computer in case it would ever fail. All the Equity Analytics, LLC information should be contained in this folder. However, there will be folders within here that do contain private and personal information.


Gray LaCie External Hard Drive: This hard drive was used twice to make a backup of Lundin's Apple MacBookPro laptop. Due to the size of these backups, Lundin often deleted them as after a new one was made. There may be information in the slack space of this computer.

3

Orange LaCie External Hard Drive: This hard drive was attached to the Gray LaCie External Hard Drive where it operated in parallel to the Apple MacBookPro laptop. Lundin primarily uses this to store his music, movies and photography images on. This external hard drive should not contain any Equity Analytics, LLC files on it.

Wolverine MVP9000 External Hard Drive is strictly used for photography only when Lundin is out in the field and needs to transfer photos from his camera to a larger drive.

**Important Dates:**

The following dates were listed by Equity Analytics, LLC as successful Salesforce.com logins: 06-21-2007, 06-26-2007, 07-21-2007, 07-22-2007, 07-30-2007, 07-31-2007, 08-14-2007, 08-25-2007, 09-01-2007, 09-03-2007, 09-04-2007, 09-10-2007, 09-13-2007, 09-18-2007. The dates of 09-24-2007 and 10-01-2007 were the only times of an unsuccessful login.

**IP Addresses:**

The following IP Addresses were listed by Equity Analytics, LLC to access Salesforce.com:

- 216.15.41.108
- 70.7.204.15
- 70.1.147.188
- 70.1.124.228
- 70.1.45.235
- 70.7.22.32
- 70.7.209.82
- 208.54.95.129
- 208.54.95.1
- 38.97.99.98
- 68.27.236.106
- 68.104.202.45

4

**APPENDIX B**

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Equity Analytics, LLC,<br>operating as Equity Methods,<br><br>Plaintiff,<br><br>v.<br><br>Timothy D. Lundin,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.  1:07-cv-02033<br><br>Judge Royce C. Lamberth |

**STIPULATED PROTECTIVE ORDER**

UPON CONSIDERATION, the Parties' consent to the entry of this Protective

Order, it is on this _____ day of _____, 2008,

ORDERED that the following Protective Order is granted with respect to

discovery responses that are stamped "confidential", as well as electronically stored

information ("ESI"), including such ESI on Defendant's computer hard drives:

1.      This Order for the protection of confidential information (the "Protective

Order") shall be applicable to and shall govern all documents, including all ESI,

produced in response to formal and informal requests for production of documents and

things (including the imaging and examination of Defendant's hard drives), depositions,

interrogatory answers, responses to requests for admissions, subpoenas duces tecum to

third parties, including EASi, Defendant's current employer, and any other discovery

authorized by the Federal Rules of the Civil Procedure, court testimony, and matters of

evidence in connection with the Action.

2.      Any party or non-party who reasonably and in good faith believes information produced in this case to be confidential may, at the time of production, by written notice described herein, designate such information as "Confidential" and the information so designated (sometimes referred to as "Confidential Material") shall thereafter be subject to the provisions of this Protective Order.

3.      Any documents, material or information to be designated Confidential Material may be so designated either by: (a) furnishing a separate written or electronic notice to the undersigned counsel for the party receiving such documents, material or information at the time of their production or as soon thereafter as practicable, specifically identifying the documents, material or information to be so designated (e.g., by identifying the document number(s)); or (b) by affixing the legend "Confidential" in upper, lower or title case, on each page of such documents, material or information before their production.

4.      For purposes hereof, the term "Confidential" information shall mean any and all documents, material or information  of a personal, private, confidential, proprietary or business nature or concerning the medical, mental health, employment, promotion, business, financial affairs, or other personal information of any party or non-party to the Action acquired that constitutes a personal, sensitive and private information that such party believes, in good faith, would qualify for a protective order if sought from the Court.  Said information includes, but is not limited to, information, documents, or data concerning EASi or Plaintiff Equity Analytics' current or former employees, customers, and/or clients, and/or confidential or proprietary information about Equity Analytics or EASi.

5.    The inadvertent production of any Confidential Material during discovery in the Action without a "Confidential" designation shall be without prejudice to any claim that such material is "Confidential" or privileged in any respect or protected from discovery as trial preparation material, and no party shall be held to have waived any rights by such inadvertent production. In the event that any document that is subject to a claim of privilege or that is protected from discovery as trial preparation material is inadvertently produced, the party that received the document shall return the document together with all copies of the document to the producing party promptly after it receives a written notice from the producing party that the document was produced inadvertently.

6.    Subject to the provisions of the other terms and conditions herein specified, as follows, information designated "Confidential" shall be disclosed only to:

    a.    the parties to the Action whose counsel have executed this Protective Order on their behalf, including those officers, directors, agents and employees of such parties who are deemed necessary to aid counsel in the prosecution or defense of the Action;

    b.    the Court, including Court personnel;

    c.    Counsel;

    d.    internal accounting or internal finance personnel for the non-designating parties whose assistance outside counsel deems necessary to aid counsel in the prosecution or defense of the Action;

    e.    outside vendors who perform microfiching, photocopying, computer classification or similar clerical functions, including, but

3

not limited to, scanning and Bates numbering of documents, but only for so long as and to the extent necessary to perform those services;

f.    court reporters and other persons engaged in preparing transcripts of testimony of hearings in the Action;

g.    outside experts and/or advisors consulted by counsel in connection with the Action, whether or not retained to testify at trial;

h.    witnesses at any deposition in the Action, subject to the provisions of paragraphs 11, 12 and 13 of this Protective Order; and

i.    any other person to whom the designating party agrees in writing.

