### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

_____

Equity Analytics, LLC,                                    )
operating as Equity Methods,                       )
                                 )
      Plaintiff,                                  )
v.                                                             )          **Civil Action No: 07-2033**
                                 )          **(RCL/JMF)**
Timothy D. Lundin,                                     )
                                 )          **Hon. Royce C. Lamberth**
      Defendant.                               )
_____)

### DEFENDANT TIMOTHY D. LUNDIN'S MEMORANDUM IN SUPPORT OF ITS RESPONSE AND OPPOSITION, IN PART, TO PLAINTIFF EQUITY ANALYTICS, LLC'S "MOTION FOR ORDER AUTHORIZING EXAMINATION OF DEFENDANT'S COMPUTER"

Defendant Timothy D. Lundin (hereinafter "Defendant" or "Lundin"), through his counsel, responds and opposes, in part, Plaintiff Equity Analytics, LLC's (hereinafter "Plaintiff", "Equity", or "EA") "Motion For Order Authorizing Examination Of Defendant's Computer" - the imaging and examination of Defendant's five computer hard drives.

<u>Defendant Does Not Oppose Imaging and Forensic Examination</u>

Except for a brief period of time at the outset of this litigation when Defendant's counsel was familiarizing himself with the underlying facts,[1] Defendant has not opposed Equity's desire to image and examine his computer hard drives.

_____

[1] When counsel appeared before the Magistrate Judge on November 14, 2007, Defendant's counsel informed the Court that, as he had just been retained, and given the fact that the Computer Fraud and Abuse Act ("CFAA") was a criminal statute that also provided for  civil remedies, counsel earlier that day at the deposition of Lundin had advised his client to invoke the Fifth Amendment until such time as counsel could familiarize himself with the case. Shortly thereafter, on December 6th, Lundin's counsel advised Plaintiff's counsel that Lundin was no longer declining to answer certain inquiries or to produce certain materials on the basis of the Fifth Amendment.

At that same Court session, counsel for Lundin informed the Court that he had taken possession of Lundin's Apple computer, and that counsel would keep it in counsel's possession, and not allow his client to have access to it.  This Court, referring to counsel's approach to that aspect of this case, referred to it as a "belts and suspenders" approach,

The Search Terms Imbroglio

It is factually inaccurate to state, as Equity does, that there have been "months" of negotiations over the protocol.  In fact, Equity, prior to December 20th of last year, never submitted a proposed protocol for Lundin's consideration.  After Equity's submission of a proposed protocol,[2] Lundin timely submitted a detailed response. See Exhibit 1.[3]

Equity inexplicably has insisted that it conduct its examination of the hard drives without any search terms. Indeed, Equity has adamantly refused to even attempt to agree upon search terms. In startling contrast, Lundin has offered Equity, in writing, a *virtual road map* to his hard drives. See Exhibit C of Plaintiff's Motion For Order Authorizing Examination Of Defendant's Computer. Rather than recognize that Lundin is placing "all cards up", Equity's response to Lundin's virtual road map has been to bury its head yet further in the sand and refuse to work collaboratively to establish reasonable search terms.[4] Sadly, because of Equity's intransigence, the Court will now have to intervene. Simply put, Equity's intransigence is irresponsible, and search terms should be required.

Dispute over Retention of Original and Imaged Hard Drives

In addition to its refusal to even try to work with Lundin's counsel on a set of search terms, Equity also has rigidly insisted that, once Lundin turns over possession of his hard drives to Equity's forensic examiner, possession will not be restored to Lundin until some two months

---

(fn 1 cont'd).

and seemingly approved of counsel's approach.  Shortly thereafter, when counsel came to realize that Lundin had external hard drives, he also took possession of them.

[2] Defendant's Counsel's offices were closed for the holidays from December 22nd – December 26, and the Plaintiff's proposed protocol was not received until the morning of December 21st.

[3] In compliance with Magistrate Judge Facciola's MINUTE ORDER of December 21, 2007, Defendant Lundin transmitted to Plaintiff's attorneys Defendant's proposed "Protocol For Imaging And Review" on December 28, 2007.  See attached affidavit of James M. Heinen, Jr. and Exhibit 1 thereto.

[4] Now, not only does Plaintiff have Lundin's virtual roadmap, which was submitted to it with his proposed protocol, it also has the extraordinarily detailed Declaration of Lundin, which is submitted herewith.  Even a cursory review of this Declaration should convince the most hard bitten cynic that Lundin has placed "all cards up", as his counsel has repeatedly offered to do if only Plaintiff would reciprocate.  Lundin has done so now with no promise of any reciprocation from Plaintiff.

after this litigation has finally concluded. Equity's insistence that Lundin lose, for what could be years, his ability to access tax records, health records, banking records, address books, calendars, personal photography business records,  and personal artifacts is senseless. Equity suggests that, technologically, it is necessary to retain Lundin's hard drives even though Lundin would permit Equity to image all his hard drives. In fact, an image of each hard drive is just that – an exact, mirror image of the hard drives. We know of no case, and Equity cites none, where any Court has ever deprived a party of access to his computer's hard drives as Equity proposes.[5]

In *United States v. Hunter*, 13 F. Supp. 2d 574, 583, 1998 U.S. Dist. LEXIS 9831 (D. Vt., June 10, 1998), the District Court stated that: "The wholesale removal of computer equipment can undoubtedly disable a business or professional practice and disrupt personal lives, and should be avoided when possible. Still, until technology and law enforcement expertise render on-site computer records searching both possible and practical, wholesale seizures, if adequately safeguarded, must occur. At the very least, the government should copy and return the equipment as soon as possible. See *Steve Jackson Games, Inc. v. United States Secret Service*, 816 F. Supp. 432, 437 (W.D. Tex. 1993) (owner of electronic bulletin board had computers and disks seized; court found no valid reason why information sought could not be copied and equipment returned within hours), *aff'd*, 36 F.3d 457 (5th Cir. 1994)."  Just like in *Hunter*, in Lundin's case the retention of his hard drives for the duration of the litigation would "disable" and injure his professional photography business, as he has many of his files stored on these hard drives.  In addition, as stated above, the retention of Lundin's hard drives can be avoided, as the copies of the mirror images of his hard drives are sufficient for Equity.  See *In re Honza,* 2008 Tex. App.

---

[5] Plaintiff in its protocol, proposes to use EnCase forensic software to image Defendant's hard drives.  The product description for the software states as follows: " The EnCase evidence file is an exact duplicate of the data as it existed during the time of acquisition.  Throughout the acquisition process, the bitstream image is continually verified by Cyclical Redundancy Checksum (CRC) blocks, which are calculated concurrent to the acquisition." See Appendix A hereto which is from "EnCase Forensic: Detailed Product Description".

LEXIS 20 (Tex. App., Jan. 2, 2008) (In footnote 7, the Court of Appeals of Texas from the Tenth District stated that "The courts frequently require these experts to carefully document the procedures followed and to retain *copies of the mirror image* of the hard drives and of the documents and partial documents recovered until the litigation is concluded. (emphasis added). See *Antioch Co. v. Scrapbook Borders, Inc*., 210 F.R.D. 645, 653 (D. Minn. 2002); *Simon Prop. Group L.P. v. MySimon, Inc.*, 194 F.R.D. 639, 641-42 (S.D. Ind. 2000); cf. *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999) (directing party opposing discovery to retain "'mirror image' disk and copies of all documents retrieved" by forensic expert); *Etzion v. Etzion*, 7 Misc. 3d 940, 796 N.Y.S.2d 844, 847 (N.Y. Sup. Ct. 2005) (directing discovery referee to retain hard drive "clones")." As these many Courts have established, the important thing for Equity to maintain is the mirror image of the hard drives and not the actual hard drives themselves. Thus, there is no reason for the examiners to maintain possession of Lundin's hard drives, and accordingly the hard drives should be returned to Lundin after the forensic examination.

<u>Equity's Attempt to Transform Its Agreement to Conduct the Examination at Its Expense Into a Basis Either for Jurisdiction or a Cost to Later Attempt to Impose Upon Lundin is Outrageous</u>

Equity has not served any formal discovery on Lundin. Instead, Lundin has voluntarily offered to cooperate with Equity and to place "all cards up" in an effort to allow Equity to fully evaluate its position and to then resolve this matter. Lundin is attempting to hide nothing. See, for example, Lundin's Declaration submitted herewith.

Equity, from the very outset, has stated on countless occasions that the imaging and forensic examination of Lundin's hard drives would be entirely at Equity's expense. But, when Lundin attempted to memorialize in his draft of the protocol several points that one would have

hoped to be non-controversial, Equity balked, saying that recitation of these points would be "superfluous." Such is hardly the case.

There is a serious question whether this Court has jurisdiction over any of Equity's claims. The Computer Fraud and Abuse Act Claim requires, as a threshold jurisdictional matter, that Equity be able to plausibly allege that it has incurred at least $5,000 in "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value".[6] Equity's Complaint fails to so allege. Without even the whisper of some factual foundation, Equity alleges out of thin air that its damages have been "$150,000".[7] Lundin recognizes that there is case law, with which this Court might or might not agree, that the jurisdictional threshold of at least $5,000 attributable to the alleged violation of the CFAA has been satisfied by proof that the costs associated with having a Plaintiff's own employees assess and respond to the unauthorized access may count towards establishing the $5,000 jurisdictional threshold. See *United States v. Middleton*, 231 F.3d 1207, 1214 (9th Cir. 2000)("There is no reason to believe that Congress intended the element of 'damage' to depend on a victim's choice whether to use hourly employees, outside contractors, or salaried employees to repair the same level of harm to a protected computer"). Even assuming that that construction of the CFAA is correct,[8] even the most generous reading of Ms. Kirk's affidavit of November 7, 2007,[9] and the most generous assumptions about her salary could not plausibly lead the Court to anchor jurisdiction on her time.[10]

---

[6] Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B)(i).
[7] See Page 14, Count VII, "Violation Of The Computer Fraud And Abuse Act, 18 U.S.C. § 1030" of Plaintiff's Complaint.
[8] We note again, that the CFAA is a criminal statute and accordingly, is to be construed strictly.
[9] Exhibit 1 of Plaintiff's November 8, 2007 Complaint
[10] In addition, there may well be a serious question as to whether Plaintiff has alleged the jurisdictional prerequisite of a "protected computer." See 18 U.S.C. § 1030(e)(2)(B). We note that the computer that was accessed by Defendant Lundin was not Plaintiff's computer, but rather a computer owned by a corporation named Salesforce.com.

In apparent recognition of its jurisdictional vulnerability, Equity refuses to agree that its informal discovery and voluntarily assumption of costs to do so might possibly be argued by it to be the missing link to its defective jurisdictional foundation. This Court should not allow this to happen.

There is also a serious question, based upon the gossamer nature of Equity's complaint, that this court has diversity jurisdiction over the Arizona state law claims pled by Equity. For there to be diversity jurisdiction, there must plausibly be $75,000 in controversy. Now, two months into this litigation, despite Lundin's counsel's repeated request, Equity has yet to put what ever cards it might have on the table. It alleges in its complaint that it has lost several sales prospects and existing clients to Lundin's current employer since October 2007 on account of Lundin's alleged misdeeds.[11]  One would assume that in its pre-suit due diligence, it unearthed some tangible evidence that would plausibly suggest that such is the case. It appears now that it never did any such due diligence, and that it wants to use the costs and expense of the forensic examination as a basis to fulfill the $75,000 diversity requirement. This Court should not allow for this to happen.

Finally, with respect to this very important issue, it hardly needs citation of authority that these costs, voluntarily assumed, cannot, in the unlikely event Equity should prevail in this litigation, be treated as reimbursable costs under Rule 54 of the Federal Rules of Civil Procedure or compensable costs under the only fee-shifting claim, the Arizona Breach of Contract Claim.

---

(fn 10 cont'd).
There may also be yet another jurisdictional defect, and that is the absence of an "interruption of service."  See 18 U.S.C. § 1030(e)(11).  Again, we note, as alleged in Defendant Lundin's Declaration submitted herewith that there was no interruption of service, and no deletion, alteration, or corruption of the data found in various Salesforce.com reports.

