**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **Equity Analytics, LLC,** ) | | |
| **operating as Equity Methods,** ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| v. ) | Civil Action No: 07-2033 | |
| ) | (RCL/JMF) | |
| **Timothy D. Lundin,** ) | | |
| ) | | |
| **Defendant.** ) | | |
| ) | | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF
EQUITY ANALYTICS, LLC'S MOTION FOR
<u>ORDER AUTHORIZING EXAMINATION OF DEFENDANT'S COMPUTER</u>**

Plaintiff Equity Analytics, LLC ("Equity Analytics" or "Plaintiff"), by its undersigned counsel, submits this reply to defendant Timothy D. Lundin's ("Lundin" or "Defendant") Response and Opposition to Plaintiff's Motion for Order Authorizing Examination of Defendant's Computer.

**I.     Lundin's Affidavit**

In his response to Plaintiff's motion, and after prior refusals to testify on many of these matters based upon his Fifth Amendment right against self-incrimination, Lundin has submitted a 28-page Affidavit describing how he accessed and misappropriated information belonging to Plaintiff. The majority of the statements in Lundin's affidavit are self-serving, have not been the subject of deposition discovery, or raise issues not properly before this Court. However, some of the admissions made by Lundin in his Affidavit underscore the need for a full and unrestricted forensic examination of Defendant's computer hard drives.[1]

---

[1] Preliminarily, Equity Analytics disputes that its refusal to waive any right to seek recovery of its costs under any applicable cost-shifting statute constitutes a breach of its agreement to conduct the forensic review at its own expense. Plaintiff's agreement to pay for the forensic review was simply an accommodation to facilitate the

By Lundin's own admission, between June 21, 2007 and September 18, 2007, Lundin used another person's password to log onto the Equity Analytics account at salesforce.com on numerous occasions for a period of time ranging from a few seconds to over two hours and downloaded information. (Lundin Affidavit, ¶¶ 44 and 45.) Immediately prior to contacting his current employer, EASi, Lundin logged on to the Equity Analytics account and "downloaded seven reports" consisting of "large files containing all the companies that Equity Analytics, LLC had listed within their system along with opportunity reports." (Lundin Affidavit, ¶ 47.)[2] Indeed, Lundin agreed to provide EASi with confidential Equity Analytics reports when he began work with EASi, opting to download "the latest list of opportunities that [Lundin] had been working [on] in the past at Equity Analytics, LLC" for transmission to his new employer. (Lundin Affidavit, ¶ 52.)

On September 4, 2007, Lundin's first day at work at EASi, Lundin e-mailed EASi a list of companies that directly competed with EASi, information contained in the Equity Analytics account.[3] (Lundin Affidavit, ¶ 54.) The e-mail was distributed to the entire EASi sales team as Lundin's "prospect list." (Lundin Affidavit, ¶ 58.) Lundin downloaded additional sales opportunity reports from Equity Analytics salesforce.com account on September 18, 2007, presumably for his own use. (Lundin Affidavit, ¶ 61.) Lundin was unable to access the Equity Analytics salesforce.com account after September 20, 2007. (Lundin Affidavit, ¶ 60.)[4]

---

review; it was not intended to waive any right it may have to seek costs later. Conversely, Lundin's apparent concerns about waiving any subject matter jurisdiction defenses he may have are puzzling. Such defenses are non-waivable. If Lundin has any other jurisdictional defenses, he can raise them at the appropriate time. This is not the appropriate time.

[2] While Lundin claimed that he did not transmit these reports to EASi, Lundin does not disclaim any discussion of his possession of these reports in any conversation with EASi. (Lundin Affidavit, ¶ 47.)

[3] While the information downloaded concerned two competitors and not Equity Analytics, there can be no argument this information is nonetheless confidential and proprietary to Equity Analytics. It was generated by Equity Analytics employees, maintained on an Equity Analytics confidential website, and inaccessible to the general

Despite these unauthorized and brazen transgressions, Lundin argues that because he was given the password of an Equity Analytics employee to access the Equity Analytics salesforce.com account, that information was not confidential and, indeed, free to be disseminated to a competitor.[5] This is absurd. Lundin's arguments are reminiscent of a thief who enters a home and steals the homeowner's valuables using the key left under the mat provided to him by the complicit servant. Given Lundin's admissions, Equity Analytics is certainly entitled to locate its information, delete it from Lundin's files and overwrite the deleted areas. This can only be accomplished through a complete and thorough forensic examination of Lundin's computer.[6]

## II.  The Use of Search Terms

Plaintiff's rejection of search terms in connection with the forensic examination of Lundin's computer should be placed in the proper context.[7] Early in this litigation, Lundin

---

public. Moreover, it was information that was unavailable to EASi and provided EASi with crucial information, that is, the identity of the companies that EASi wanted to target.

