**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Equity Analytics, LLC,** )<br>**operating as Equity Methods,** )<br>)<br>Plaintiff, )<br>v. )<br>)<br>**Timothy D. Lundin,** )<br>)<br>Defendant. )<br>) | Civil Action No: 07-2033<br>(RCL/JMF) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
EQUITY ANALYTICS, LLC'S MOTION FOR RELIEF**

Plaintiff, Equity Analytics, LLC submits this supplemental memorandum in compliance with the Order and Opinion of the Honorable John M. Facciola dated March 7, 2008 and in support of its motion for an Order approving use of forensic examination of defendant, Timothy D. Lundin's computer hard drives by a forensic expert of Equity Analytics, LLC's choice.

Attached hereto as Exhibit "1" and incorporated by reference is the Joint Affidavit of Gerald D. Weber and Jose Martinez.

**WHEREFORE**, Equity Analytics, LLC respectfully prays that this Honorable Court grant Equity Analytics, LLC's motion.

Dated: March 20, 2008

Respectfully submitted,

MURPHY & SHAFFER LLC

/s/ *Robert T. Shaffer, III*
Robert T. Shaffer, III
Bar No. 04074
36 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone: (410) 783-7000
Fax: (410) 783-8823
Email: rshaffer@murphyshaffer.com

Of Counsel:

Joseph J. McAlee, Esquire
Christopher Y. Young, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
MCS Building
Paoli, Pennsylvania 19301
Phone:  (610) 408-2000
Fax:  (610) 408-9000
E-mail:  jmcalee@rubinfortunato.com

*Counsel for the Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of March 2008, I electronically filed the foregoing *Supplemental Memorandum in Support of Equity Analytics, LLC's Motion for Relief* with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

>Robert B. Fitzpatrick, Esquire
>ROBERT B. FITZPATRICK, PLLC
>Universal Building South
>1825 Connecticut Avenue, N.W.
>Suite 640
>Washington, D.C. 20009-5728
>
>*Counsel for the Defendant*

>/s/ *Robert T. Shaffer, III*_____
>Robert T. Shaffer, III

EXHIBIT "1"

Case 1:07-cv-02033-RCL    Document 35-2    Filed 03/20/2008    Page 1 of 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EQUITY ANALYTICS, LLC, operating as EQUITY METHODS** | : <br> : <br> : |
| **Plaintiff,** | : <br> : |
| v. | : Civil Action No. 1:07-cv-02033 <br> : |
| **TIMOTHY LUNDIN.** | : <br> : |
| **Defendants.** | : |

### AFFIDAVIT OF GERALD D. WEBER

I, Gerald D. Weber, state as follows:

1. I am currently the Director of G.D. Weber & Associates, a technical consulting organization. A copy of my curriculum vitae, setting forth my education and professional background, is attached hereto as Exhibit "A."

2. This Affidavit is submitted at the direction of the Honorable John M. Facciola of the United States District Court for the District of Columbia to answer questions posed by Judge Facciola in His Honor's March 7, 2008 Order and Opinion regarding the forensic examination of the hard drive on defendant Timothy Lundin's ("Mr. Lundin") computer and external drives in his possession.

3. Mr. Lundin has proposed the use of "search terms" (a series of specific words or phrases) which when used in a "file text search" (a search of the contents of any file) should locate any file in which a "search term" appears. .

4. I am aware that on November 3 or November 4, 2007, Mr. Lundin installed a new operating system (OS10 Leopard) on his Macintosh (MacBookPro) laptop computer.

5. In my experience, the installation of a new operating system will overwrite the Operating System's file allocation table (FAT) and overwrite or partially overwrite the metadata integrity of the files on the system at that time, creating fragments of information that are not indexed on the newly created file allocation table, which may be highly relevant to the inquiry the subject of the forensic search but difficult to locate. For example, if the portion of the file containing a proposed search term was overwritten or partially overwritten (deleted or fragmented) during the installation of the new operating system, a file text search using that search term would not yield that file.