7.    Before being permitted access to "Confidential" information subject to this Protective Order, any individual or business entity described in numbered subparagraphs 6a-i above shall sign the form of agreement annexed hereto as Appendix "C," a copy of which (other than with respect to court, court reporters and any expert identified in subparagraphs 6b, f, or g above) shall be delivered to counsel for the furnishing party.  Any expert(s) identified in subparagraph 6g shall sign the form of agreement annexed hereto as Appendix "C," and deliver such to counsel for the non-furnishing party prior to receiving any of the furnishing party's Confidential Material, and the non-furnishing party shall disclose such written instruments to the furnishing party at the time this expert is identified as a potential trial witness.  If a party confers with such an expert but elects not to identify the expert as a potential trial witness, then the non-furnishing party shall disclose such agreement to the furnishing party following

4

the conclusion of this action by final judgment, appeal or settlement. The original of each agreement shall be retained by counsel of record for the party permitting disclosure.

8.      All material that is designated as Confidential in accordance with this Protective Order shall be used solely for the purposes of prosecuting or defending the Action and in connection with any appeals thereof. It may not be used for any business or commercial purpose or for any other litigation, administrative proceedings or dispute resolution procedures, except by written agreement by the designating party or upon order of this Court after reasonable notice and a hearing at which the designating and receiving parties shall have an opportunity to be heard. No person receiving any material designated as "Confidential" shall disclose such material to any person other than those described above, and such disclosure shall be in accordance with the terms of this Protective Order.

9.      This Protective Order shall not be construed: to apply to information which (a) is or becomes publicly known through no fault or effort of the receiving party, or (b) the receiving party or its counsel has, subsequent to the date of receipt of the information from the designating party, lawfully obtained from a third party or shall independently develop.

10.     All documents, material or information disclosed at a deposition, hearing or at trial shall be treated as "Confidential" until fifteen (15) business days after the testimony is given unless counsel for the parties agree to a different period of time. During such period, any party to the Action may notify another in writing that designated exhibits and/or portions of the transcripts are "Confidential". Such designated portions

will then be treated as if designated in accordance with these designations at the
deposition. Any portions not designated as Confidential within the 15-day period may be
used without restriction by this Protective Order.

11.    Upon the good faith assertion by counsel for the designating party that a
question or line of questions at a deposition or hearing is likely to result in the disclosure
of Confidential Material, any person not entitled under Paragraph 6 to access to
Confidential Material, shall leave the deposition or hearing until the question or line of
questions is completed, unless otherwise ordered by the Court, and the Confidential
Material disclosed at the deposition or hearing shall not, directly or indirectly, in whole or
in part, be disclosed or made available to any person, except those persons falling within
categories defined under Paragraph 6 above, with respect to material designated as
Confidential.

12.    In the event that any party, person, or entity otherwise bound by this
Protective Order intends to file any Confidential Material in the public record, such
material shall be filed under seal in a sealed envelope or other appropriate sealed
container in accordance with the rules regarding treatment of sealed materials.

13.    Within sixty (60) days after the conclusion of the Action and any appeals
arising there from, all documents, deposition testimony, transcripts or exhibits, and other
tangible materials not on file with the Court which constitute, reproduce, or reflect any
Confidential Material (and all copies thereof) shall be returned to the party who
designated the material to be Confidential unless otherwise agreed by the parties. All
summaries or other work product that contain or reflect Confidential Material (and all
copies thereof) shall be destroyed within ninety (90) days after the conclusion of the

Action and any appeals arising therefrom.  For the purposes of ESI, "destroyed" or "deleted" shall mean that each party shall use the software program named "Webroot Window Washer", said program permanently overwrites ESI.  Upon request, after the conclusion of the Action, counsel for each party to the Action shall provide counsel to the other parties to the Action with a certification of destruction of such Confidential Material.  The conclusion of the Action shall not relieve any person who has received Confidential Material pursuant to this Protective Order from the obligation to maintain the confidentiality of such material and the information contained therein.

14.    This Protective Order shall not be deemed a waiver of any party's right to: (a) object to any discovery request on any ground; (b) seek an order compelling discovery with respect to any discovery request; and/or (c) object to the admission of any evidence on any grounds in any proceeding.

15.    If Confidential Material is produced or disclosed without having been so designated, future disclosure of the document or thing may be restricted in accordance with this Protective Order by notifying the receiving parties in writing of the change in or addition of such restrictive designation with respect to the document or thing.  The receiving parties shall then take reasonable steps to prevent any further disclosure of such newly designated Confidential Material, except as permitted by this Order.

16.    If Confidential Material designated in accordance with the procedures of this Protective Order is disclosed to any person other than in the manner authorized by this Protective Order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the counsel of record for the party whose Confidential Material was disclosed and, without prejudice to any other

7

rights and remedies of the provider, make every effort to prevent further disclosure by it or by the person or entity who was the recipient of such information.

17.    The Court shall retain jurisdiction even after the termination of the Action to enforce this Protective Order and to make such amendments, modifications, deletions, and additions to this Protective Order as the Court may from time to time deem appropriate.  The parties hereto may apply to the Court at any time, before or after termination, for an order modifying this Protective Order or seeking further protection against discovery or use of Confidential Material.

18.    Nothing herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence.

19.    Nothing herein shall be construed to be an admission or waiver by any party of the confidential, proprietary, or trade secret status of the Confidential Material disclosed in the formal or informal discovery in this case.

20.    Nothing contained herein shall be construed to prohibit either party from seeking such further provisions or relief as they may deem appropriate or desirable regarding this Protective Order or the matter of confidentiality.

21.    The designation of information as Confidential Material pursuant to this Protective Order shall not preclude any party from disclosing the information to any person who, in the case of a document, appears as the author or as a recipient thereof on the face of the document, or from disclosing the information to any person who has been identified by the designating party as having been previously provided with the document or the information therein.

8

22.    In the event anyone shall violate or threaten to violate any terms of this Protective Order, the parties agree that the aggrieved party may immediately apply to obtain injunctive relief against any such person violating or threatening to violate any of the terms of this Protective Order and, in the event the aggrieved party shall do so, the respondent person subject to the provisions of this Protective Order shall not employ as a defense thereto the claim that the aggrieved party does not possess an adequate remedy of law.

23.    Notwithstanding any of the above, Parties may make general references to Confidential Materials in pleadings, motions or briefs provided that the substance of the Confidential Materials is not revealed.