Additionally, as explicated in Defendant Lundin's Declaration, the element of "unauthorized access" or exceeding such access may be absent in this case.  See 18 U.S.C. § 1030(e)(6).  Again, we call the Court's attention to Defendant Lundin's Declaration to the effect that an employee of Plaintiff provided Lundin with access.
[11] Exhibit 1, Page 4, ¶14, Page 6, ¶18 of Plaintiff's Complaint: Affidavit of Melissa Kirk

But, rather than readily agree to these rather elementary propositions, Equity insists that Lundin allow it to voluntarily assume unstated and obviously substantial costs, leaving Equity with the option of later arguing that Lundin must pay the bill. This Court should not allow this to happen.

Equity Submits a Confidentiality Agreement; Whereas Lundin Submits a Proposed Protective Order

To Defendant, it is of significance that Equity does not even submit for the Court's imprimatur a proposed Protective Order, but rather a simple so called Confidentiality Agreement between counsel. Even when Lundin submitted to Equity a proposed Protective Order, consistent with its approach throughout this case, Equity rejected, out of hand, the idea of memorializing protections in a Court Order, a Protective Order. Instead, Equity insisted that it was "its way or the highway", and, for its substantive response to Lundin detailed and thoughtful proposed Protective Order, states that the proposed Protective Order is too broad and too complicated.[12] Rather than respond substantively, even though Lundin's counter-proposal of a Protective Order was timely submitted to Equity in accordance with the Court's Order of December 21st, Equity complains that that it was not until then that Lundin suggested a Protective Order rather than its confidentiality agreement. While Equity complains that the proposed Protective Order is too broad and too complicated, it chooses not to share with the Court or Lundin any specifics in Lundin's proposal with which it takes issue.

Lundin's hard drives contain, among other things, privileged attorney-client communications, tax returns and other sensitive financial records of not only Lundin, but also family members, medical records and information, all of Lundin's banking and financial records, and other sensitive personal information. See paragraph 74 of Lundin's Declaration. One would

---

[12] "The Confidentiality Agreement put forth by Lundin is broader and more complicated than the Confidentiality Agreement provided to Lundin's counsel . . ." – Plaintiff's Motion of Order Authorizing Examination of Defendant's Computer 1-8-08, Pg 7, Line 11.

be hard put to imagine a storehouse of information that is more deserving of the protection of this Court. For those reasons, absent Equity articulating some legitimate specific concerns regarding the details of Lundin's proposed Protective Order, we believe that there is no question whatsoever that a Protective Order is appropriate, and we are unaware, without the benefit of Equity's input, of any reason why Lundin's proposal ought not be entered as the Order of this Court. And, we respectfully pray that the Court do so.

<u>Conclusion</u>

For the aforementioned reasons, Defendant Lundin respectfully requests the Court to enter as its Order Defendant's proposed Protective Order.  Further, Defendant respectfully requests the Court to direct Plaintiff to submit proposed search terms for the Court's consideration and, once search terms have been approved by the Court, to then enter, as its Order, Defendant's proposed Protocol, incorporating such search terms.

Respectfully submitted,

<u>/s/    Robert B. Fitzpatrick</u>
Bar No. 040410
Universal Building South
Suite 640
1825 Connecticut Avenue, N.W.
Washington, D.C. 20009-5728
Phone: 202-588-5300
Fax: 202-588-5023
Email: Fitzpatrick.law@verizon.net

Counsel for Defendant

# EXHIBIT C

© 2006 Equity Methods, LLC.   All rights reserved.



# equitymethods
*smarter compliance*

# Equity Methods, LLC

## 2006 Regional Sales Manager Compensation Plan

### REVISED – APRIL 13, 2006

**Karen Damaso**
**Rob Miceli**
**Eric Aguirre**
**Tim Lundin**
**Lisa Ipson**

**April 13, 2006**

© 2006 Equity Methods, LLC

# 2006 Compensation Program

The compensation changes are made with specific goals in mind, primarily:

- Continue to offer a rich and exciting plan that will focus on overachievement.

- Aligns sales compensation with company business goals and direction.

- Helps to fuel BDM growth and enhanced marketing support.

- Performance driven

- Overachievement produces highest results

- Aligned with marketing and business development support enhancements

- Attractive, fair and equitable

- Exciting Incentives to follow



2

# Compensation Plan 2006

An analysis of the current compensations revealed that the current quota is more than attainable and as we push for market acquisition, we are raising the quota by 20% to help meet our goals.

**RSM 2006 Revised Sales Quota**



| Annual Quota | Quarterly Quota | Monthly Quota |
|:---:|:---:|:---:|
| $1,440,000 | $360,000 | $120,000 |

© 2006 Equity Methods, LLC

www.equitymethods.com



3

© 2006 Equity Methods, LLC

# Monthly Commission Opportunities

We have adjusted the monthly quota to drive top drive overachievement not the status quo. Moreover, it is easier to track as you pass a gate, your commission is paid on the entire amount for that month.

| % of Monthly Quota ($120,000) | Commission Opportunity |
|---|---|
| 0-80% | 4% of contract revenue |
| 81-120% | 7% of contract revenue |
| 121%+ | 8% of contract revenue |

should be 8%

4

# Quarterly Commission Opportunities

Quarterly commissions have been adjusted to drive over-achievement of quota while maintaining a reasonable cost and cash flow structure to support payments.

| % of Quarterly Quota ($360,000) | Bonus Opportunity |
|---|---|
| 110% | $2,500 |
| 120% | $5,000 |
| 150% | $7,500 |
| TOTAL | $15,000 |

*180% → $540K*

- At each performance "gate" a fixed bonus is paid

© 2006 Equity Methods, LLC

www.equitymethods.com

5



# Overall opportunity

This plan is meant to attract, retain and motivate top sales professionals – we believe it too be fair and lucrative.

| % of Annual Quota $1,440,000 | Total Compensation |
|---|---|
| 70% | $100,320 |
| 80% | $106,080 |
| 90% | $150,720 |
| 100% | $160,800 |
| 110% | $180,880 |
| 120% | $210,960 |
| 130% | $239,760 |
| 140% | $251,280 |
| 150% | $292,800 |

© 2006 Equity Methods, LLC

# Housekeeping Items

- Payment of commissions

  — Option Navigator and OFR Contracts

    - Commissions paid on the collection of payment in full for O.N. and OFR/CFR contracts

  — Consulting Contracts

    - Commissions paid based on 50% based on contract execution and invoice and 50% paid based on receipt of payment of final invoice.

      - If a consulting contract is billed in full up front, we will pay on collections

- Implementation fees count toward quota and are commissionable

- Service packs post initial sale are paid at 2%, fully commissionable at the time of sale

- Renewals

  — All renewals are paid at 2% of contract revenue.

  — You must be actively employees by EM to receive your quarterly bonus. If you leave, EM will pay commissions on sales collected within 45 days of your actual last day of employment

- Cell phone expense **must include** itemization to comply with IRS mandate to be reimbursed up to $75.00. If you cannot prove the business use, we cannot pay.

- RSD will be reimbursed for all reasonable travel expenses . All expenses must be accompanied by receipts and submitted within 30 days of said expense with detailed list of clients and prospects.

- Equity Methods reserves the right to modify the attached sales compensation program

- Payment for monthly commissions and quarter bonus payouts will occur on the second pay period following the completion of that performance period.

© 2006 Equity Methods, LLC

# EXHIBIT G

AZ Corp. Commission

01731990

## AFFIDAVIT OF PUBLICATION
## for Corporation Commission

# ARIZONA CAPITOL TIMES

P.O. Box 2260
Phone: (602) 258-7026

Phoenix, AZ 85002
Fax: (602) 258-2504

STATE OF ARIZONA }
County of Maricopa } ss

I, Karen Fullenwider as Managing Editor of the Arizona Capitol Times, am authorized as agent to make this affidavit of publication. Under oath, I state that the following is true and correct.

The Arizona Capitol Times is a newspaper which is published weekly, is of general circulation and is in compliance with Arizona Revised Statutes §§ 10-140.34 & 39-201.A & B. The notice will be/has been published 3 consecutive times in the newspaper listed above.

DATES OF PUBLICATION:
08/25/2006, 09/01/2006, 09/08/2006

THE NAME OF THE CORPORATION:  EQUITY METHODS, LLC

CORPORATE FILE NUMBER:       L-0967498-7

TYPE OF DOCUMENT:   ARTICLES OF AMENDMENT

AUTHORIZED
SIGNATURE: 

SUBSCRIBED AND SWORN TO BEFORE ME
ON THE 25th day of August, 2006

NOTARY SIGNATURE:

OFFICIAL SEAL
LAURA M. KAMINSKI
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 6, 2009

RECEIVED
AUG 2 8 2006
ARIZONA CORP. COMMISSION
CORPORATIONS DIVISION

### EQUITY METHODS, LLC

ARTICLES OF AMENDMENT to the ARTICLES OF ORGANIZATION of EQUITY METHODS, LLC, an Arizona limited liability company
Pursuant to A.R.S. §29-633, the undersigned states as follows:
1. The name of the limited liability company is EQUITY METHODS, LLC (the "Company").
2. The Articles of Organization of the Company were filed on October 27, 2003.
3. Articles 2 and 3 of the Company's Articles of Organization are hereby amended in their entirety as follows: ARTICLE 2. Management of the Company is vested in a Manager. ARTICLE 3. The name and address of the Manager of the Company and each Member having a twenty percent or greater interest in the profits of the Company are: J. Carr Bettis, Manager/Member, 14614 N. Kierland Blvd., Suite S-260, Scottsdale, AZ 85254. DATED this 30th day of June, 2006. EQUITY METHODS, LLC, By: /s/ J. Carr Bettis.
8/25, 9/1, 9/8, 2006 editions Arizona Capitol Times

AZ Corp. Commission

01742897

## AFFIDAVIT OF PUBLICATION
## for Corporation Commission

# ARIZONA CAPITOL TIMES

P.O. Box 2260                     Phoenix, AZ 85002
Phone: (602) 258-7026            Fax: (602) 258-2504

STATE OF ARIZONA )
County of Maricopa    ) ss

I, Karen Fullenwider as Managing Editor of the Arizona Capitol Times, am
authorized as agent to make this affidavit of publication. Under oath, I state that
the following is true and correct.

The Arizona Capitol Times is a newspaper which is published weekly, is of
general circulation and is in compliance with Arizona Revised Statutes §§
10-140.34 & 39-201.A & B. The notice will be/has been published 3 consecutive
times in the newspaper listed above.

DATES OF PUBLICATION:
09/08/2006, 09/15/2006, 09/22/2006

THE NAME OF THE CORPORATION:   EQUITY METHODS, LLC changing
name to CSRB CACTUS HOLDINGS, LLC

CORPORATE FILE NUMBER:        L-0967498-7

TYPE OF DOCUMENT:    ARTICLES OF AMENDMENT to the ARTICLES
OF ORGANIZATION

**CSRB CACTUS HOLDINGS, LLC**

ARTICLES OF AMENDMENT to the ARTICLES OF ORGANI-
ZATION of EQUITY METHODS, LLC, an Arizona limited liability
company
Pursuant to A.R.S. 29-633, the undersigned states as follows:
1. The name of the limited liability company is EQUITY METH-
ODS, LLC (the "Company").
2. The Articles of Organization of the Company were filed on
October 27, 2000.
3. Article 1 of the Company's Articles of Organization is hereby
amended in its entirety as follows: ARTICLE 1. The name of the
limited liability company is CSRB Cactus Holdings, LLC, an Ari-
zona limited liability company (the "Company").
DATED this 18th day of August, 2005. EQUITY METHODS,
LLC. By: /s/ J. Carr Bettis, Manager.
9/8, 9/15, 9/22, 2006 editions Arizona Capitol Times

AUTHORIZED
SIGNATURE:

SUBSCRIBED AND SWORN TO BEFORE ME
ON THE 8th day of September, 2006.