[4] Equity Analytics concedes some inconsistency between the Exhibit to the Complaint and the text of the Complaint. Equity Analytics apologizes for any confusion engendered by this error. This was not done to mislead, but is a grammatical error that Equity Analytics will correct.

[5] This is belied by Lundin's admission that when told by EASi it did not need any Equity Analytics information, Lundin suggested they discard his e-mail. (Lundin Affidavit, ¶ 56.) There would be no need for such a statement if the information were in the public domain. Additionally, conspicuous by its absence is a vigorous assertion from Lundin to EASi at that time, that EASi should not use the data in the e-mail because it was downloaded directly from Equity Analytics salesforce.com account.

[6] Equity Analytics has proposed the use of two forensic experts, Gerald D. Weber and Jose Martinez. Equity Analytics provided Lundin's counsel with Mr. Weber's *curriculum vitae* on December 19, 2007. Lundin's counsel was provided with the *curriculum vitae* of Mr. Martinez on December 31, 2007. Equity Analytics is unaware of any inquires made by Lundin regarding the qualifications of its experts.

[7] Equity Analytics would draw the Court's attention to the programs and file types identified by Lundin in the Search Protocol/Keywords at page 1 of Appendix "A" to Lundin's proposed Protocol. The file suffixes identified by Lundin as a part of the mandatory search protocol (.doc, .txt, .rtf. cvs, .xml. .ppt, and .pdf) does ***not*** include .xls, which Lundin identifies as the format in which he saved the Equity Analytics information he transmitted to EASi. (Compare Appendix "A", pages 1, 2 and 3 with Lundin Affidavit, ¶¶ 54, 56 and 59.) If Lundin saved and/or transmitted additional downloads, this information might be saved as an .xls document, but might never be found because of the type of file suffixes identified by Lundin. Indeed, following "the road map" provided

proposed the use of "search terms" to locate relevant information contained in the files of the imaged hard drive. Although the issue of "search terms" was raised earlier, counsel for Lundin stated as early as November 29, 2007 that he would be providing Plaintiff's counsel with a list of proposed search terms. No list of search terms was provided at that time. On January 3, 2008, counsel for Mr. Lundin stated that he and his client hoped to provide Plaintiff's counsel with a list of proposed search terms before the close of business, January 4, 2008. Plaintiff was not provided with a list of search terms until the close of business on January 7, 2008, approximately *five weeks* after the promised search terms were to be delivered and the day before the due date for Plaintiff's motion for relief.

More importantly, based on advice received from its forensic consultant, Equity Analytics reasonably believes the use of such search terms would preclude a meaningful review of the imaged hard drives because Lundin downloaded a new operating system, which likely impaired the integrity of files or information on the computer that existed at the time Lundin accessed Equity Analytic's files and created fragments of information that would be difficult to locate using search terms alone.[8] Additionally, the fact that Lundin admits to deleting some of the downloaded information makes a complete forensic search all the more important.[9] The

---

by Lundin might lead the forensic computer consultant down "the primrose path" because valuable information might be overlooked.

[8] Although there were numerous conversations between Lundin's counsel and counsel for Equity Analytics, Plaintiff's position was also stated in written communications. (*See*, *e.g.* Plaintiff's counsel's e-mail of November 30, 2007 and letters of December 14, 2007 and January 3, 2008). In the interest of keeping this reply brief, counsel will not attach exhibits. However, should the Court require copies of these communications, counsel will supply them.