6. I am aware that Mr. Lundin deleted information he downloaded from Equity Analytics, LLC's salesforce.com website a few weeks prior to the initiation of this lawsuit relegating this information to the "slack space" of his hard drives. "Slack space" is the unused area between the end of a file's actual contents and the beginning of another file at the start of the next cluster.

7. Because the files that are pertinent to this litigations might have been partially overwritten and the new O/S installation re-index the file allocation table the files will not be available through the use of new O/S. The easiest way to find and recover these deleted file fragments is to search free-space, unallocated clusters, and file slack using a forensic platform. The forensic analysis of the hard drives should not be limited in any way because at this point file fragments could be found all throughout the hard drive. Also, there is always a possibility that backups of the prior allocation tables

could be retrieved enhancing our ability to forensically recreate the metadata. The use of search terms is not conducive to a forensic search of the slack space of a hard drive because the information in the slack space is, by its very nature, fragmented, and portions of the data can be overwritten when the information is deleted. The information Equity Analytics, LLC seeks to locate and remove from the slack space in Mr. Lundin's hard drives would not be located in a "file text search" using search terms because Mr. Lundin deleted the very information we seek to locate and remove from his computer.

8.  Mr. Lundin has also proposed the use of search terms be limited to certain programs and file types. The difficulty in limiting a forensic search to certain programs and file types is that the type of program or file (e.g., .doc, .xml, .PDF, etc.) can be changed, and therefore disguised, without impairing the integrity of the information in the file. For example, because a file is identified as ".jpg" does not mean it is a photograph.

9.  Additionally, some information converted to a different format is not searchable using search terms. For example, if a person downloads an advertisement for an automobile, the use of search terms (such as the word "Jaguar") would identify the advertisement. However, if a picture or "screen shot" of the advertisement is taken, the use of search terms will most likely *not* identify the advertisement. Additionally, a .PDF file is not searchable, at all, using search terms.

10. I intend to use as a starting point for our forensic search the information provided by Mr. Lundin and Melissa Kirk setting forth the dates and times Mr. Lundin accessed Equity Analytics, LLC's salesforce.com account. Using that information as a roadmap, we should be able to locate, identify and remove the Equity Analytics, LLC information downloaded by Mr. Lundin.

11. The technical aspects of our forensic examination are set forth in the attached Exhibit "B" which is incorporated herein by reference.

12. If a "mirror image" of Mr. Lundin's hard drives is properly performed using the appropriate equipment and under the suitable conditions, it will be a perfect copy of the originals. That is, if properly executed, the mirror imaged hard drives will be a perfect duplication of the hard drives and it will be physically impossible for the mirror image to contain anything the hard drive does not and for there to be anything on the mirror images that is not on the original hard drive. I suggest that the image of the hard drives provided for the analysis be done with court-approved software such as EnCase or FTK. Additionally, the image should be a "bit-by-bit" image and not a logical acquisition" image.

I hereby state under the penalty of perjury that the foregoing is true and correct.

Executed on: *March 20, 2008*

_____
GERALD D. WEBER

Sworn to and Subscribed
Before me this 20 day
of March 2008.

_____
Notary Public

MAITEXA GALZAGORRY
COMM. #1671985
NOTARY PUBLIC · CALIFORNIA
MARIN COUNTY
My Comm. Expires June 28, 2010

4

EXHIBIT "A"

# Gerald D. Weber, CNA

| | |
|---|---|
| Title: | Director |
| Location: | 3 Badger Ct. |
| | Novato, CA 94949 |
| | 415 884-9235 |
| E-Mail: | gw@gdweber.com |

## Profile

During the past 13 years he has been the Director of G D Weber & Associates, a technical consulting organization. The primary business location is in Novato, California with a branch location in the Transamerica Pyramid in San Francisco's Financial District. The business provides local as well as national technical assistance for mid to large size financial corporations and law firms.

Mr. Weber's specialty is the examination of computers, disks and other digital data that has been used in the business of transacting securities. This specialty is the result of a unique career in both law enforcement as well as senior management experience within the securities industry. He had held the following positions:

- Police Officer, City of Modesto, Calif.
  Commendation from the Chief of Police for investigative performance.
  Commendation from the Stanislaus County District Attorney for testimony in a Capital murder trial.