24.    The parties agree to submit this Protective Order to the Court to be "So Ordered" and further agree that, until the Court approves this Protective Order, it shall be effective as if approved.

25.    The parties agree that this Court's jurisdiction over these documents shall not provide this Court with any additional jurisdiction over the parties beyond that which it could take or would have taken, if this Protective Order did not exist and was not signed.

26.    This Order shall be binding upon the parties, upon their attorneys, and upon the parties' and their attorneys' respective successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control.

Entered this ____ day of _____, 2008.


_____
Judge Royce C. Lamberth

SEEN AND AGREED:


_____          _____
Robert B. Fitzpatrick                     Robert T. Shaffer, III
Bar No. 040410                            Bar No. 04074
Robert B. Fitzpatrick, PLLC               Murphy & Shaffer, LLC
Universal Building South                  Suite 1400
1825 Connecticut Avenue, N.W.             36 South Charles Street
Suite 640                                 Baltimore, Maryland 21201
Washington, D.C. 20009                    Phone: 410-783-7000
Phone: 202-588-5300                       Fax: 410-783-8823
Fax: 202-588-5023                         Email: rshaffer@murphyshaffer.com
Email: Fitzpatrick.law@verizon.net

                                          Joseph J. McAlee, Esq.
                                          Rubin, Fortunato & Harbison, P.C.
                                          MCS Building
                                          10 South Leopard Road
                                          Paoli, Pennsylvania 19301
                                          Phone: (610) 408-2004
                                          Fax: (610) 854-4317
                                          Email: jmcalee@rubinfortunato.com

Attorney for Defendant                    Attorneys for Plaintiff


10

Served via electronic mail to:

<u>Attorney for Defendant</u>

Robert B. Fitzpatrick, Esquire
Bar No. 040410
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue., N.W.
Suite 640
Washington, DC  20009
Phone: 202-588-5300
Fax: 202-588-5023
Fitzpatrick.law@verizon.net


<u>Attorneys for Plaintiff</u>

Robert T. Shaffer, III Esquire
Bar No. 04074
Murphy & Shaffer LLC
Suite 1400
36 S. Charles Street
Baltimore, Maryland 21201
Phone: 410-783-7000
Fax: 410-783-8823
Email: rshaffer@murphyshaffer.com

Joseph J. McAlee, Esq.
Rubin Fortunato
MCS Building
10 South Leopard Road
Paoli, Pennsylvania 19301
Phone: (610) 408-2004
Fax: (610) 854-4317
Email: jmcalee@rubinfortunato.com

**APPENDIX C**

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Equity Analytics, LLC,  )
operating as Equity Methods,  )
)
Plaintiff,  )
)
v.  )  Civil Action No. 1:07-cv-02033
)
Timothy D. Lundin,  )  Judge Royce C. Lamberth
)
Defendant.  )
)

## DECLARATION OF RECIPIENT OF CONFIDENTIAL INFORMATION UNDER STIPULATED PROTECTIVE ORDER

    I, _____ declare as follows:

1.   My address is: _____

2.   My present employer is: _____

3.   My present occupation or job description is:_____

4.   I, _____, have read the foregoing Agreed Protective Order (the "Protective Order") on this _____ day of _____, 2008 in the above-referenced action and agree to be bound by its terms with respect to any documents, electronically stored information ("ESI"), material or information designated as "Confidential" ("Confidential Material") that are furnished to me as set forth in the Protective Order.

5.   I hereby acknowledge my receipt of information designated as "Confidential" under the Stipulated Protective Order in the above lawsuit. I certify my understanding that such information is provided to me pursuant to the terms and restrictions of the Stipulated Protective Order.

6.    I further state that I have been given a copy of and have read the Stipulated

Protective Order, that I am familiar with the terms of the Stipulated Protective Order, that

I agree to comply with and to be bound by each of the terms thereof, and that I agree to

hold in confidence any information disclosed to me pursuant to the terms of the

Stipulated Protective Order. I specifically agree that I shall not disclose such information

to any person who has not also executed a Declaration in this form.

7.    I understand that my failure to comply with the terms of the Stipulated Protective

Order could result in the imposition of sanctions against me and/or the party by whom I

am employed or on whose behalf I have been retained in this lawsuit.

To assure my compliance with the Stipulated Protective Order, I hereby submit

myself to the jurisdiction of the United States District Court for the District of Columbia

for the limited purpose of any proceedings relating to the performance under, compliance

with or violation of the Stipulated Protective Order.

8.    I understand that I am to retain all of the materials that I receive which have been

designated as "Confidential" in a container, cabinet, drawer, room, or other safe place in

a manner consistent with this Stipulated Protective Order; that I am to make no copies or

other reproductions of any such materials except for my use pursuant to the terms of this

Stipulated Protective Order; that all such materials (including copies or reproductions)

are to remain in my custody until I have completed my assigned duties, whereupon they

are to be returned to the party who provided them to me; and that any materials,

memoranda, work notes, or other documents derived from documents designated as

"Confidential" or containing any information contained therein are to be delivered to the

party who provided the designated materials. Such delivery shall not relieve me from any

of the continuing obligations imposed upon me by the Stipulated Protective Order. I further agree to notify any stenographic or clerical personnel who are required to assist me of the terms of the Stipulated Protective Order.

9.    I understand that all Confidential Material (including, but not limited to ESI), summaries or other work product that contain or reflect Confidential Material (and all copies thereof) shall be destroyed within fifteen (15) business days after the conclusion of the litigation, including any appeals.  For the purposes of ESI, "destroyed" or "deleted" shall mean that each party shall use the software program named "Webroot Window Washer", said program permanently overwrites ESI.

10.    I have been advised that any unauthorized use or disclosure by me of such documents, data and/or information will be treated as a breach of the Confidentiality Agreement and Protective Order, for which I may be liable for damages.