NOTARY SIGNATURE:

OFFICIAL SEAL
MARIA M. ENGELMANN
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 14, 2010



RECEIVED
SEP 11 2006
ARIZONA CORP. COMMISSION
CORPORATIONS DIVISION



State of Delaware
The Official Website for the First State
Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Local Sites
State Directory | Help | Search Delaware : Citizen Services | Business Services | Visitor Info.

Department of State: Division of Corporations

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

SERVICES
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

INFORMATION
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions View Search Results

## Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **4190358** | Incorporation Date / Formation Date: | **07/14/2006** (mm/dd/yyyy) |
| Entity Name: | **EQUITY ANALYTICS, LLC** | | |
| Entity Kind: | **LIMITED LIABILITY COMPANY (LLC)** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **NATIONAL CORPORATE RESEARCH, LTD.** | | |
| Address: | **615 SOUTH DUPONT HWY** | | |
| City: | **DOVER** | County: | **KENT** |
| State: | **DE** | Postal Code: | **19901** |
| Phone: | **(302)734-1450** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like Status Status,Tax & History Information Submit

Back to Entity Search

To contact a Delaware Online Agent click here.

site map | about this site | contact us | translate | delaware.gov

# EXHIBIT H



**Tim Lundin <tdlundin@gmail.com>**

# RE: Lundin, Timothy: Equity Methods - quick question

**Lundin, Timothy (Equity Methods) <tlundin@equitymethods.com>**    **Wed, Nov 29, 2006 at 9:08 PM**

To: "Rojas, Nancy (Corporate Recruiting.Hopewell)" <nancy_rojas@ml.com>

Hi Nancy,

I just wanted to take a moment and follow-up on this email with you and see if you had any feedback regarding my resume and other employment within Merrill Lynch? I wouldn't mind talking further though about what my and my peer's rights are within Merrill Lynch and Equity Methods when it comes to employment. I ask only because the theme coming across from management is that we could be let go at anytime without warning and that doesn't seem to be accurate; is it? Or is Equity Methods / Merrill Lynch "at-will" employer meaning that both the employee and Equity Methods may terminate the employment relationship at any time, for any reason or no reason, with or without notice?

Regarding the commission payout, I believe that I have greater clarity on that as of the moment, but thank you for looking into that initially for me.

Thanks for your help with this Nancy and I hope that you had a great Thanksgiving and look forward to hearing from you soon.

Cheers,

Tim

480.237.3116

---

**From:** Lundin, Timothy (Equity Methods)
**Sent:** Thursday, November 09, 2006 11:53 AM
**To:** Rojas, Nancy (Corporate Recruiting.Hopewell)
**Subject:** RE: Lundin, Timothy: Equity Methods - quick question

Hi Nancy,

As always, it was great to talk with you and thank you for the help.

I just wanted to take a minute to follow-up on our conversation.

The first one was regarding our Personal information files. Do we know where they went and how we could get a copy of the articles within those if we needed.

The second follow-up was regarding compensation, more specifically commissions. As we discussed, a large part of our pay is in commissions and right now with the Equity Methods/Merrill Lynch  transition, it is all over the place, specifically on whether we will be paid via contract date or upon collection. I know that eventually the goal is for us to be paid up front upon contract date and contract amount, however right now it is being paid at the end of the following month it was collected. For example, if I sold an item in October and it was billed in November and the customer didn't pay the invoice till January, that commission would then be recognized in January and not paid out till the 28th of February which is four months (at a minimum) and a long time to wait for a commission that you sold in October. Not only that, but it is difficult to budget that personal finances that far out. -- This brings up the concern that the rest of the sales team and I have because a lot of things can happen within a four month period of time and the rumblings in the background here are, what happens if one of us aren't around on February 28th, are we still entitled to the commission of a product that we sold back in October? If you could find that out for us, that would be great!

The other area we discussed was future opportunities within Merrill Lynch. Attached is a word copy of my resume, if you need it in a different format, please let me know and I will get it to you.

Last is the personal Mpix website for making photo books etc. The work they do is amazing and the prices are as well. Here is the website: http://www.mpix.com

Nancy, thanks again for your help and I look forward to our next conversation and receiving the Merrill Lynch Job Opportunities website.

Cheers,

Tim

**From:** Lundin, Timothy (Equity Methods)
**Sent:** Wednesday, November 08, 2006 3:38 PM
**To:** Rojas, Nancy (Corporate Recruiting.Hopewell)
**Subject:** Lundin, Timothy: Equity Methods - quick question

Hi Nancy,

I am just following up from my VM and when you have a moment Thursday after 9amEST would you mind

dropping me a line here at my desk: 480.237.3116.


Thank you,

Tim

---

**From:** Rojas, Nancy (Corporate Recruiting.Hopewell) [mailto:nancy_rojas@ml.com]
**Sent:** Friday, July 28, 2006 3:03 PM
**To:** Lundin, Tim
**Subject:** RE: Equity Methods: Resume of Sheryl Robinson


Thanks Tim.  I will I reach out to her and get a better sense of her skills and interests.


It was great meeting you and I look forward to working with you.  Have a great weekend.



*Nancy E. Rojas*
*Merrill Lynch - Leadership & Talent Management*
*GPC/MLIM Recruiting*
*609-274-1970*

-----Original Message-----
**From:** Lundin, Tim [mailto:tlundin@equitymethods.com]
**Sent:** Thursday, July 27, 2006 1:06 PM
**To:** Rojas, Nancy (Corporate Recruiting.Hopewell)
**Cc:** Sheryl Robinson
**Subject:** Equity Methods: Resume of Sheryl Robinson

Hi Nancy,


It was great to meet with you yesterday afternoon and hopefully you got some sleep on the red-eye flight home.


Attached is Sheryl's resume that we talked about yesterday. Sheryl is a great person that has had a hand in attributing to my success to where I am today. Like I mentioned yesterday, I worked with Sheryl in a corporate finance role at EDS and when I came onboard she taught me the ways of EDS and the reasons behind why we accounted for things the way we did.


Currently in her free time she is an adjunct professor at ITT Technical Institute and working on her PhD and overall she is a great person who I feel would be an asset to any company. It is very seldom that I recommend people because it is a reflection on me if they don't standup to the test over time, but I feel confident in passing Sheryl's information on to be considered for employment within a function at Merrill Lynch.

# EXHIBIT J

Issues within Equity Methods:

- Equity Methods (Option Navigator™) can only handle 4 types of awards: ISOs, NQs, RSAs, RSUs
- ESPPs handled offline and Performance Awards are handled on a case-by-case basis and charged accordingly.
- Equity Methods grouping is what EASi refers to as filtering and Equity Methods Option Navigator™ can only go 3 deep.
- Reports can only be seen in MS Excel format, there isn't any reports summary function
- Many reports take on average of 20-25 minutes (email from existing Equity Methods telling me this)
- Lack of Date Stamping the data
- Lack of Mobility Tracking
- Data has to be stored in another system and then uploaded into Equity Methods Option Navigator™ format before it can be placed into the system.
- New Data overwrites old data, thus causing different results every time, plus out of period expense can't be calculated
- Summary reports of what was newly added are not available.
- Equity Methods does not provide General Ledger/Journal Entries in their tool.
- Equity Methods will not calculate APIC Pool balance
- Option Navigator™ only has a single user log-in & password for the whole company, thus eliminating controls around who logged in and when they did.
- Tax Rates have to be applied at a whole award level or company level and if a firm does want to use it on an individual level they have to handle it outside of the system and then reload the data into the system, thus overwriting any previous data.
- CRM support is dwindling, just this week (10/15) Equity Methods lost three of their most senior CRM's, Christina Delgado, Sara Shoaf, and Nirvana Patel, leaving only three CRM's on staff, the most senior being Sam Bongiovanni
- Since the acquisition of Equity Methods from Merrill Lynch, turnover at Equity Methods has been over 50%, the majority coming from the consulting, development and CRM team.
- Lack of making deadlines, on average in 2005, deadlines were missed by 4 months. (I have emails supporting this)

# EXHIBIT K

Page 102

1  available, all the reports, everything that a
2  person would need to know about their function in
3  their system.
4      Q.  Now, Equity Methods has that available
5  you're saying?
6      A.  Yes.
7      Q.  In terms of the clients that you are
8  now working with or it is your intention to
9  solicit at EASi, would that be the same class of
10 people or customers that you worked with at
11 Equity Methods?
12     A.  I can go to smaller companies now that
13 I am with EASi than I could with Equity Methods.
14 There's not the overhead at EASi that we had at
15 Equity Methods which allows us first to have a
16 lower price.  We don't spend a lot of money in
17 marketing and advertising which allows for us to
18 be more competitive in a small situation.  We
19 actually work with privately held companies.
20     When I left Equity Analytics, we only
21 worked with publicly held companies that were

Page 103

1  traded on the Exchange.  EASi, it does not matter
2  because they have a system that private companies
3  need.  Whether they issue options or not, they
4  have to track their employees.
5      I'm sorry.  Repeat the beginning part
6  of your question because I feel I have diverted
7  from it.
8      Q.  You did a little bit, but that is still
9  helpful.
10     First question.  Does EASi still
11 attempt to market to the same group of customers
12 that Equity Analytics markets to?
13     A.  Yes, because we market to publicly held
14 companies, so any publicly held company is also a
15 possibility.
16     Q.  Now, do you yourself attempt to market
17 or sell your services to the same group of people
18 that Equity Analytics sells its services to
19 currently?
20     A.  Because they are publicly held
21 companies, yes.

Page 104

1      Q.  Have you attempted to contact any
2  customer you serviced at Equity Analytics
3  subsequent to beginning your employment with
4  EASi?
5      A.  Equity Analytics makes their public
6  schedule available online where anybody can log
7  in without a password.
8      At equitymethods.webx.com, you can go
9  out there and see when they are having sales
10 meetings.  You can go out there and see when they
11 are having training sessions in-house, when they
12 are meeting with various companies.  They have
13 the choice to post those things private,
14 unlisted, or they have the choice where anybody
15 can go on and see the full number of the log-in,
16 all of that information.
17     I have gone out there because it is a
18 public site and looked at it to see when they are
19 calling a client, not client, a prospect because
20 it says we are going to do a FAS 123R demo for
21 X.  Since it is fair game and we are in a

Page 105

1  capitalist society, I went out there and looked
2  at the information.  If they are looking at
3  Equity Methods for this service, why not pitch
4  them the EASi solution, too, so they can have one
5  complete solution instead of having a fix-around
6  or a work-around solution, and a lot of times
7  they need a whole solution for their issue
8  instead of just a temporary.
9      Q.  I want to get back to the -- I will ask
10 you a question about the solution.
11     When you say a solution, EASi, you sell
12 them the software, and that allows them to sort
13 of keep up to speed with the calculations that
14 they need to do in order to conform to law or
15 policy or just keep track of things?
16     A.  It allows them to keep track of things,
17 so if you are going to hire an employee, you
18 would put them in there.  You have to maintain
19 where they are at.
20     Q.  With Equity Methods, if you need to do
21 a different calculation, you have to go back to

Court Reporting in Evans Reporting Service   Over 20 years of
Baltimore/Washington   800-256-8410  award-winning service

124276ad-3148-4c36-9f5c-3aba590c0fd4

Page 106

1   Equity Methods and say, hey, this has changed,
2   can you perform the calculations?
3       A.  You would have to take new information
4   wherever you store it, whether it is Excel sheets
5   or an Equity Edge program or one of the other 20
6   competitors there in the same arena as all of us
7   and say get that data and then put it in the
8   Equity Methods format and then put it in there.
9   Hopefully you get all of your information.  Maybe
10  you won't because there is no checking in there
11  and then run your reports, and there's nothing in
12  there that tells a client what new things they
13  put in.  There is no auditability checks around
14  that that a client can actually know if they have
15  or not.
16          With our system they maintain it in the
17  database, so they never have that worry of did
18  all the data transfer into our product as well.
19  Plus any time somebody logs in, it date stamps
20  every page they go to and says you went here, or
21  there is an individual log-in for everybody