[9] Perhaps just as important is Lundin's admission that he deleted the salesforce.com downloads a few weeks prior to the initiation of this lawsuit relegating this information to the "slack space" of his computer hard drive. (Lundin Affidavit, ¶ 67.) "The so-called 'slack space' of a computer is the 'unused space at the logical end of an active file's data and the physical end of the cluster or clusters that are assigned to an active file.' *Peskoff v. Faber*, 240 F.R.D. 26, 29, n. 1 (D.C. D.C. 2007) (quoting *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 46, n. 7 (D. Conn. 2002)). "Deleted data, or remnants of deleted data, is often found in a computer's slack

cursory review proposed by Lundin using search terms would not allow the forensic consultant to locate and examine the pertinent information.[10]

### III.  The Retention of Lundin's Original Hard Drives

Equity Analytics' insistence that Lundin's original hard drives remain in an unaltered state until the end of the litigation is not motivated by a desire to inconvenience Lundin. Equity Analytics simply wishes to avoid any evidentiary or spoliation issues that might arise if the original hard drives are returned to Lundin prior to the end of the case and a question arises regarding the authenticity of any electronically stored information. No solution to this problem was proffered by Lundin's counsel despite request for an answer.[11] However, counsel believes this issue can be resolved by requiring the parties to raise any objections to authenticity following completion of the forensic review. *See*, *e.g.*, *Lorraine v. Markel American Insurance Company*, 241 F.R.D. 534 (D. Md. 2007). Counsel respectfully requests the Court direct the parties to raise any evidentiary issues related to the production of electronically stored information within forty-five days of the completion of the forensic examination, with any unresolved issues to be addressed by this Court upon a motion by either party within fifteen days thereafter.

### IV.  A Confidentiality Agreement or Protective Order

Equity Analytics has no objection to an agreement to protecting the confidentiality of any

---

space." *Peskoff*, 240 F.R.D. at 29, n. 1. At the very least, in order to locate these fragments and insure that this space is overwritten so the materials are not recoverable, a complete forensic examination is necessary.

[10] Lundin admits he received Plaintiff's counsel's letter on November 2, 2007 requesting, *inter alia*, the return of any of Plaintiff's confidential information in his possession. Nonetheless, the following day, Lundin allegedly loaded a new operating system on his computer because he "was excited to see what the talk was about." (Lundin Affidavit, ¶ 68.)

[11] Although there were conversations between Lundin's counsel and counsel for Equity Analytics regarding this issue, Plaintiff's position was also stated in written communications. (*See*, *e.g.* Plaintiff's counsel's communications of December 14, 2007 and January 3, 2008).

information produced in this lawsuit, including any personal information contained on Lundin's computer. Indeed, Equity Analytics provided a draft Confidentiality Agreement to Lundin's counsel for review and comment on November 15, 2007. Plaintiff's counsel repeatedly requested Lundin's counsel to state whether he had any questions or concerns regarding the Confidentiality Agreement.[12] The matter was not addressed by Lundin until almost two months later (November 15, 2007 to January 7, 2008), when Lundin's counsel forwarded a proposed Stipulated Protective Order to counsel for Equity Analytics the day before the date Plaintiff's pending motion was due. Equity Analytics did consider the proposed Stipulated Protective Order submitted by Lundin. But it believed then, and it believes now, that the more simplistic Confidentiality Agreement provided by Equity Analytics more than adequately protects the parties' interests in maintaining confidentiality.[13]

---

[12] Although there were conversations between Lundin's counsel and counsel for Equity Analytics regarding confidentiality, Plaintiff's position was also stated in written communications. (*See*, *e.g.* Plaintiff's counsel's communications of November 30, 2007, December 14, 2007 and December 21, 2007).

[13] Counsel for Plaintiff provided feedback on Lundin's stipulated Protective Order within a day after it was received. This hardly evidences a "my way or the highway approach" on the part of Plaintiff's counsel, as suggested by Lundin.

**V.     Conclusion**

For all the reasons stated herein, and in the Memorandum in support of Plaintiff's Motion filed January 8, 2008, Plaintiff's Motion for Order Authorizing Examination of Defendant's Computer should be granted.

                Respectfully submitted,

                MURPHY & SHAFFER LLC

                /s/ *Robert T. Shaffer, III*
                Robert T. Shaffer, III
                Bar No. 04074
                36 South Charles Street, Suite 1400
                Baltimore, Maryland 21201
                Phone:  (410) 783-7000
                Fax:  (410) 783-8823
                E-mail:  rshaffer@murphyshaffer.com

Of Counsel:
Joseph J. McAlee, Esquire
Christopher Y. Young, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
MCS Building
Paoli, Pennsylvania 19301
Phone:  (610) 408-2000
Fax:  (610) 408-9000
E-mail:  jmcalee@rubinfortunato.com