- Executive Vice President, Great Western Financial Securities, Beverly Hills, Calif.
  Responsible for the implementation of PC based sales and compliance solutions.
  Responsible for compliance supervision and sales practice of NASD broker dealer.

- Senior Vice President, Bisys Brokerage, NASD broker dealer for The Bisys Group, Concord, Calif.
  Responsible for the implementation of technology based client management systems in branch securities sales offices throughout the Western United States, Hawaii and Guam.

- Has held the following securities professional licenses and registrations:
  California State Department of Insurance, Life and Disability Agent, Licensed provider of pre-licensing and continuing education programs.
  National Association of Securities Dealers: Series 6, Series 7, Series 22, Series 24, Series 63

In addition to working closely with attorneys Mr. Weber had also been trained and demonstrated excellence in many diverse areas of computer software, computer hardware, networking as well as data recovery and discovery. He is trained and certified by the Novell Corporation as a Certified Novell Administrator. Mr. Weber has over the last several years designed, implemented and maintained computer networks for several medium sized financial services organizations.

Mr. Weber obtained his Bachelor of Arts Degree in Criminal Justice from California State University in 1976.

EXHIBIT "B"

**Exhibit B**

1.  A complete forensic examination of Mr. Lundin's Macintosh laptop computer would involve the following steps:

Step 1: **Acquisition of the Computer and Imaging the Hard Drive** - After obtaining Mr. Lundin's Macintosh laptop computer, we would use a Mac/Apple target disk mode to image the entire disk contents to an external drive with the "dd" utility which enables read-only access to a firewire connected disk or, in the event the "dd" utility cannot be used the hard disk will be removed and a hardware "write blocker" will be utilized to gain access to the disk drive. Essentially, this means we will make an exact copy of the hard drive of Mr. Lundin's computer without actually accessing the hard drive. The image of the hard drive will be utilized to review current contents, history and activity without disturbing the integrity of the hard drive on Mr. Lundin's computer. We will also take a MD5 hash fingerprint of the hard drive of Mr. Lundin's computer and the image of that hard drive to confirm they are identical copies. Again, this will not impair the integrity of the information on Mr. Lundin's computer.

Step 2: **Analysis of the System** – We will analyze the imaged hard drive using EnCase and Mac Forensics Lab software. In the course of our examination for artifacts, we will focus on specific file types, including, dates and key words associated with the suspect activity, and conduct an extensive examination of all browser activities and history, as well as check the "keychain" for stored passwords.

Essentially, we will examine the hard drive on Mr. Lundin's computer using a protocol (described in technical terms above) designed to detect the alleged activity undertaken by Mr. Lundin which is the subject of this lawsuit, that is, the unauthorized

access by Mr. Lundin of Equity Analytics, LLC's confidential customer information on Salesforce.com using his Macintosh laptop computer. The EnCase and Mac Forensics Lab software we will use are standard in the industry for this type of analysis.

Step 3: **Summary** – We will arrange for disposition of relevant images (i.e., any confidential client information of Equity Analytics, LLC on the hard drive) and prepare a report of our findings and establishing the protocol followed and evidencing the safekeeping of the images.

2.  In the event confidential information of Equity Analytics, LLC is present on the hard drive of Mr. Lundin's computer, the disposition of that would be handled in the following manner:

Step 1: **Determine Files to Be Deleted** - Confidential client information of Equity Analytics LLC on the hard drive of Mr. Lundin's computer will be purged or deleted. Prior to this, a copy all files will be moved to a removable device for preservation.

Step 2: **Erase Any Equity Analytics, LLC Data** – We will use an industry standard process to overwrite all free disk space with random data to prevent the files that were deleted from being recovered after the examination. It is possible to recover deleted files; but filling of the disc space evacuated by the deleted files with random data (which will not impair the operation of the hard drive or the material stored thereon) will prevent the recovery of any deleted information.

Step 3: **Summary** – We will prepare a report memorializing the steps we took in removing any confidential client information of Equity Analytics LLC on the hard drive of Mr. Lundin's computer and certify the steps we took to preserve that information and to insure it could not be recovered from that hard drive.