11.    I declare under penalty of perjury that the foregoing is true and correct.


_____

(Signature)


Printed Name: _____

Date: _____

3

EXHIBIT "D"



**RubinFortunato**
Employment Law That Works

**JOSEPH J. McALEE**
*Direct Dial:  (610) 408-2004*
*Direct Fax:  (610) 854-1317*
*Email:  jmcalee@rubinfortunato.com*

November 1, 2007

***VIA UPS Next Day Air***

Mr. Timothy Lundin
2901 18th St. NW Apt. 207
Washington, DC 20009-2956

Re:    **Your Post-Employment Contractual and Legal Obligations Owed to Merrill Lynch, Pierce, Fenner and Smith, Inc./Equity Methods**

Dear Mr. Lundin:

This office represents Merrill Lynch, Pierce, Fenner & Smith, Inc. and Equity Methods. We have been apprised that on October 2, 2007, you were named Director of Sales for Equity Administration Solutions, Inc. (EASI).  A copy of the press release announcing your association with EASI is enclosed for your reference.  Your new position with EASI may trigger certain obligations on your part as set forth in the Nondisclosure, Assignment of Intellectual Property and Non-Competition Agreement that you signed as a condition of your employment with Equity Methods, LLC ("Equity Methods"), a copy of which is enclosed for your reference.  As part of our investigation, we ask that you confirm or deny your employment with EASI as its Director of Sales.

On behalf of Equity Methods, demand is hereby made that you immediately return to Equity Methods any and all original and/or copied records, documents, memoranda, notes, or computer data that contain the names, addresses, holdings, or other financial information of any account you serviced, or assisted in servicing, at Equity Methods or any customer or account whose name became known to you during your employment with Equity Methods.

Further demand is made that you: (1) not disclose the above information to any party, including your new employer; (2) not convert the above information, records, or copies to your own use or to the use of your new employer; and (3) not solicit the above customers or clients in any way.

Mr. Timothy Lundin
November 1, 2007
Page 2 of 4

In the event that you may have already engaged in some or all of the above prohibited conduct, Equity Methods demands that you immediately cease and desist from this conduct and immediately (1) return all original documents, notes, records, and all copies thereof, including all computer data and disks; (2) retrieve any information, records, or copies that you have used or disclosed; and (3) refrain from further solicitation.

As you are aware, this conduct: (a) is prohibited by the terms of the Nondisclosure, Assignment of Intellectual Property and Non-Competition Agreement that you signed as a condition of your employment with Equity Methods; (b) constitutes a conversion of Equity Methods' confidential information; (c) constitutes a breach of your fiduciary duty to both Equity Methods and the customers you served as a representative on behalf of Equity Methods; and (d) constitutes unfair competition.

Further demand is hereby made that you bring this letter, and the enclosures to this letter, to the immediate attention of your supervisors and the Law and Compliance officers at your new employer, so that your new employer is made aware of all obligations owed by you to Equity Methods and so that your new employer can take all appropriate steps necessary to ensure strict compliance with your continuing obligations to Equity Methods.

It has also come to our attention that an as yet unidentified individual has accessed the confidential electronic files of Equity Methods without authorization remotely through a Macintosh computer at an I.P. address located in Reston, Virginia on the following dates: May 28, June 21, June 26, July 18, July 21, July 22, July 30, July 31, August 14, August 25, September 1, September 3, September 4, September 10, September 13, September 18, September, 24, October 1, and October 28, 2007.
Any information you can provide us as to the identity of the individual and the method he or she is using to gain access the confidential electronic files of Equity Methods would be greatly appreciated. Thank you in advance for your anticipated cooperation in this regard.

To reiterate, we ask that you contact us in writing by November 7, 2007 to:
- confirm or deny your employment with EASI;
- make arrangements to return all of Equity Method's documents and information, including information in electron.z format; and
- provide any information you may have with respect to the unauthorized access to Equity Methods' confidential files described above.

Finally, as this matter involves important legal rights for you, we recommend that you seek legal counsel.

Mr. Timothy Lundin
November 1, 2007
Page 3 of 4

Very truly yours,

RUBIN, FORTUNATO & HARBISON P.C.

Joseph J. McAlee

Enclosure

Timothy D. Lundin 11/14/07

Page 1

                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
EQUITY ANALYTICS, LLC,       :
operating as EQUITY          :
METHODS,                     :
          Plaintiff,         :
                             : CIVIL ACTION NO.:
     vs.                     : 1:07-cv-02033
                             :
TIMOTHY D. LUNDIN,           :
          Defendant.         :

                   V O L U M E   I

                 ---------------------
          The Discovery Deposition of TIMOTHY D.
LUNDIN was taken on Wednesday, November 14, 2007
at 11:07 a.m. at the Law Offices of Williams &
Connolly, LLP, 725 12th Street, N.W., Conference
Room 2N, Washington, D.C. before Deborah C. D.
Shumaker, Notary Public.
                 ---------------------


          Evans Reporting Service

          The Munsey Building

          7 North Calvert Street

          Suite 705

          Baltimore, Maryland  21202

          (410) 727-7100

Timothy D. Lundin 11/14/07

Page 22

1    Q.  Do you have some type of -- how would
2  you access that?
3    A.  You plug it into your computer, and it
4  connects to the Internet.
5    Q.  But do you have to plug something into
6  your computer? Would that be an air card?
7    A.  That would be an air card, yes.
8    Q.  How long did you have that
9  particular -- how long did you use that
10  particular access service?
11    A.  I've had that access service since
12  approximately mid 2006.
13    Q.  So while you were employed with Equity
14  Analytics?
15    A.  Analytics, yes.
16    Q.  Before you came to Washington, where
17  were you living?
18    A.  Scottsdale, Arizona.
19    Q.  And how long had you lived in
20  Scottsdale?
21    A.  I moved to Scottsdale for the job with

Page 23

1  Equity Methods, LLC.
2    Q.  That would have been in --
3    A.  August -- I arrived in Scottsdale mid
4  August of 2005.
5    Q.  And you left in approximately April of
6  2007?
7    A.  Yes.
8    Q.  And what kind of computer do you have
9  now?
10    A.  I have an Apple.
11    Q.  And how long --
12    A.  An Apple computer laptop.
13    Q.  And what kind of Apple computer is
14  that?
15    A.  Apple laptop.  They make MacBook Pro.
16    Q.  Is it a Mac?
17    A.  Yeah.  Apple and Mac are one and the
18  same.
19    Q.  I told you, I am not a technical
20  person, so I appreciate your patience.
21       How long have you had that particular