Page 107

1   whereas Equity Methods there is one log-in that
2   the whole company shares.
3       Q.  I understand.  Thank you.  That helps
4   me.  I understand what you said, sort of the
5   protocol you have been following, but did you use
6   any contacts, be it a person, be it email, be it
7   a telephone number, that you obtained while
8   working for Equity Analytics to contact a
9   client, --
10      A.  No.
11      Q.  -- prospective client?
12      A.  I would go --
13      Q.  That's okay.  I will start over again.
14  That's okay.
15          In your current position at EASi have
16  you used any type of information you obtained
17  while employed at Equity Methods, at Equity
18  Analytics such as a name, a telephone number,
19  email to contact any person since you started
20  working for EASi?
21      A.  All information that I have used I have

Page 108

1   gotten from the company website.  I would go --
2   my process is I see the company, so if I do go
3   out to equitymethods.webx.com and I see that they
4   are meeting with the company, I have to know what
5   that company does, so I go to
6   httpfinance.google.com.  It gives me all the
7   public information on that company.
8           I then call the switchboard operator
9   and ask to be put through to that person.  Then I
10  start the conversation from there, what are you
11  doing for your administration and accounting
12  support and accountability that you are required
13  to obtain.
14      Q.  Do you ever have conversation along the
15  lines of this with these people, I worked at
16  Equity Analytics, Equity Methods, and I can tell
17  you why my product is superior to what they can
18  offer you?
19      A.  No.  That is poor salesmanship.  If you
20  have to bring up why somebody else's product is
21  not that good, the way I was trained, that is

Page 109

1   incompetence.  If somebody asks do you know
2   anything about that, you say I know how other
3   things work.  Specifically, yes, I have been
4   there before.  They do have a good product.  The
5   strength is in valuation.  I have done this
6   before.  I do it at conference shows.  The
7   strength is in valuation.  However, we feel as
8   though we have the complete package when it comes
9   to all of the reporting and administration
10  solutions that you need which is undoubtedly
11  true, and you are just stating why we feel are
12  better because we can offer a full solution
13  versus a partial solution.  We give over 200
14  reports.  They give four reports.  There's a huge
15  differentiation.  We do 12 different types of
16  option awards.  They only do four option awards.
17  Anything outside of ISO's restricted stock awards
18  have to be done in a valuation consulting mode at
19  Equity Analytics.  Our system handles all of it.
20      Q.  Independent of while you were employed
21  by EASi, did you contact any company that you

28 (Pages 106 to 109)

# EXHIBIT L



# EXHIBIT N



equitymethods
smarter compliance

Company     Solutions     FAS 123 R     Customers & Strategic Relationships     Knowledge Center     News & Events

about us     our approach     our team     careers     contact us



# Our Customers

Our customers are faced with tremendous pressure to ensure that the financial numbers that they report are both accurate and generated on time.  And FAS 123R is just one of the many compliance and reporting challenges that they face as they prepare their books and financial statements each and every reporting period. That's why It is our commitment to our customers that their FAS 123 financial reporting process is as efficient and worry-free as possible.

Whether our customers are struggling to determine the right set of valuation inputs and appropriate valuation methodology, to develop a repeatable, defensible financial reporting process that delivers accurate expense numbers period over period or to understand the nuances of FAS123R as it applies to their company's unique option strategy, our solutions have enabled customers to have confidence in their approach and outcomes.

To-date, we have had the privilege of serving customers in a variety of industries (retail, financial services, pharmaceuticals, telecommunications, manufacturing, etc. ) whose option plans consist of as little as 8 optionees to as many as 50,000+ optionnees. Regardless of the size of their organization, their industry or auditor, we have helped them to succeed in solidifying a robust valuation strategy for even their most complex equity awards, and a repeatable, reliable reporting process.

We are dedicated to our customers' success and the way in which we approach our work -- And will continue to provide to our customers the support that they need to ensure that they achieve success with all of their key stakeholders.

Contact Us   Feedback   Privacy Policy - Tel 866-998-3515.   ©2006-2007 Equity Methods.   All rights reserved.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| Equity Analytics, LLC,<br>operating as Equity Methods,<br><br>        Plaintiff,<br><br>v.<br><br>Timothy D. Lundin,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No: 07-2033<br>       (RCL/JMF)<br><br>       Hon. Royce C. Lamberth |

## DECLARATION OF JAMES M. HEINEN, JR.

I, James M. Heinen, Jr., state as follows:

1. I am an employee at Robert B. Fitzpatrick, PLLC.

2. On Friday, December 28, 2007, at 4:58 p.m., in compliance with Magistrate Judge Facciola's MINUTE ORDER of December 21, 2007, I, along with Robert B. Fitzpatrick, transmitted, on behalf of Robert B. Fitzpatrick, PLLC, an e-mail with the attachment of the Defendant's "PROTOCOL FOR IMAGING AND REVIEW" ("Protocol") to Joseph J. McAlee and Christopher C. Young of Rubin, Fortunato & Harbison, P.C. and Robert T. Shaffer of Murphy & Shaffer LLC. (See attached Exhibit 1).

3. I transmitted the e-mail to the following addresses:

   (1) jmcalee@rubinfortunato.com; (2) cyoung@rubinfortunato.com; and (3)

   (2) RShaffer@murphyshaffer.com (See attached Exhibit 1).

4. After transmitting the e-mail in compliance with the Magistrate Judge's MINUTE ORDER, I transmitted the Protocol to our client, and then our firm closed for the day. (See attached Exhibit 1).

5. During the evening of December 28, 2007, at 11:00 p.m., for the first time I noticed that our firm received an e-mail notifying us that the e-mails did not go through to Mr. McAlee, Mr. Young or Mr. Shaffer. The e-mail with the same attachment did transmit successfully to our client. (See attached Exhibit 1).

6. As soon as I found out the e-mail did not go through, I then attempted to send the e-mail again through our Firm's e-mail address and on behalf of Robert B. Fitzpatrick, PLLC to the aforementioned attorneys for Plaintiff at 11:14 p.m. (See attached Exhibit 1).

7. After transmitting these e-mails, I again received an e-mail indicating that the e-mails did not transmit successfully. (See attached Exhibit 1).

8. At 11:20 p.m. I attempted for a third time to send the e-mails through our Firm's e-mail address and on behalf of Robert B. Fitzpatrick, PLLC to the addresses listed above, addresses that we have successfully transmitted e-mails to in the past. (See attached Exhibit 1).

9. When I awoke the next morning, Saturday, December 29, 2007, I discovered that the e-mails again did not transmit successfully. (See attached Exhibit 1).

10. I then e-mailed the Protocol to my personal e-mail account, successfully, and on behalf of Robert B. Fitzpatrick, PLLC, I sent the Protocol to Mr. McAlee, Mr. Young and Mr. Shaffer via e-mail again. (See attached Exhibit 1).

11. Despite the e-mail reaching my personal account and our client's account successfully, the e-mail would still not go through to Mr. McAlee, Mr. Young and Mr. Shaffer. (See attached Exhibit 1).

12. It being the weekend, I then faxed the documents, outside of the firm's office, from the Fair Oaks Mall Shopping Center Customer Service desk, on behalf of Robert B. Fitzpatrick, PLLC, to Mr. Shaffer and Mr. McAlee, the two individual's whose facsimile numbers I had. (See attached Exhibit 1).

13. The fax, with the Protocol, transmitted successfully to Mr. Shaffer at 11:54 a.m. on December 29, 2007. (See attached Exhibit 1).

14. Despite several attempts, the fax, along with the Protocol, would not transmit to Mr. McAlee's facsimile number. (See attached Exhibit 1).

15. The fax number I had for Mr. McAlee was (610) 854-1317. (See attached Exhibit 1).

16. I retrieved Mr. McAlee's fax number from his profile page on the Rubin, Fortunato & Harbison, P.C. website. (See attached Exhibit 1).

17. When I returned to work on January 2, 2008 (our office was closed from December 29, 2007 through January 1, 2008), after another failed attempt to fax the documents to Mr. McAlee at the fax number we had from his firm profile, we faxed the documents to Mr. McAlee at (610)-854-4317, which was a successful attempt. I retrieved this second facsimile number from Mr. McAlee's e-mail signature, which is not the number that is posted on his firm profile – the number we had in our records from the beginning of this action.

18. It is my opinion that because the same e-mail, with the same attachment, was successfully transmitted to our client and my personal e-mail address, but unsuccessfully transmitted to Mr. McAlee, Mr. Young and Mr. Shaffer, that the reason for an unsuccessful e-mail transmittal was not from a problem with our e-mail account, but, rather, with the accounts of Mr. McAlee, Mr. Young and Mr. Shaffer (e.g., lack of capacity in e-mail account).

19. In the attached Exhibit 1, I have blacked out my personal e-mail address.

I hereby state under penalty of perjury that the foregoing is true and correct.

Executed on: 1/15/2008

JAMES M. HEINEN, JR.

4

# EXHIBIT 1

## Robert B. Fitzpatrick, PLLC

| | |
|---|---|
| **From:** | Robert B. Fitzpatrick, PLLC |
| **Sent:** | Friday, December 28, 2007 4:58 PM |
| **To:** | McAlee, Joseph J. |
| **Cc:** | Robert B. Fitzpatrick, PLLC; Robert T. Shaffer III; Young, Christopher C. |
| **Subject:** | Protocol |
| **Attachments:** | Defendant's Proposed Protocol For Imaging And Review - Counter Proposal.pdf |

**PLEASE NOTE THAT OUR OFFICE WILL BE CLOSED FROM DECEMBER 21, 2007 AT 5:00 P.M. AND WILL RE-OPEN AT 9:00 A.M. ON DECEMBER 27, 2007, CLOSING AGAIN ON DECEMBER 28, 2007 AT 5:00 P.M. AND RE-OPENING AT 9:00 A.M. ON JANUARY 2, 2008**

Joe,

In accordance with Magistrate Judge Facciola's Order, I have attached our draft of a protocol.

As you know, we will be closed from 5:00 p.m. today until we re-open at 9:00 a.m. Wednesday, January 2nd. Let me suggest that we schedule a time certain on the 2nd or thereafter to discuss our respective approaches to the protocol. I look forward to working with you to arrive at terms that are acceptable to all concerned.

Happy New Year to you and your family.


All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com.

Please visit our Blog at http://www.robertfitzpatrick.blogspot.com/

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517 (4). This electronic message transmission contains information which may be confidential or privileged. The information is intended solely for the recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300 or by electronic mail. Thank you.

12/28/2007

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@murphyshaffer.com |
| **Sent:** | Friday, December 28, 2007 5:01 PM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |

details.txt (324 B)  Protocol (13.9 MB)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

RShaffer@murphyshaffer.com

1

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@tro-rubin.com |
| **Sent:** | Friday, December 28, 2007 5:21 PM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |



details.txt (436 B)   ATT00014.txt (294
B)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

    jmcalee@rubinfortunato.com
    cyoung@rubinfortunato.com

## Robert B. Fitzpatrick, PLLC

**From:** Robert B. Fitzpatrick, PLLC [fitzpatrick.law@verizon.net]
**Sent:** Friday, December 28, 2007 11:14 PM
**To:** jmcalee@rubinfortunato.com; RShaffer@murphyshaffer.com; cyoung@rubinfortunato.com
**Subject:** FW: Protocol

Joe,

Below is the message we sent at 4:58 EST along with the attached protocol. I do not understand why it did not go through. We used the same addresses, as you can see, that we always have.

All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile: (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com

Please visit our Blog at www.robertfitzpatrick.blogspot.com

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517(4). This electronic message transmission contains information which may be confidential or privileged. The information is intended solely for the recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300 or by electronic mail. Thank you. Please visit our website at www.robertbfitzpatrick.com .