Page 24

1  computer?
2    A.  I received that computer in March of
3  2006.
4    Q.  When you say you received it, was it
5  provided to you as a part of the job that you
6  were working on at that time?
7    A.  No.  I bought it.
8    Q.  Oh, you bought it.  Okay.
9       And what type of operating system do
10  you have on that computer now?
11    A.  OS10.
12    Q.  Excuse me?
13    A.  OS10.
14    Q.  OS10.  Okay.  And who manufactures
15  that?
16    A.  Apple.
17    Q.  Apple?  Okay.  And has that operating
18  system always been on that computer?
19    A.  Yes.
20    Q.  Have you gotten any upgrades or
21  anything like that to the operating system since

Page 25

1  the time you purchased it?
2    A.  Last week.
3    Q.  And what did you get last week?
4    A.  The new version of OS10, Leopard.
5    Q.  When did you get that?  Do you remember
6  what day it was?
7    A.  I loaded it on -- I'd have to look at a
8  calendar, but it was Saturday, the 4th of
9  November, I believe.  I don't have the calendar
10  in front of me.  I can't say.
11    Q.  But it wasn't this past Saturday?  It
12  was the Saturday before that?
13    A.  Right.
14    Q.  And the Sprint account, can you recall
15  when you first purchased the air card for that
16  account or when you first started using Sprint as
17  an Internet service provider?
18    A.  It was mid 2006.
19    Q.  Around the same time you obtained the
20  computer?
21    A.  Yes.

Court Reporting in Evans Reporting Service   Over 20 years of
Baltimore/Washington  800-256-8410  award-winning service

124276ad-3148-4c36-9f5c-3aba590c0fd4

EXHIBIT "E"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUITY ANALYTICS, LLC, operating as  :
EQUITY METHODS
             :
    Plaintiff,     :
             :
  v.         :  CIVIL ACTION NO:
             :
TIMOTHY LUNDIN.    :
             :
    Defendants.   :

### AFFIDAVIT OF MELISSA KIRK

  I, Melissa Kirk, state as follows:

1.  I am employed as the Assistant Vice President of Operations for Equity

Analytics, LLC where Defendant Timothy Lundin ("Lundin") was employed.  I submit

this Affidavit on personal knowledge in support of Equity Analytics, LLC's Motion for

Temporary Restraining Order and Preliminary Injunction against Lundin.

2.  Equity Analytics, L.L.C. ("Equity Analytics"), formerly Equity Methods,

L.L.C., located in Scottsdale, Arizona, provides employee stock option valuation and

Financial Accounting Standards Board No. 123 Revised ("FAS 123R") reporting.  Since

1998, Equity Analytics has partnered with public companies to address their respective

equity compensation compliance, reporting, and forecasting challenges through a

portfolio of products and professional services. Equity Analytics' Option Navigator™

product provides a web based option valuation and FAS 123R reporting application,

which enables clients to independently generate reports.

3.  In my capacity of Assistant Vice President of Operations, I have

responsibility for managing the Information Technology staff and daily operations of

Equity Analytics, LLC. I also assist in the oversight of security and risk management through the implementation and administration of general computer and business controls which effectively help to identify and manage risks which could affect Equity Analytics' ability to provide reliable valuation and FAS123(r) reporting services to clients.

    4.    I am generally familiar with the facts and circumstances of Lundin's employment by Equity Analytics, LLC. In particular, as a condition of his employment with Equity Analytics, LLC, Lundin signed a <u>Non-Disclosure, Assignment of Intellectual Property and Non-Competition Agreement</u>, which confirmed the confidentiality of Equity Methods' records and contained Lundin's agreement not to "directly or indirectly, disclose to anyone outside of Equity Methods any Confidential Information or use any Confidential Information for his/her benefit or for the benefit of others." (A copy of the <u>Non-Disclosure, Assignment of Intellectual Property and Non-Competition Agreement</u> executed by Lundin is attached hereto as Exhibit "A.")

    5.    I am also generally familiar with the records and information relating to the clients Lundin serviced while employed at Equity Analytics, LLC, as well as the potential clients contacted by Lundin during his tenure of employment at Equity Analytics, LLC.

    6.    Lundin was hired as the Northeast Director of Sales and Marketing for Equity Analytics, LLC in August 2005. Lundin was terminated in December 2006.

    7.    Lundin received many benefits throughout his employment with Equity Analytics, LLC. Equity Analytics, LLC compensated Lundin at all times throughout his employment and provided him with employment-related benefits and opportunities. Equity Analytics, LLC provided Lundin with extensive equity compensation and

FAS123(R) training, professional sales training as well as office facilities, secretarial services, computer systems, research, the benefit of Equity Methods' advertising, goodwill and name recognition and promotional marketing and sales support

8.    In connection with his employment at Equity Analytics, LLC, Lundin had access to information regarding Equity Analytics, LLC's business, the confidential information contained therein, and specifically the identity of Equity Analytics, LLC customers and prospects, including their names and addresses, and the services provided and/or needed.

9.    On October 2, 2007, Lundin was hired by Equity Administration Service, Inc., a competitor of Equity Analytics, LLC, as Director of Sales.

10.    On October 30, 2007 at approximately 8:30 a.m., the Senior Systems Administrator, who reports directly to me, informed me that one of the sales staff had called into the IT help desk with concerns of an unauthorized user accessing the company Salesforce.com account. I immediately went to the reporting sales member to discuss the issue and determine the circumstances of the unauthorized access in order to accurately remedy the situation as quickly as possible. As soon as I was able to secure the Salesforce.com site to ensure authorized user access only, I ran an administrative report from Saleforce.com listing the complete log-in history for Equity Analytics, LLC. (A copy of the log-in history is attached as Exhibit "B").