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

-----Original Message-----
**From:** Robert B. Fitzpatrick, PLLC
**Sent:** Friday, December 28, 2007 4:58 PM
**To:** McAlee, Joseph J.
**Cc:** Robert B. Fitzpatrick, PLLC; Robert T. Shaffer III; Young, Christopher C.
**Subject:** Protocol


**PLEASE NOTE THAT OUR OFFICE WILL BE CLOSED FROM DECEMBER 21, 2007 AT 5:00 P.M. AND WILL RE-OPEN AT 9:00 A.M. ON DECEMBER 27, 2007, CLOSING AGAIN ON DECEMBER 28, 2007 AT 5:00 P.M. AND RE-OPENING AT 9:00 A.M. ON JANUARY 2, 2008**

Joe,

In accordance with Magistrate Judge Facciola's Order, I have attached our draft of a protocol.

As you know, we will be closed from 5:00 p.m. today until we re-open at 9:00 a.m. Wednesday, January 2nd. Let me suggest that we schedule a time certain on the 2nd or thereafter to discuss our respective approaches to the protocol. I look forward to working with you to arrive at terms that are acceptable to all concerned.

Happy New Year to you and your family.



All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com.

Please visit our Blog at http://www.robertfitzpatrick.blogspot.com/

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517(4). This electronic message transmission contains information which may be confidential or privileged. The information is intended solely for the recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300 or by electronic mail. Thank you.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@murphyshaffer.com |
| **Sent:** | Friday, December 28, 2007 11:18 PM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |

 

details.txt (325 B)   Protocol (13.9 MB)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

        RShaffer@murphyshaffer.com

1

## Robert B. Fitzpatrick, PLLC

| | |
|---|---|
| **From:** | Robert B. Fitzpatrick, PLLC |
| **Sent:** | Friday, December 28, 2007 11:20 PM |
| **To:** | Robert B. Fitzpatrick, PLLC; 'McAlee, Joseph J.' |
| **Cc:** | 'Robert T. Shaffer III'; 'Young, Christopher C.' |
| **Subject:** | RE: Protocol |

Joe,

I am trying this again to make sure it goes through.  Please see the original message below at 4:58 P.M. EST.

All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile: (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com

Please visit our Blog at www.robertfitzpatrick.blogspot.com

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517(4).  This electronic message transmission contains information which may be confidential or privileged.  The information is intended solely for the recipient, and use by any other party is not authorized.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300 or by electronic mail.  Thank you. Please visit our website at www.robertbfitzpatrick.com .

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

-----Original Message-----
**From:** Robert B. Fitzpatrick, PLLC
**Sent:** Friday, December 28, 2007 4:58 PM
**To:** McAlee, Joseph J.
**Cc:** Robert B. Fitzpatrick, PLLC; Robert T. Shaffer III; Young, Christopher C.
**Subject:** Protocol


**PLEASE NOTE THAT OUR OFFICE WILL BE CLOSED FROM DECEMBER 21, 2007 AT 5:00 P.M. AND WILL
RE-OPEN AT 9:00 A.M. ON DECEMBER 27, 2007, CLOSING AGAIN ON DECEMBER 28, 2007 AT 5:00 P.M. AND
RE-OPENING AT 9:00 A.M. ON JANUARY 2, 2008**

Joe,

In accordance with Magistrate Judge Facciola's Order, I have attached our draft of a protocol.

As you know, we will be closed from 5:00 p.m. today until we re-open at 9:00 a.m. Wednesday, January
2nd. Let me suggest that we schedule a time certain on the 2nd or thereafter to discuss our respective
approaches to the protocol. I look forward to working with you to arrive at terms that are acceptable to
all concerned.

Happy New Year to you and your family.



All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com.

Please visit our Blog at http://www.robertfitzpatrick.blogspot.com/

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517(4).
This electronic message transmission contains information which may be confidential or privileged.  The information is
intended solely for the recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware
that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this
electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300
or by electronic mail. Thank you.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax
advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the
purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed in this communication (or in any attachment).

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@tro-rubin.com |
| **Sent:** | Friday, December 28, 2007 11:25 PM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |



details.txt (436 B)  ATT00035.txt (338 B)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

cyoung@rubinfortunato.com
jmcalee@rubinfortunato.com

1

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@murphyshaffer.com |
| **Sent:** | Friday, December 28, 2007 11:26 PM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |

   

details.txt (324 B)   Protocol (13.9 MB)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

RShaffer@murphyshaffer.com

1

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@tro-rubin.com |
| **Sent:** | Friday, December 28, 2007 11:36 PM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |

  

details.txt (436 B)  ATT00056.txt (361 B)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

        jmcalee@rubinfortunato.com
        cyoung@rubinfortunato.com

1

## Robert B. Fitzpatrick, PLLC

| | |
|---|---|
| **From:** | ~~████████████████████~~ |
| **Sent:** | Saturday, December 29, 2007 9:26 AM |
| **To:** | jmcalee@rubinfortunato.com; RShaffer@murphyshaffer.com; cyoung@rubinfortunato.com; Lawoffice of Robert B. Fitzpatrick, PLLC |
| **Subject:** | Robert B. Fitzpatrick, PLLC - Fwd: FW: Protocol |

Joe,

I am sending this message through my Associate's personal email address, as for some reason, see below, this document is not getting through to your email address from our work email address.

As you can see from the messages below, we originally sent the Protocol, in compliance with the Magistrate Judge's Order, yesterday, at 4:58 p.m. to you, Mr. Shaffer and Mr. Young. After our office had closed, and we had left, we received a message that for some reason the email did not go through. I do not understand why it did not go through, other than that this is the second time we have had difficulty sending a PDF document to your email address. We also sent the document to our client, and that message went through fine. We discovered this message that the email did not go through around 11:30 p.m. last night, and tried sending it again, but to no avail, which is now why we're trying it from a different email account.

In the future, whenever we are PDFing a document to you we will have to fax it as well.

Please confirm that you have received our Proposed Protocol.

Thank you.

Robert B. Fitzpatrick

---------- Forwarded message ----------
From: **Robert B. Fitzpatrick, PLLC** <fitzpatrick.law@verizon.net>
Date: Dec 29, 2007 9:09 AM
Subject: FW: Protocol
To: ~~████████████████~~

All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300

1/2/2008

Facsimile: (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com

Please visit our Blog at www.robertfitzpatrick.blogspot.com

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517(4). This electronic message transmission contains information which may be confidential or privileged. The information is intended solely for the recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300 or by electronic mail. Thank you. Please visit our website at www.robertbfitzpatrick.com .

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

-----Original Message-----
**From:** Robert B. Fitzpatrick, PLLC [mailto:fitzpatrick.law@verizon.net]
**Sent:** Friday, December 28, 2007 11:14 PM
**To:** jmcalee@rubinfortunato.com; RShaffer@murphyshaffer.com; cyoung@rubinfortunato.com
**Subject:** FW: Protocol

Joe,

Below is the message we sent at 4:58 EST along with the attached protocol. I do not understand why it did not go through. We used the same addresses, as you can see, that we always have.

All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile: (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com

Please visit our Blog at www.robertfitzpatrick.blogspot.com

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517(4). This electronic message transmission contains information which may be confidential or privileged. The information is intended solely for

1/2/2008

the recipient, and use by any other party is not authorized.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300 or by electronic mail.  Thank you.  Please visit our website at www.robertbfitzpatrick.com .

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

-----Original Message-----
**From:** Robert B. Fitzpatrick, PLLC
**Sent:** Friday, December 28, 2007 4:58 PM
**To:** McAlee, Joseph J.
**Cc:** Robert B. Fitzpatrick, PLLC; Robert T. Shaffer III; Young, Christopher C.
**Subject:** Protocol

**PLEASE NOTE THAT OUR OFFICE WILL BE CLOSED FROM DECEMBER 21, 2007 AT 5:00 P.M. AND WILL RE-OPEN AT 9:00 A.M. ON DECEMBER 27, 2007, CLOSING AGAIN ON DECEMBER 28, 2007 AT 5:00 P.M. AND RE-OPENING AT 9:00 A.M. ON JANUARY 2, 2008**

Joe,

In accordance with Magistrate Judge Facciola's Order, I have attached our draft of a protocol.

As you know, we will be closed from 5:00 p.m. today until we re-open at 9:00 a.m. Wednesday, January 2nd. Let me suggest that we schedule a time certain on the 2nd or thereafter to discuss our respective approaches to the protocol.  I look forward to working with you to arrive at terms that are acceptable to all concerned.

Happy New Year to you and your family.

All the best.

Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

Please visit our website at www.robertbfitzpatrick.com.

Please visit our Blog at http://www.robertfitzpatrick.blogspot.com/

CONFIDENTIALITY NOTE: The unauthorized disclosure or interception of email is a federal crime; 18 U.S.C. Sec. 2517(4). This electronic message transmission contains information which may be confidential or privileged.  The information is intended solely for

1/2/2008

Page 4 of 4

the recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please immediately notify Law Offices of Robert B. Fitzpatrick by telephone at 202-588-5300 or by electronic mail. Thank you.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@murphyshaffer.com |
| **Sent:** | Saturday, December 29, 2007 9:45 AM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |

  

details.txt (325 B)   Protocol (13.9 MB)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

RShaffer@murphyshaffer.com

1

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@murphyshaffer.com |
| **Sent:** | Saturday, December 29, 2007 9:51 AM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |



details.txt (324 B)  1th attempt to send
protocol (...

        This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

       RShaffer@murphyshaffer.com

1

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| **From:** | postmaster@tro-rubin.com |
| **Sent:** | Saturday, December 29, 2007 9:52 AM |
| **To:** | fitzpatrick.law@verizon.net |
| **Subject:** | Delivery Status Notification (Failure) |



details.txt (436 B)    ATT00087.txt (453 B)

      This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

     cyoung@rubinfortunato.com
     jmcalee@rubinfortunato.com

1

**Robert B. Fitzpatrick, PLLC**

| | |
|---|---|
| From: | postmaster@tro-rubin.com |
| Sent: | Saturday, December 29, 2007 9:59 AM |
| To: | fitzpatrick.law@verizon.net |
| Subject: | Delivery Status Notification (Failure) |



details.txt (436 B)   ATT00108.txt (425 B)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

        jmcalee@rubinfortunato.com
        cyoung@rubinfortunato.com

1

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0707
RECIPIENT ADDRESS     14107838823
DESTINATION ID
ST. TIME              12/29 11:54
TIME USE              06'48
PAGES SENT            19
RESULT                OK
```





**To:** Robert T. Shaffer III  **From:** Robert B. Fitzpatrick, PLLC

**Pages:** 19 (including cover)

**Fax:** 410-783-8823  **Date:** 12-29-2007

**Re:** Protocol   **CC:**

☒ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply**

**Comments:**

Enclosed is our draft of a protocol, which I
tried to send Friday, Dec 28, 2007 at
4:58 pm through email, in accordance with
Magistrate Judge Facciola's order.
This email, along with two subsequent
___ ___ from the company email and