11.    I was able to determine from my review of the log-in history that there were a number of inconsistencies with respect to the operating system platform and web browser software used to access Equity Analytics, LLC's Salesforce.com data. Specifically, two Equity Analytics, LLC employees, Eric Aguirre and Karen Damaso

3

appeared to have logged in using a Macintosh operating system and a Firefox web browser. I spoke to both employees. Both denied owning a Macintosh computer and confirmed they had never used anything other than their company issued laptops to access Salesforce.com. All Equity Analytics, LLC PC's and laptops are issued with a Window's 2003 Professional operating system and Internet Explorer 6.0 web browser. User permissions on all Equity Analytics, LLC's PCs and laptops are disabled from allowing users to change or modify the standard system configuration, including operating system and web browsing software.

12.     My review of the log-in history also identified that an individual using a Macintosh operating system and Firefox browser was able to successfully access the confidential electronic files of Equity Analytics, LLC on the following dates: May 28, June 21, June 26, July 18, July 21, July 22, July 30, July 31, August 14, August 25, September 1, September 3, September 4, September 10, September 13, September 18, and October 28, 2007.

13.     The first unauthorized log-in attempt occurred on May 28, 2007 with Karen Damaso's Saleforce.com UserID and password. The initial attempt to log in was unsuccessful but a second attempt was made, which resulted in a successful log in to the Equity Analytics, LLC. Salesforce.com account. Nearly a month later, a user with the same profile (using a Macintosh operating system and Firefox web browser) was able to successfully login to the Equity Analytics, LLC Salesforce.com account using Eric Aguirre's login credentials.

14.     Upon suspecting unauthorized access of the Equity Analytics, LLC Salesforce.com account, due to a loss of several sales prospects and existing clients to

4

Equity Administration Service, Inc. over the recent months, Mr. Aguirre changed his password to the Salesforce.com account on or about September 24, 2007. On September 24, 2007, the user with the suspicious profile attempted to log into Salesforce.com several times using Mr. Aguirre's credentials. After five unsuccessful login attempts, the unauthorized user then switched back to Karen Damaso's login credentials on October 28, 2007. All Equity Analytics, LLC users were forced to change their password on October 30, 2007, and as of this date, no additional logins by an unauthorized user have been made

15.    The log-in history report from Salesforce.com also includes the IP address associated with each user login. I took the IP addresses associated with the inconsistent log-ins and researched them using Whois.net by IP address, a web based service which provides a mechanism for finding contact and registration information for resources registered with the American Registry for Internet Numbers, containing not only IP address information but also autonomous system numbers, organizations or customers that are associated with these resources, and related Points of Contact. Most of the inconsistent log-ins trace back to a Sprint PCS wireless card registered to the address 12502 Sunrise Valley Dr., Reston, VA 20191. (A copy of the screen shot of the Whois.net results is attached as Exhibit "C"). I have been informed that a Sprint facility is located at this Reston, VA address. Certain other inconsistent log-ins came through an internet router in Atlanta owned by Cox Communications, which I was unable to trace any further.

16.    Because I am Equity Analytics, LLC's IT manager, Lundin, during his employment with Equity Analytics, LLC, often expressed his opinion to me that

5

Macintosh computers and Firefox web browser software are superior to the Dell PCs,

Windows operating systems and Internet Explorer web browser software used by Equity

Analytics, LLC. I personally observed Lundin using a Macintosh computer and Firefox

web browser software while he was employed by Equity Analytics, LLC. As stated

above, a Macintosh operating system and a Firefox web browser were used in the

unauthorized access of Equity Analytics, LLC's Salesforce.com data.

      17.    I also know that following his termination of employment from Equity

Analytics, LLC, Lundin moved to the Washington, D.C. metropolitan area. Most of the

unauthorized log-ins trace back to a Sprint PCS wireless card registered to a Sprint

facility in Reston, Virginia, outside Washington, D.C. Based on these points of

reference, it is my belief that the unidentified person who accessed Equity Analytics,

LLC's Salesforce.com data was Lundin.

      18.    I have confirmed that several customers of Equity Analytics, LLC are no

longer serviced by Equity Analytics, LLC and are now serviced by Equity Administration

Service, Inc., a competitor of Equity Analytics, LLC, and Lundin's current employer. In

fact, this has occurred only since Lundin began working for Equity Administration

Service, Inc. in October 2007.

      19.    The information contained in Equity Analytics, LLC's Salesforce.com

data include highly proprietary information. Not only are the customer and prospect

names, addresses and the type of services that Equity Analytics, LLC provides to them

included in the Salesforce.com files, they also include scheduled meetings, customer

desires for future services as well as possible recommendations for future services.

Simply, the information in the Salesforce.com files provides a roadmap for pirating

Equity Analytics, LLC's customers and prospects. Additionally, by accessing the Salesforce.com files, Lundin would not have had access to only information regarding customers he serviced, but access to **all** of Equity Analytics, LLC's customer and prospect information.

20.    The information in the Salesforce.com files was entrusted to Equity Analytics, LLC by its clients and prospects with the expectation that it would remain confidential and would not be disclosed to any third party. Equity Analytics, LLC has an obligation to maintain strict confidentiality of this information and sought to enforce that obligation by emphasizing to its employees, including Lundin, the proprietary nature of this information. This obligation is set out in Equity Methods' Computer Resource Policy, with which Lundin agreed, in writing and on an annual basis, to obey. In this regard, Lundin was aware (and in fact acknowledged) he was forbidden from disseminating confidential customer information or lawfully accessing confidential customer information with another employee's ID. (See, Exhibit "D" at p. 2, "Prohibited Activities" and "Passwords." A copy of Equity Analytics, LLC's Computer Resource Policy, provided to and acknowledged by Lundin is attached hereto as Exhibit "D.")

21.    Equity Analytics, LLC has now instituted a new policy with regard to Salesforce.com passwords. Specifically, for each active user, the last 5 passwords cannot be reused and passwords must be changed at least every 90 days.