```
*******************************
***   ERROR TX REPORT   ***
*******************************

TX FUNCTION WAS NOT COMPLETED

TX/RX NO              0709
RECIPIENT ADDRESS     6108541317
DESTINATION ID
ST. TIME              12/29 12:06
TIME USE              00'34
PAGES SENT            0
RESULT               NG        # 0018 BUSY/NO SIGNAL
```





**To:** Joseph J. McAlee
Christopher C. Young

**From:** Robert B. Fitzpatrick, PLLC

**Fax:** 610-854-1317

**Pages:** 19 (including cover)

**Phone:**

**Date:** 12-29-2007

**Re:** Protocol

**CC:**

☒ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**

**Comments:**

Enclosed is our draft of a protocol, which I tried to send Friday, Dec. 28, 2007 at 4:58pm through email, in accordance with Magistrate Judge Facciola's order. This email, along with two subsequent





**RubinFortunato**
Employment Law That Works

HOME   CREDO   ATTORNEYS   PRACTICE AREAS   CASE STUDIES   CONTACT

## >>> ATTORNEYS

# Joseph J. McAlee



Joe McAlee has twenty years experience as a trial and appellate lawyer. He has concentrated his practice in the area of commercial litigation, with particular emphasis in employment law and tax litigation. Mr. McAlee has represented employers in state and federal statutory discrimination cases, common law wrongful discharge claims, employment defamation cases and civil rights lawsuits. He also counsels employers in the handling of employee grievances and restrictive covenants as well as employment discrimination investigations. In 2005 and 2006, he was selected as a "Super Lawyer" by *Philadelphia Magazine*. Mr. McAlee also has substantial experience representing corporate taxpayers in *ad valorem* tax assessment appeals before the Boards of Assessment Appeals, the Courts of Common Pleas and the Pennsylvania Appellate Courts. He is a graduate of Villanova University (B.A.) and the Temple University School of Law (J.D. and LL.M.). Mr. McAlee is a member of the Bar of the United States Supreme Court, the Third and Tenth Circuit Courts of Appeals and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey as well as the Supreme Courts of Pennsylvania and New Jersey.

> jmcalee@rubinfortunato.com

> T: 610.408.2004 F: 610.854.1317

Back to Rubin Fortunato Attorneys Main Page

Rubin, Fortunato & Harbison P.C.

© 2007 Rubin, Fortunato & Harbison P.C. | All Rights Reserved | Contact Us | Disclaimer

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| Equity Analytics, LLC,<br>operating as Equity Methods,<br><br>Plaintiff,<br><br>v.<br><br>Timothy D. Lundin,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.  1:07-cv-02033<br><br>Judge Royce C. Lamberth |

## PROTOCOL FOR IMAGING AND REVIEW

IT IS HEREBY STIPULATED AND AGREED, through their respective counsel, by the

Plaintiff and the Defendant as follows:

WHEREAS, Plaintiff Equity Analytics, LLC ("EA") has filed a civil action in this Court

against Defendant, Timothy D. Lundin ("Lundin") in which EA alleges, *inter alia*, that

Defendant Lundin violated the provisions of the Computer Fraud and Abuse Act, 18 U.S.C. §

1030, and that Defendant Lundin violated the Arizona Trade Secrets Act, A.R.S. §§ 44-401, et.

seq. (2007), provisions respecting misappropriation of trade secrets; and

WHEREAS, the Computer Fraud and Abuse Act ("CFAA") has both criminal and civil

provisions; and

WHEREAS, during the initial phase of this litigation, specifically from November 14,

2007 until December 6, 2007, while Defendant Lundin's counsel was familiarizing himself with

the facts, Defendant Lundin declined to answer certain questions propounded to him at

deposition, invoking his Fifth Amendment rights; and

WHEREAS, during the aforesaid time frame, Defendant Lundin, asserting his Fifth Amendment rights as elucidated by the Supreme Court in *United States v. Hubbell*, 530 U.S. 27 (2000), declined to produce for inspection by the Plaintiff the hard drive of his Macintosh laptop computer and two external hard drives; and

WHEREAS, Defendant Lundin, being fully advised and counseled by independent counsel, knowingly and intelligently decided on December 6, 2007 to no longer assert Fifth Amendment rights and to produce for imaging and forensic review the aforesaid hard drive to his laptop and the aforesaid external hard drives; and

WHEREAS, Plaintiff EA has not propounded to Defendant Lundin a formal request for production of the aforesaid hard drives pursuant to Rule 34 of the Federal Rules of Civil Procedure and this Court's local Rules; and

WHEREAS, Defendant Lundin has voluntarily agreed to produce the hard drives without any formal discovery having been served upon him; and

WHEREAS, it is understood that Plaintiff EA has undertaken to image and forensically review the hard drives at its expense; and

WHEREAS, it is understood that the expenses being incurred by Plaintiff EA is not a "cost" within the meaning of Rule 54 of the Federal Rules of Civil Procedure, is not a "loss" as defined in 18 U.S.C. § 1030(e)(11) of the Computer Fraud and Abuse Act, and is not a recoverable cost or expense pursuant to any fee or cost shifting statute or rule applicable to this litigation; and

WHEREAS, it is understood by Plaintiff EA that Defendant Lundin's hard drives contain private matters (e.g., tax returns), proprietary matters (e.g., thousands of photographs from Defendant Lundin's photographic business), EASi confidential, commercial, and proprietary

2

matters, and privileged attorney-client communications between Defendant Lundin and his counsel; and

WHEREAS, Defendant Lundin's agreement to this stipulated Protocol does not constitute a waiver of any claim or defense herein, including any argument that Plaintiff EA has not established that the Court has federal jurisdiction pursuant to the Computer Fraud and Abuse Act and therefore should not assume supplemental jurisdiction over Plaintiff EA's state law claims; and

WHEREAS, in reliance on the foregoing understandings and representations, Defendant Lundin has agreed to enter into this Protocol for Imaging and Review ("Protocol"); and

IT IS HEREBY AGREED, through their respective counsel, by and between the Plaintiff and the Defendant that the following terms and conditions shall apply to the Protocol and that the parties shall, in all instances, adhere scrupulously to these terms and conditions unless and until they agree otherwise in writing:

1.      Within two (2) business days of the Court's approval of this Protocol, Defendant Lundin, through his counsel, shall deliver to a representative of FTI Consulting Defendant Lundin's Macintosh laptop computer model number, MacBookPro, including its hard drive and the external hard drives, specifically a Western Digital external hard drive and a LaCie external hard drive, along with power cables suitable for said hard drives.

2.      FTI Consulting, with Defendant Lundin present should he choose to be present, shall produce a digital or mirror image of the three aforesaid hard

drives, and shall complete said imaging within two (2) business days after delivery has been effectuated.

3.      FTI Consulting will create a digital or mirror image of the original hard drives. FTI Consulting will use a Mac/Apple target disk mode to image the entire disk contents to an external drive with the "dd" utility which enables read-only access to a firewire connected disk. In the event the "dd" utility cannot be used, the hard disk will be removed and a hardware "write blocker" will be utilized to gain access to the disk drive. FTI Consulting will take a MD5 hash fingerprint of the source drive and resulting image file to confirm they are identical copies.

4.      Upon completion of the imaging of the three aforesaid hard drives ("hard drives"), FTI Consulting ("FTI") shall retain the original hard drives until they are to be returned to Defendant Lundin in accordance with the provisions of the Protocol.

5.      FTI shall deliver the imaged hard drives to a fully qualified computer forensic examiner who shall take possession of the imaged hard drives. Defendant Lundin shall be permitted to propound reasonable questions to Plaintiff EA regarding the qualifications of the forensic examiner that it has retained, and shall be permitted, if he, through his counsel, deems it appropriate to request that the Court pass upon the qualifications of the forensic examiner if they be challenged by Defendant Lundin.

6.      The forensic examiner retained by Plaintiff EA shall utilize search terms to review the hard drives. Plaintiff EA has submitted proposed search terms to

4

Defendant Lundin, Defendant Lundin has reviewed and approved same, and said search terms are set forth in Appendix A hereto.

7.    The parties specifically agree that the review of the hard drives and subsequent disclosure of ESI thereon shall not and may not be deemed in any circumstance to be a waiver of the attorney-client privilege, the work product doctrine, or any other privilege.

8.    All ESI identified by using the search terms set forth in Appendix A shall be transmitted by Plaintiff EA's forensic examiner to counsel for Defendant Lundin, and shall not be discussed or disclosed in any fashion to Plaintiff EA, any agent of Plaintiff EA, or any of the attorneys for Plaintiff EA until Defendant Lundin and his counsel have reviewed all such ESI to determine what, in their judgment, is private and non-responsive to any issue in this case, proprietary as to Defendant Lundin and non-responsive as to any issue in this case, proprietary and commercial business information of EASi and non-responsive to any issue in this case, or privileged.

9.    With respect to any ESI that Defendant Lundin deems to be non-responsive to any issue in this case and/or privileged, Defendant Lundin, through his counsel, shall submit a log of such ESI formatted like a privileged log recognized under the Federal Rules of Civil Procedure.

10.    Defendant Lundin shall complete his examination of said ESI and submit any such log within five (5) business days of his receipt of the ESI from Plaintiff EA's forensic examiner.

11.      Within said five (5) business day time frame, Defendant Lundin shall transmit to Plaintiff EA's attorneys all ESI identified by Plaintiff EA's forensic examiner other than that which Defendant Lundin has withheld and listed on the log.

12.      Counsel for the parties shall promptly meet and confer either by person or by telephone to resolve any disputes regarding the ESI withheld by Defendant Lundin.  The parties, through counsel, shall advise the Court within five (5) business days after Defendant Lundin's counsel has submitted the aforesaid log as to whether there are any disputes regarding the withheld ESI that might need to be resolved by the Court.

13.      Plaintiff EA's forensic examiner, when examining the imaged hard drives, may also determine when Defendant Lundin accessed any Plaintiff EA ESI on the hard drives, when Defendant Lundin accessed Plaintiff EA's Salesforce.com, when and whether Defendant Lundin downloaded any ESI from Plaintiff EA's Salesforce.com, whether, when and to whom Defendant Lundin distributed electronically any ESI downloaded from Plaintiff EA's Salesforce.com, and whether and when Defendant Lundin electronically communicated or attempted to communicate with any of the eight (8) companies listed in Appendix B hereto.

14.      Plaintiff EA's forensic examiner may retain in its possession the imaged hard drives until the conclusion of this litigation, including any appeals, and shall destroy the imaged hard drives within ten (10) business days of said

conclusion and shall certify in writing to Defendant Lundin's counsel that it has done so.

15.    Plaintiff EA's forensic examiner shall prepare a written report in accordance with the provisions of the Federal Rules of Civil Procedure regarding opinion/expert witnesses. Said written report shall set forth in detail the results of its examination of the imaged hard drives, and said report shall contain all information deemed pertinent by the forensic examiner regarding issues of misappropriation and/or unauthorized access, including all information acquired pursuant to paragraph 13 above.

16.    Upon the conclusion of Plaintiff EA's examination of the imaged hard drives by Plaintiff EA's forensic examiner, the aforesaid report also shall identify all ESI on any of the hard drives that is deemed to be confidential to Plaintiff EA, and shall provide copies of same to Defendant Lundin's counsel under an appropriate protective order. Defendant Lundin shall have five (5) business days from receipt of said report to dispute whether any such identified ESI is confidential to Plaintiff EA. Any disputes in that regard that cannot be resolved by counsel in a meet and confer conference may thereafter be submitted to the Court for resolution.

17.    All ESI that has been determined to be confidential to Plaintiff EA shall be deleted from the original hard drives within five (5) business days of an agreement on what ESI is confidential to Plaintiff EA, and at that time the original hard drives shall be returned to Defendant Lundin. The deletion shall be performed in the presence of Defendant Lundin and shall be effectuated in a

7

manner that assures that no other ESI is deleted or otherwise corrupted. In the event that other ESI during the deletion process is deleted or corrupted, it shall be retrieved from the imaged hard drives.

18.  FTI and Plaintiff EA's forensic examiner will utilize U.S. Department of Defense Standard 522022-M (or other industry standard method) to ensure the complete erasure of any material from the imaged hard drives and the original hard drives. The deletion of any material must be certified by FTI or Plaintiff EA's forensic examiner in a manner that is acceptable to the parties

19.  FTI , the forensic examiner, and all employees and assistants of FTI and said forensic examiner shall execute a confidentiality agreement, a copy of which is attached hereto as Appendix C.

20.  The imaging and deletion services to be performed by FTI in accordance with this Protocol shall be performed within the Washington, D.C. metropolitan area.

21.  Counsel for the parties and Defendant Lundin may communicate with Plaintiff EA's forensic examiner during the forensic examination, but all such communications must either be by email with a copy contemporaneously to opposing counsel, or by telephone with opposing counsel participating.