22.    Virtually all the Equity Analytics, LLC customers that Lundin serviced were developed by Equity Analytics, LLC at great expense and over a number of years. Equity Analytics, LLC's customer files are the lifeblood of its business and the expenditures incurred by Equity Analytics, LLC in obtaining its clients include monies

spent by Equity Analytics, LLC every year on product marketing, research and development, employee training and overall compensation, client relationship management and support, technical systems and software development and maintenance as well as the many other expenditures Equity Analytics, LLC incurs in maintaining its goodwill in the industry and in compiling its customer list.

23.    The Equity Analytics, LLC customers that Lundin serviced resulted directly from the expenditures Equity Analytics, LLC incurs, including and without limitation; advertising, training, information systems and technology, support staff, retention of industry experts, as well as product research and development. Lundin had access to Equity Analytics, LLC's customer files solely by virtue of his employment with Equity Analytics, LLC.

24.    Unless Lundin's conduct is immediately enjoined, Equity Analytics, LLC will suffer continued severe and permanent damage.

25.    Lundin's conduct has caused, and will continue to cause, irreparable harm to Equity Analytics, LLC as follows:

        a)    Disclosure of trade secrets, customer lists, and other confidential information that are solely the property of Equity Analytics, LLC and its clients;

        b)    Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

        c)    Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

8

26.    Unless the Defendants' conduct is immediately and preliminarily enjoined, Equity Analytics, LLC will continue to suffer irreparable harm and incalculable damage.

I hereby state under the penalty of perjury that the foregoing is true and correct.

Executed on: __11/7/07__

MELISSA KIRK

Sworn to and Subscribed
Before me this __7__ day
of November 2007.

Notary Public

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
JOHN DAVIS
My Commission Expires 05/25/08

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUITY ANALYTICS, LLC, operating as     :
EQUITY METHODS     :
    :
        Plaintiff,     :
    :
     v.     :    CASE NO:07-2033
    :    (RCL/JMF)
TIMOTHY LUNDIN.     :
    :
        Defendants.     :

## SUPPLEMENTAL AFFIDAVIT OF MELISSA KIRK

I, Melissa Kirk, state as follows:

1.     I make this Supplemental Affidavit to revise and update my previous

Affidavit filed in this action to reflect the results of my continuing investigation into the

apparent unauthorized access to Equity Analytics, LLC's ("Equity Analytics") customer

and sales data.

2.     My investigation into this matter is continuing. After I prepared and

executed my previous Affidavit, I learned of additional information that makes several

statements inaccurate or misleading. Specifically, those statement relating to Karen

Damaso's logging in to Equity Analytics Salesforce.com data using a Macintosh

computer I now know to be inaccurate.

3.     During my continuing investigation and after I had executed my previous

Affidavit, I learned that Ms. Damaso's parents own a Macintosh computer and that on a

few rare occasions, Ms. Damaso logged in to Equity Analytics' Salesforce.com platform

using her parents' computer. I have also confirmed that the I.P. addresses associated with

the three Macintosh log-ins using Ms. Damaso's ID correspond with the internet services provider used by Ms. Damaso's parents.

    4.      My previous Affidavit is true and accurate in all other respects.

I hereby state under the penalty of perjury that the foregoing is true and correct.

Executed on:     11/15/07

MELISSA KIRK

Sworn to and Subscribed
Before me this 15 day
of November 2007.

Notary Public

PATRICIA L. SOHLBERG-FRANCHEK
Notary Public - Arizona
Maricopa County
My Comm. Expires Jul 30, 2010

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUITY ANALYTICS, LLC, operating as     :
EQUITY METHODS     :
    :
        Plaintiff,     :
    :
       v.     :       CASE NO: 07-2033
    :       (RCL/JMF)
TIMOTHY LUNDIN.     :
    :
        Defendants.     :

## SECOND SUPPLEMENTAL AFFIDAVIT OF MELISSA KIRK

I, Melissa Kirk, state as follows:

1.      Equity Analytics, LLC's ("Equity Analytics") Salesforce.com platform contains many categories of information. Each category is called a "field." The platform contains a number of general fields that are automatically set by Salesforce.com. Equity Analytics has customized its interface by adding numerous custom fields that it has determined are necessary to support its sales team. These custom fields are unique to Equity Analytics and are not known outside of Equity Analytics.

2.      During my continuing investigation of the events of unauthorized access to Equity Analytics' Salesforce.com platform, I requested detailed reports of the twenty-two suspicious log-ins identified in my previous affidavits. These reports contain information about the exact time, to the second, of the unauthorized log-ins, the number of web pages accessed, whether searches of the data were run, and whether reports were downloaded. The reports also list the data fields that were downloaded. Salesforce.com provided the reports to me on Thursday, November 15, 2007. I have analyzed the reports and am providing my analysis in this affidavit.

3.      On June 21, 2007 a person using a Macintosh computer (the "Unauthorized User") accessed Equity Analytics' Salesforece.com platform with Eric Aguirre's log-in credentials at 7:30:28 a.m. Mountain time.  By "accessed" I mean that the Unauthorized User provided a valid user name and password to the system and was then able to view, search, prepare and download reports of any and all Equity Analytics' customer and sales notes and records.  This session lasted nineteen minutes and the Unauthorized User viewed twelve web pages of information, including two sets of search results at 7:31:28 a.m. and 7:48:14 a.m.  By "search results" I mean that the Unauthorized User typed a request for particular information using a specific word or words and the system then provided a list of files or records where that word or words appear.  No downloads occurred.  The session ended at 7:49:08 a.m.

4.      On June 21, 2007 at 8:28:06 a.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials.  This session lasted twelve minutes and the Unauthorized User viewed sixteen web pages of information, including one set of search results at 8:36:50 a.m.  No downloads occurred.  The session ended at 8:40:21 a.m.

5.      On June 26, 2007 at 12:20:45 p.m., the Unauthorized User accessed Salesforce.com using Eric Aruirre's log-in credentials.  This session lasted two minutes and the Unauthorized User viewed ten web pages of information, including one set of search results at 12:20:58 p.m.  The session ended at 12:22:38 p.m.