22.  Upon the conclusion of this litigation, including any appeals, all ESI confidential to Plaintiff EA, all reports and copies thereof, generated by Plaintiff EA's forensic examiner, shall be returned by Defendant Lundin and his counsel to Plaintiff EA.

23.    All expenses and costs associated with the implementation of this Protocol

shall be borne exclusively by Plaintiff Equity Analytics, LLC.


IT IS SO STIPULATED AND AGREED ON THIS _____ day of _____, 2008.


_____
Robert B. Fitzpatrick, Esquire
Robert B. Fitzpatrick, PLLC

Attorney for Defendant
Timothy D. Lundin

_____
Robert T. Shaffer, Esquire
Murphy & Shaffer

Joseph J. McAlee, Esquire
Christopher C. Young, Esquire
Rubin, Fortunato & Harbison P.C.

Attorneys for Plaintiff
Equity Analytics, LLC

9

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

Equity Analytics, LLC,                )
operating as Equity Methods,          )
                                      )
                 Plaintiff,           )
                                      )        Civil Action No.  1:07-cv-02033
        v.                            )
                                      )
Timothy D. Lundin,                    )        Judge Royce C. Lamberth
                                      )
                 Defendant.           )
                                      )

### CONSENT ORDER

Upon consideration of the foregoing stipulated Protocol for Imaging and Review, it is

ORDERED on this ____ day of ____, 2008 that the same be, and the same hereby is, approved

by the Court.


                                              _____
                                              Judge


10

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| Equity Analytics, LLC, ) | |
| operating as Equity Methods, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No: 07-2033 |
| ) | (RCL/JMF) |
| Timothy D. Lundin, ) | |
| ) | Hon. Royce C. Lamberth |
| Defendant. ) | |

---

## ORDER

Upon consideration of Plaintiff Equity Analytics, LLC's "Motion for Order Authorizing Examination of Defendant's Computer", Defendant Timothy D. Lundin's response and opposition, in part, thereto, and the various Exhibits and Declarations submitted with respect to said motion, it is on this ___ day of _____, 2008.

ORDER that Plaintiff's aforementioned motion be hereby, DENIED.

FURTHER ORDERED, that the Court adopts and approves the protocol for imaging and examination of Defendant's five hard drives found at Exhibit C to Plaintiff's "Motion for Order Authorizing Examination of Defendant's Computer," and said protocol is and shall be the ORDER OF THIS COURT.

FURTHER ORDERED, that Defendant's proposed Protective Order is hereby adopted by the Court as its ORDER.

FURTHER ORDERED, that Plaintiff shall have five business days from the date of this Order to file a memorandum of no more than ten pages, directed at the question whether sanctions in the form of a fee award should be assessed by the Court and if so, upon which party, and if so, in what amount. Defendant shall have five days thereafter to respond in kind.

_____

Honorable John M. Facciola
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| ) | |
| **Equity Analytics, LLC,** ) | |
| **operating as Equity Methods,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No: 07-2033** |
| ) | **(RCL/JMF)** |
| **Timothy D. Lundin,** ) | |
| ) | **Hon. Royce C. Lamberth** |
| **Defendant.** ) | |
| ) | |

---

**DEFENDANT TIMOTHY D. LUNDIN'S MOTION FOR A PROTECTIVE ORDER AND
FOR THE COURT TO ENTER, AS ITS ORDER, DEFENDANT'S PROPOSED
PROTOCOL FOR THE IMAGING AND EXAMINATION OF
DEFENDANT'S FIVE COMPUTER HARD DRIVES**

Defendant Timothy D. Lundin, through his counsel, respectfully moves the Court for the entry of its proposed Protective Order found at Exhibit C (Appendix B) to Plaintiff's "Motion for Order Authorizing Examination of Defendant's Computer." Defendant Lundin further moves the Court to approve and adopt as its Order "Defendant Lundin's Proposed Protocol for Imaging and Review", said proposal found at Exhibit C to Plaintiff's "Motion for Order Authorizing Examination of Defendant's Computer." Defendant Lundin's response and opposition, in part, to Plaintiff's "Motion for Order Authorizing Examination of Defendant's Computer" contains Defendant Lundin's arguments in support of the foregoing motion.

WHEREFORE, Defendant Lundin respectfully prays that the Court grant the foregoing motion and enter the proposed Order submitted herewith.

Respectfully submitted,

/s/__Robert B. Fitzpatrick_____
Bar No. 040410

Universal Building South
Suite 640
1825 Connecticut Avenue, N.W.
Washington, D.C. 20009-5728
Phone: 202-588-5300
Fax: 202-588-5023
Email: Fitzpatrick.law@verizon.net

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

_____

Equity Analytics, LLC,                            )
operating as Equity Methods,                      )
                                                  )
          Plaintiff,                              )
v.                                                )          Civil Action No: 07-2033
                                                  )          (RCL/JMF)
Timothy D. Lundin,                                )
                                                  )          Hon. Royce C. Lamberth
          Defendant.                              )
_____)

**DEFENDANT TIMOTHY D. LUNDIN'S RESPONSE TO PLAINTIFF'S
<u>REQUEST TO A HEARING</u>**

In accordance with Local Civil Rule 7(f) of the United States District Court of the

District of Columbia, Defendant Timothy D. Lundin responds herein to Plaintiff's request for a

hearing on its motion for an order authorizing the imaging and examination of the Defendant's

computer hard drives. Plaintiff's request is unclear. Plaintiff nowhere in its papers filed with the

Court indicates whether it is requesting an evidentiary hearing with witness testimony or whether

it is requesting oral argument. Accordingly, we respond to each possible suggestion.

An evidentiary hearing is completely inappropriate. The notion that this dispute, which is,

after all, a dispute over matters upon which counsel ought to have agreed, hardly merits the

further escalation of cost and expense that would be associated with an evidentiary hearing. If

there were to be any evidentiary hearing, we humbly submit that it ought to be for the purpose of

the Court ferreting out why seasoned attorneys were unable to even narrow their differences to a

discrete cohort of issues in legitimate dispute. We strongly believe that Plaintiff's intransigence

has dramatically escalated the time and consequent legal fees associated with a matter that, we

think, should have collaboratively and collegially been resolved or, at a minimum dramatically

narrowed in terms of the scope of the dispute. Instead, the Court is now called upon to determine which of two wholly different protocols and wholly different approaches to the protection of privileged and confidential information are appropriate. We would welcome an evidentiary hearing on that subject for the purpose of determining whether sanctions should be imposed upon Plaintiff's counsel and/or their client. Otherwise, with respect to the other issues before the Court on Plaintiff's motion, we can discern no need for an evidentiary hearing, but, of course, will accede to the Court's wishes in that regard.

We also call to the Court's attention and, unless otherwise directed by the Court, leave it to the Court's discretion on how to proceed with respect to the fact that Plaintiff alleges in paragraph 10 of its Complaint that it is quoting from a document, when, in fact, the quote is materially inaccurate. The quote alleges that the document is an Equity Analytics document, when, in fact, it is an Equity Methods document - - a distinction that may well be dispositive on some of Plaintiff's claims. As stated, we leave it to the Court to determine whether an evidentiary hearing is appropriate to determine, for example, by examining *in camera* Plaintiff's work product whether the materially inaccurate quotation was deliberate or negligent. See *Lucas v. Paige*, 2006 U.S. Dist. LEXIS 39061 (D.D.C., June 14, 2006).

We also call to the Court's attention, as alleged in paragraph 66 of Lundin's Declaration, that immediately after his deposition of November 14, 2007, Plaintiff removed from its publicly accessible website evidence which Defendant had referenced in his deposition. While we would not quarrel with Plaintiff changing its business practice of allowing the public to view on its website when Plaintiff's representatives were scheduled to meet with a customer, we are quite concerned that Plaintiff has adversely affected the quality and accessibility of evidence, and indeed thus may have engaged in sanctionable spoliation. Moreover, Lundin's Declaration

contains several references to electronic evidence in Plaintiff's possession that Lundin legitimately fears Plaintiff may deliberately or negligently destroy or make much more difficult to access. These concerns may necessitate some intervention by this Court.

If, on the other hand, Plaintiff's request for a hearing is merely intended to request oral argument, once again, we think that this is a matter for the Court to decide in its absolute discretion. After reviewing the papers with respect to this controversy, should the Court have questions that it deems unanswered, we would welcome the opportunity for oral argument in order to answer and assist the Court in sorting through the this matter. Otherwise, Defendant Lundin is perfectly content for the Court to resolve the issues on the papers.

Respectfully submitted,

/s/   Robert B. Fitzpatrick_____
Bar No. 040410
Universal Building South
Suite 640
1825 Connecticut Avenue, N.W.
Washington, D.C. 20009-5728
Phone: 202-588-5300
Fax: 202-588-5023
Email: Fitzpatrick.law@verizon.net

Counsel for Defendant

# APPENDIX A



# EnCase® Forensic
## Detailed Product Description

©2006 Guidance Software. All Rights Reserved

215 North Marengo Avenue, Second Floor • Pasadena, California 91101 • Tel. 626.229.9191 • www.guidancesoftware.com

## Operating System and File System Support

Two major attributes that make EnCase® software unique are the breadth of operating systems and file systems supported. For each operating system that exists there are a number of different file systems which the host operating system could utilize. The operating system and file system are separate but do have a deep relationship on how information is stored and how the host operating system operates with the file system. The ability to deeply analyze a broad range of operating system and file system artifacts is a critical component of enterprise investigations. EnCase software has the ability to interpret all of the file systems, over the network, for which a Servlet has been developed (currently Windows, Linux, Solaris, AIX and OSX operating systems; support for additional file systems is on the way). In addition, EnCase software can also interpret a number of file systems for which there is currently no Servlet developed.

- Operating system Support: Windows 95/98/NT/2000/XP/2003 Server, Linux Kernel 2.4 and above, Solaris 8/9 both 32 & 64 bit, AIX, OSX.
- File systems supported by EnCase software: FAT12/16/32, NTFS, EXT2/3 (Linux), Reiser (Linux), UFS (Sun Solaris), AIX Journaling File System (JFS and jfs) LVM8, FFS (OpenBSD, NetBSD and FreeBSD), Palm, HFS, HFS+ (Macintosh), CDFS, ISO 9660, UDF, DVD, and TiVo® 1 and TiVo 2 file systems.
- EnCase software uniquely supports the imaging and analysis of RAID arrays, including hardware and software RAIDs. Forensic analysis of RAID sets is nearly impossible outside of the EnCase environment.
- Dynamic Disk Support for Windows 2000/XP/2003 Server.
- Ability to preview and acquire select Palm devices.
- Ability to interpret and analyze VMware, Microsoft Virtual PC, DD and SafeBack v2 image formats.

## Acquisition

The EnCase® acquisition process begins with the creation of a complete, physical bitstream image of a subject drive or drives in a completely noninvasive manner. The EnCase evidence file is an exact duplicate of the data as it existed during the time of acquisition. Throughout the acquisition process, the bitstream image is continually verified by Cyclical Redundancy Checksum (CRC) blocks, which are calculated concurrent to the acquisition. At the completion of the acquisition process, a second validation check, called a Message Digest 5 (MD5) hash, is performed over the entire data set acquired, and it is embedded as part of the evidence file for validation of the acquired media.

- **Acquisition Granularity**: Examiners have more control over the way hard drive data is acquired.
  - o Errors: Historically, when a read error is found on a hard disk, the entire block of data containing the read error is zeroed out. With EnCase Forensic, you have the flexibility to specify the number of sectors that get zeroed when an error is found.
  - o Acquisition Blocks: Examiners can define the amount of data to acquire during an acquisition operation, ensuring the fastest acquisition rates possible.
- **Acquisition Restart**: Examiners can continue a Windows-based acquisition from its point of interruption, and not have to reacquire the entire device from the beginning.

©2006 Guidance Software. All Rights Reserved

- **Logical Evidence Files**: These let you selectively choose exactly which files or folders you want to preserve, instead of acquiring the entire drive. Unlike copying files from a device and altering critical metadata, logical evidence preserves the original files as they existed on the media and include a wealth of additional information such as file name, file extension, last accessed, file created, last written, entry modified, logical size, physical size, MD5 hash value, permissions, starting extent and original path of the file.

**EnCase LinEn Utility**: The LinEn utility is a Linux version of the industry-standard DOS-based EnCase acquisition tool. While it performs the same basic function as the DOS version, it overcomes a number of Linux limitations, such as non-Windows operating systems, extremely large hard drives and acquisition speed.

## EnCase Evidence File (Preservation)

The EnCase® Evidence File is a proprietary file created by EnCase to compress and preserve bitstream images of acquired media. The EnCase Evidence File is widely known throughout the law enforcement and computer security industries. It has been accepted by courts to the federal appellate level and around the world. For court decisions related to EnCase software, please visit the Legal Resources page.