6.      On July 18, 2007 at 8:55:22 p.m., the Unauthorized User accessed Salesforce.com using Eric Aruirre's log-in credentials.  This session lasted less than one

2

minute and the Unauthorized User viewed three web pages of information.  The session ended at 8:55:29 p.m.

7.     On July 21, 2007 at 7:15:34 a.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials.  This session lasted eleven minutes and the Unauthorized User viewed eight web pages of information, including one set of search results at 7:15:48 a.m.  No downloads occurred.  The session ended at 7:26:20 a.m.

8.     On July 22, 2007 at 12:08:19 p.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials.  This session lasted two hours and three minutes and the Unauthorized User viewed one hundred eight web pages of information.  The Unauthorized User downloaded seven reports as follows:

- 12:26:56 p.m. with thirteen data fields;

- 12:31:10 p.m. with seventeen data fields;

- 12:40:06 p.m. with one hundred twenty five data fields, including Equity Analytics custom fields of "customer type," "contract expiration date," and "consulting demo date" among others;

- 12:58:26 p.m. with twenty-one date fields;

- 1:21:18 a.m. with one hundred forty-three data fields, including Equity Analytics custom fields;

- 2:04:28 p.m. with fifteen data fields; and

- 2:08:33 p.m. with fifteen data fields.

The session ended at 2:11:05 p.m.

9.     On July 30, 2007 at 9:59:47 a.m., the Unauthorized User accessed Salesforce.com using Eric Aruirre's log-in credentials.  This session lasted two minutes

3

and the Unauthorized User viewed nine web pages of information, including one set of search results at 10:00:41 a.m. The session ended at 10:01:38 a.m.

10.    On July 31, 2007 at 6:45:41 a.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials. This session lasted fifteen minutes and the Unauthorized User viewed twenty-one web pages of information. The Unauthorized User downloaded three reports as follows:

- 6:53:28 a.m. with sixteen data fields, including Equity Analytics' custom fields;

- 6:59:38 a.m. with eight data fields, including Equity Analytics' custom fields; and

The session ended at 7:00:02 a.m.

11.    On July 31, 2007 at 9:18:19 a.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials. This session lasted one minute and the Unauthorized User viewed seven web pages of information. The Unauthorized User downloaded one reports as follows:

- 9:19:57 a.m. with fifteen data fields.

The session ended at 9:19:57 a.m.

12.    On August 14, 2007 at 3:34:55 p.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials. This session lasted one minute and the Unauthorized User viewed three web pages of information. No searches or downloads occurred. The session ended at 3:34:58 p.m.

13.    On August 25, 2007 at 12:36:48 a.m. the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials. This session lasted one minute

4

and the Unauthorized User viewed four web pages of information. No searches or downloads occurred. The session ended at 12:36:55 a.m.

14.     On September 1, 2007 at 6:30:14 a.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials. This session lasted less than one minute and the Unauthorized User viewed three web pages of information. No searches or downloads occurred. The session ended at 6:30:15

15.     On September 3, 2007 at 7:20:02 p.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials. This session lasted eleven minutes and the Unauthorized User viewed fifteen web pages of information. The Unauthorized User downloaded two reports as follows:

- 7:26:49 p.m. with eight data fields, including Equity Analytics' custom fields of "status," "subject," and "due date" among others; and

- 7:31:12 p.m. with fifteen data fields.

This session ended at 7:31:12 p.m.

16.     On September 4, 2007 at 5:06:17 a.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials. This session lasted one hour and thirty-four minutes and the Unauthorized User viewed fifty-four web pages of information. The Unauthorized User downloaded three reports as follows:

- 5:17:45 a.m. using with thirty-two data fields, including Equity Analytics' custom fields;

- 5:43:20 a.m. with sixty-five data fields, including Equity Analytics' custom fields; and

5

- 6:26:14 a.m. with thirty-one data fields, including Equity Analytics' custom fields.

The session ended at 6:40:21 a.m.

17.    On September 10, 2007 at 11:51:25 a.m., the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials.  This session lasted three minutes and the Unauthorized User viewed eighteen web pages of information.  The Unauthorized User downloaded two reports as follows:

- 11:54:17 a.m. with seventeen data fields; and
- 11:54:52 a.m. with seventeen data fields.

This session ended at 11:54:53 a.m.

18.    On September 13, 2007 at 8:39:21 a.m. the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials.  This session lasted thirty-seven minutes and the Unauthorized User viewed sixteen web pages of information.  The Unauthorized User downloaded one report as follows:

- 9:17:31 a.m. with seven data fields

This session ended at 9:18:01 a.m.

19.    On September 18, 2007 at 7:44:59 a.m. the Unauthorized User accessed Salesforce.com using Eric Aguirre's log-in credentials.  This session lasted sixteen minutes and the Unauthorized User viewed thirty-two web pages of information.  The Unauthorized User downloaded three reports as follows:

- 7:48:31 a.m. with twenty data fields;
- 7:52:05 a.m. with twenty-four data fields; and
- 8:00:38 a.m. with twenty-two data fields;

The session ended at 8:01:28 a.m.

20.    At this time I am unable to determine how much data was downloaded in each of the reports. I have requested this information from Salesforce.com and will provide it as soon as it is available. Given that the Unauthorized User downloaded two reports with well over one hundred data fields on July 22, 2007, it is possible that substantially all of Equity Analytics' data has been downloaded by the Unauthorized User.

21.    In summary, the Unauthorized User successfully logged into Equity Analytics' Salesforce.com platform seventeen times, viewed 340 web pages of information over a total elapsed time of five hours and forty-nine minutes. The Unauthorized User viewed six sets of search results and downloaded 21 reports, including two massive reports.

22.    I hereby state under the penalty of perjury that the foregoing is true and correct.

Executed on:    11/19/07

MELISSA KIRK

Sworn to and Subscribed
Before me this 19 day
of November 2007.

Notary Public

PATRICIA L. SOHLBERG-FRANCHEK
Notary Public · Arizona
Maricopa County
My Comm. Expires Jul 30, 2010

7