## START HERE Powerful Analytical Functionality

The ability to analyze and search large amounts of data quickly and easily is a critical capability of any incident response, computer investigation or analysis tool. EnCase software offers the most advanced, comprehensive and easy-to-use tool to carry out these complicated and time-consuming tasks, across multiple file systems and languages.

**Automated Analysis**: SweepCase lets examiners automatically choose the types of analysis they want to perform on a set of media instead of having to initiate each tool separately.

**Multiple Sorting Fields**: Examiners can sort files according to 30 different fields, including all four time stamps (File Created, Last Accessed, Last Written and Entry Modified), file names, file signatures and extensions, hash value, full path, permissions.

**Filters and Filter Conditions**: Filters let the examiner reduce the amount of information displayed, based on user-specified criteria. More than 150 filters are provided with EnCase software, ranging from deleted files to password-protected Word documents.

**Queries**: Examiners can combine filters to create complex queries using simple "OR" or "AND" logic.

**View "Deleted" Files and Other Unallocated Data in Context**: EnCase offers a Windows-Explorer-type view of deleted and unallocated data. This includes file slack, swap files, print spooler data and all other unallocated data files.

©2006 Guidance Software. All Rights Reserved

215 North Marengo Avenue, Second Floor • Pasadena, California 91101 • Tel. 626.229.9191 • www.guidancesoftware.com

**International Language Support**: EnCase supports Unicode data decoding and can search and display any language that Unicode supports. This allows examiners to search and view data in its native format such as German, Arabic or Kanji.

**Encrypted Volumes and Hard Drive Encryption**: EnCase can analyze and acquire mounted encrypted volumes, such as PGP and DriveCrypt, and give examiners full access to data on hard drives that are wrapped with encryption technology, such as SafeBoot.

**Link File Examination**: This automated process reads all forms of link (.lnk) files — both allocated and unallocated — and decodes the results for quick and easy analysis. Being able to quickly discover and interpret link files gives the examiner valuable information, such as learning that a suspect is transporting company data onto a thumb drive or external media, or what files, applications and shares the suspect commonly used.

**Active Directory Information Extractor**: The Active Directory Information Extractor forensically analyzes the Active Directory database (NTDS.DIT) and extracts the username, SID, home directory, email address, last login, last failed login and next password change.

**Hardware Analysis**: Automatically culls through the registry and configuration files to quickly identify the types of hardware installed on a target machine, including NIC cards, FireWire devices, thumb drives, IDE devices and other hardware information.

**Recover Folders**: Automatically rebuilds the structure of formatted NTFS and FAT volumes.

**Log and Event File Analysis**: EnCase provides a single means by which to analyze, search and document log and event file data.

**Symbolic Link Analysis**: EnCase gives access to and analysis of symbolic link information to simplify analysis of UNIX-based file systems.

**Compound Document and File Analysis**: Many files — such as Microsoft Office documents, Outlook PSTs, TAR, GZ, thumbs.db and ZIP files — store internal files and metadata that contain valuable information once exposed. EnCase automatically displays these internal files, file structures, data and metadata. Once these files have been virtually mounted within EnCase, they can be searched, documented and extracted in a number of different ways.

**File Signature Analysis**: EnCase can automatically verify the signature of every file it searches and identify those modified extensions.

**Hash Analysis**: EnCase can automatically create hash values for all of the files in a case.

**Built-in Registry Viewer**: The integrated registry viewer organizes the registry data file into folders, giving examiners an expedient and efficient way to view the Windows registry and determine values.

©2006 Guidance Software. All Rights Reserved

**External File Viewers**: Occasionally, an examiner will find file types that EnCase does not have the built-in capabilities to view (such as an MP3 or AVI file), or examiners might want to view a file type that EnCase does support with a third-party tool or program. In either situation, EnCase can be enhanced quickly to use external file viewers, easing the analysis of foreign file types and allowing the use of native applications from the source machine.

**VMware Analysis**: EnCase can analyze VMware (.vmdk) data files. It interprets the data files that compose the physical and logical structure of the virtual hard drive, including unallocated space, which enables quick and thorough analysis of VMware.

**Single File**: You can quickly analyze individual logical files that contain a number of external files. Sometimes relevant files exist on shared servers, loose files from a thumb drive, files on a CD or a PST from the mail server. Once added into the Examiner, these single files can be analyzed and acquired into Logical Evidence Files, then added to the case for future reference and preservation.

**File Finder**: This feature automatically searches through the page file, unallocated clusters, selected files or an entire case, looking for predefined or custom file types. This feature differs from the standard search, because it looks through the defined areas for the file header information and sometimes the footer.

## Search Technologies

The powerful EnCase® search engine can locate information anywhere on physical or logical media.

**Proximity Search**: This feature searches through all files in a case for a specific keyword and returns the responsive documents with the keyword and a specified number of bytes surrounding it. This is a critical function when trying to add context around the information you are searching for.

**Internet and Email Search**: This feature will find, parse, analyze and display various types of Internet and email artifacts across machines. The Internet and email search finds mail formats (such as Hotmail, Outlook, Lotus Notes, Yahoo, AOL, Netscape, mbox and Outlook Express) and Internet artifacts from Internet Explorer, Mozilla, Opera and Safari.

**Search Options**: In addition to the standard search feature, EnCase software offers a number of options that can be used to search through data:

- **Case Sensitive**: The keyword will be searched for, but only in the exact case specified in the text box.
- **GREP**: The keyword is a regular expression to search, using the Global Regular Expressions Post (GREP) advanced searching syntax.
- **RTL Reading**: This will search for the keyword in a right-to-left sequence for international language support.
- **Active Code Page**: This lets you enter keywords in many different languages.

©2006 Guidance Software. All Rights Reserved

215 North Marengo Avenue, Second Floor  •  Pasadena, California  91101  •  Tel. 626.229.9191  •  www.guidancesoftware.com

- **Big Endian/Little Endian Unicode/UTF-8/UTF-7**: EnCase software allows examiners to search using multiple Unicode standards as opposed to ASCII. This enables investigators to search for keywords with international language characters.

**Logical File Recognition**: Files often span noncontiguous clusters and EnCase software can search all such allocated files. Without EnCase software, if you search Windows text files using a forensic utility that cannot logically search across data clusters, you'll often miss search hits or receive inaccurate search results.

## Documentation and Reporting

EnCase® Enterprise lets users define with detailed granularity what information is presented and how it is presented, depending on the purpose and target audience of the investigation. Almost all information revealed by EnCase software can be exported into various file formats for external reporting and analysis purposes.

**Automatic Reports**: Since the requirement to generate reports is so critical, EnCase has a number of automatically generated reports that can be created. These automated reports show a wealth of information depending on the type being generated. Here are some examples:

- Listing of all files and folders in a case
- Detailed listing of all URLs and corresponding dates and times that websites were visited
- Document incident report that helps create the required documentation relevant during the incident response process
- Detailed hard drive information about physical and logical partitions

**Bookmarks**: These are the individual components that drive the information contained in the EnCase report. During analysis, an examiner can use bookmarks in various ways to identify and document specific clues. There are seven different types of bookmarks:

- **Highlighted Data**: Created when highlighting specific text
- **Notes**: Allows the user to write additional comments into the report
- **Folder Information**: Used to bookmark the tree structure of a folder or device information of specific media
- **Notable File**: A file documented by itself
- **File Group**: Indicates that the bookmark was made as part of a group of selected files
- **Log Record**: Contains the results of log parsing activity
- **Registry**: Contains the results of Windows registry parsing activity

**Instant Decoding of Nontext Data**: Within the reporting section of EnCase, an examiner may "decode" nontext data, so it can be presented in a more recognizable format.

**Integrated Picture Viewer with Gallery View**: A fully integrated picture viewer automatically locates and displays many known graphical image types, including Microsoft thumbs.db files.

©2006 Guidance Software. All Rights Reserved

215 North Marengo Avenue, Second Floor  •  Pasadena, California  91101  •  Tel. 626.229.9191  •  www.guidancesoftware.com

**Timeline**: This integrated viewer allows an examiner to see all relevant time attributes of all the files in the case (or selected group of files) in a powerful graphical environment.

**Intellitype**: A quick way for an examiner to jump to files of relevance, instead of having to sort by a particular file attribute and scroll through the data.

**Time Zone Settings**: Examiners can set the time zone for each piece of media in a case, enabling simple comparison of media from different time zones.

**Built-in Help**: Quick and easy access to relevant information in the user manual, with topics pertaining to almost every feature of the software. The user manual is a wealth of rich product-related information that can help even the most senior examiners.

## Internet and Email investigation

Two of the most critical areas of any investigation typically involve the analysis of artifacts related to the Internet and email. EnCase® software has a number of powerful features that facilitate efficient examinations, including recognition of the various files typically associated with Internet and email artifacts.

**Email**

- **Analysis**: EnCase software has the ability to find, parse, analyze, display and document various types of email formats, including Outlook PSTs/OSTs ('97-'03), Outlook® Express DBXs, Lotus Notes NFS, webmail such as Hotmail, Netscape and Yahoo; UNIX mbox files like those used by Mac OS X; Netscape; Firefox; UNIX email applications; and AOL 6, 7, 8, 9. In some cases, EnCase can recover deleted files and depending on the email format, the status of the machine.

    - **Presentation**: Email analysis results are placed in a common EnCase format — which is easy to navigate to — where examiners can find information necessary to support the most complex investigations.

- **Browser History Analysis**: EnCase has powerful and selective search capabilities for Internet artifacts that can be done by device, browser type or user. EnCase can automatically parse, analyze and display various types of Internet and Windows history artifacts logged when websites or file directories are accessed through supported browsers, including Internet Explorer, Mozilla, Opera and Safari.

    - **Internet artifact search**: The Internet history keyword search searches out all Internet Explorer history information (in allocated space) and writes it out in HTML format, allowing the examiner to quickly and easily investigate the same sites that the subject visited.
    - **WEB cache analysis**: Most browsers automatically save a copy of each Web page that is viewed, including the pictures, text and multimedia elements. EnCase software can find, parse, analyze, display and document this information.

©2006 Guidance Software. All Rights Reserved

- o **HTML carver**: The HTML carver is a powerful search and export function that looks for HTML files independent of the browser or Internet-enabled application and allows the examiner to search those files by keyword or other criteria.
- o **HTML page reconstruction**: EnCase software can render HTML Web pages from within the Examiner for easy viewing and quick analysis.
- o **Kazaa toolkit**: Searches through a case looking for various Kazaa artifacts.
- o **Instant Messenger toolkit**: Searches through a case looking for various Instant Messenger artifacts.
- o **Presentation**: As with email, Internet history information is placed in a common interface — which is easy to navigate to — where examiners can quickly find information necessary to support the investigation.

## EnScript® Searching Tools

Many of the powerful automated features and toolsets in EnCase are driven by the EnScript technology. The powerful EnScript programming language follows standards consistent with C++ and Java. It enables the automation of complex repetitive operations and enables communication with external systems, such as intrusion detection systems and Windows systems through WMI. EnScript programming allows an investigator to build custom-designed scripts for specific investigative needs and can save investigators days or weeks of analysis time by automating almost any investigative task. They can also be compiled and shared with other investigators in the larger community and with teammates.

©2006 Guidance Software. All Rights Reserved