**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| Equity Analytics, LLC, )<br>operating as Equity Methods, )<br>)<br>                Plaintiff, )<br>  v. )<br>)<br>Timothy D. Lundin, )<br>                Defendant. )<br>) | Civil Action No. 07-2033<br>(RCL/JMF) |

### DEFENDANT'S RESPONSE TO AFFIDAVIT OF GERALD D. WEBER

This Court ordered that the Plaintiff submit an affidavit from its forensic examiner that explained three matters. We address below each of the three matters that Mr. Weber, the Plaintiff's examiner, was required to explain.

1. (A) <u>Defendant's Proposed Limitations</u>: The Court directed the examiner to explain "[w]hy the limitations proposed by Defendant are unlikely to capture all the information Equity seeks". With respect, we do not believe that Plaintiff's examiner addressed the Court's question comprehensively. Defendant proposes that once the five hard drives are imaged, they be returned to Defendant after any Equity Analytics confidential information has been deleted and erased forevermore; that Plaintiff and Defendant establish search terms for data on the hard drives that is searchable, using keyword search terms; that if there may be data that is not susceptible to search, using keyword search terms, Plaintiff could search those areas carte blanche; and that, before any documents discovered during that search that the examiner believes relate to the issues in controversy, they first be produced to Defendant's counsel so that Defendant can assert attorney-client privilege or confidentiality, allowing the Court to first resolve any

disputes regarding any such documents. While the examiner states what is largely not in dispute, that is, data in slack space is not searchable using keyword search terms; fragmented data is not searchable using search terms; and non-searchable PDFs[1] are, by definition, not searchable using search terms; and that certain files, such as TIFF are not so searchable.

Plaintiff fails to differentiate between searchable and non-searchable PDFs. We have no issue with respect to data that all know is not searchable using search terms. The issue is active files that are searchable. In Exhibit B, the examiner seems to tell us that search terms will be used presumably on the active files on the five hard drives. So, it would appear that the Plaintiff concedes the central issue, that is, why in this case, unlike legions of other cases, a search of the active data, using search terms, is not the way to proceed. Plaintiff seemingly in Exhibit B concedes that key word search terms will be used, but inexplicably continues to not share with the Court, the Defendant, and Defendant's counsel what key word search terms it intends to use. This should not be countenanced as a matter of policy and practice.

The use of search terms to for finding responsive documents is endorsed by the Sedona Conference. "In many settings involving electronically stored information, reliance solely on a manual search process for the purpose of finding responsive documents may be infeasible or unwarranted. In such cases, the use of automated search methods should be viewed as reasonable, valuable, and even necessary." *The Sedona Conference, Best Practices Commentary on the Use of Search and Information Retrieval*, 8 THE SECONA CONF. J. 189, 208 (2008), *available at*

---

[1] It appears that there may be some dispute on the issue of whether PDFs are searchable. *See Is that PDF Searchable?*, Acrobat for Legal Professionals (2007), http://blogs.adobe.com/acrolaw/2007/02/is_that_pdf_sea.html.

http://www.thesedonaconference.org/content/miscFiles/Best_Practices_Retrieval_Methods_revised_cover_and_preface.pdf.  In cases such as this where Plaintiff proposes to search over 900 gigabytes of files, the Sedona Conference recommends the use of "initial searches by automated means to cull down a large universe of material to a more manageable size;" a manual review of this smaller subset of material could then be conducted.  *Id. at* 209.  Plaintiff proposes to search manually Plaintiff needs to show the Court what is so different in this case from the legions of reported ESI cases that precludes a search using search terms.

1. (B) <u>The New Operating System</u>: While we would agree that there is some possibility that the installation of the new operating system might make what was otherwise searchable using keyword terms, now not so searchable, it is plainly incorrect to state that every installation of a new operating system has that effect.  It does not on active data.  It does on data that has been deleted.  Dan Frakes, *Installing Leopard*, MACWORLD Jan. 2008, *available online at* http://www.macdeveloperjournal.com/article/60712-2/2007/10/leopard_install.html.  Clearly, Defendant has no objection whatsoever to the examiner determining whether the installation had the effect that he suggests that it ineluctably had, and if indeed the examiner is correct, then the data on whatever hard drives has been "corrupted" such that it can no longer be searched using keyword terms, can be search carte blanche by the Plaintiff's examiner.  If indeed the examiner is wrong, and the data is still searchable, then it should be searched using keyword terms.

2. <u>Terms of the Search</u>: The Court directed the Plaintiff's examiner to explain "[h]ow the search will be conducted".  Again, with respect, we do not believe that the examiner addresses the Court's inquiry in any meaningful way.  In Exhibit B to the Weber

Affidavit, the examiner states: "In the course of our examination for artifacts, we will focus on specific file types, including, [sic] dates and key words associated with the suspect activity..." From this description, it would appear that the examiner will have a specific search plan and will be using key word search terms, but inexplicably does not share them with us. Having said that, we reiterate that we do not believe that the Plaintiff has responded in a meaningful way to the Court's direction.

3. <u>Deletion and Erasure</u>: In Exhibit B, the examiner describes how information will be purged or deleted, and then erased. While Defendant has no issue with Plaintiff regarding its desire to erase forevermore from his hard drives anything thereon that legitimately constitutes confidential client information of Equity Analytics LLC. Obviously, Defendant is fully prepared to cooperate with Plaintiff in that regard. It seems that all that is needed is a time limit for Plaintiff to identify on the imaged hard drives what it believes should be erased forevermore from Defendant's original hard drives; then, that information should be disclosed to Defendant and his counsel so that they can have an opportunity to challenge what has been designated for erasure forevermore; then, the information should be erased forevermore from the original hard drives; and then, the original hard drives should be returned to Defendant. Some reasonable time parameters should be placed on this process. Defendant asks that the court appreciate the fact that, for several months now, he has not had access to the hard drives and, as earlier detailed, there is critical personal information on the hard drives.

4. <u>Mirror Images</u>: We believe that the Plaintiff has conceded that, so long as its examiner competently conducts the imaging of the five hard drives, the end result will be mirror images, and accordingly there is no reason to not return the original hard drives to the

    Defendant after any Equity Analytics confidential information has been erased forevermore.

5. <u>Experts</u>: The Court has opined in this case and in *United States v. O'Keefe*, 2008 WL 44972 (D.D.C. Feb. 18, 2008) that "determining whether a particular search methodology, such as keywords, will or will not be effective certainly requires knowledge beyond the ken of a lay person (and a lay lawyer) and requires expert testimony that meets the requirements of Rule 702 of the Federal Rules of Evidence." The Defendant is unemployed and does not have the economic wherewithal to afford to retain a computer forensic expert. Since the issuance of the Court's opinion and its publication and discussion on various blogs, any number of experts have proffered their services, but Defendant can afford none of them. While the fact that Defendant in this case cannot afford to retain an expert may not compromise his ability to defend himself as, at the end of the day, as the Court has ruled, the Plaintiff shall be responsible for the bill for whatever search is conducted. But, we must note a concern for how the Court's judgment will impact litigants in other cases. The Court's opinion could be read to require an expert to formulate search terms in any and all situations in which a hard drives or other electronic information was going to be searched. By requiring the formulation of search terms to be done exclusively by experts, which the Court's opinion could arguably be read as requiring, litigants could not engage in discovery of electronic without hiring an expert. This reading of the Court's opinion would increase the cost of litigation to all concerned, and given the disparity in resources that normally pertains in employment cases, raises genuine concerns as to whether the playing field may be even more so out of balance. This reading of the opinion would also severely and

inappropriately limit the role of counsel in discovery. Putting all responsibility for formulating search terms in the hand of an expert leaves no room for counsel to influence and direct discovery – a role from which counsel ought not be excluded. We are confident it is not the Court's intention to exclude counsel, and nor is it the intention of the Court to preclude counsel in other cases from agreeing on a search protocol, without having incurred the expense of competing experts. We understand the Court to hold that, where the parties are unable to come to an agreement on a search protocol, the Court will not, in an adversarial setting, impose a protocol without the benefit of an expert or competing expert submissions. In fact, a role for counsel in formulating search terms in electronic discovery is discussed by the Sedona Conference when they refer to "a close involvement of lead counsel" in directing the use of automated tools by the legal team. *The Sedona Conference, Best Practices Commentary on the Use of Search and Information Retrieval*, 8 THE SECONA CONF. J. 189, 199 (2008), *available at* http://www.thesedonaconference.org/content/miscFiles/Best_Practices_Retrieval_Methods_revised_cover_and_preface.pdf. *See also* Peter Laughlin, *The Art & Science of Culling Data by Keyword*, www.discoveryresources.org/pdfFiles/cullingData_052006.pdf (last visited March 27, 2008) (discussing "brainstorming sessions among a legal team" as the first step in the process of formulating search terms). We are confident that the Court has and will take the disparity in resources and need for counsel to be meaningfully involved in discovery into account in future cases and indeed that it would do so here were it necessary for the Defense.

## **CONCLUSION**

6

To summarize, the Defendant's position in light of the filing of the Weber affidavit, is as follows:

1. Plaintiff concedes that imaging will provide it with a perfect mirror image of Defendant's five hard drives.

2. Defendant continues to believe that, as the Plaintiff admittedly will be using a search protocol (s), it ought to disclose that protocol, in this case, to the Court and Defendant to assure that Plaintiff is not overstepping the boundaries that should protect Defendant's confidential, privileged and highly personal information from unnecessary search even by the examiner.  As a policy matter, in almost all cases, if indeed not all, the proposed search protocol should be disclosed so that the other side can participate in the formulation of the search protocol.  Remembering that there are many cases where costs are shared and many cases where an inappropriately framed search protocol would under-produce or over-produce information, the Court should require that there be a search protocol and that the formulation of the search protocol ordinarily be a collaborative process.

And, as stated in an earlier filing, the examiner should first disclose to Defendant and his counsel that which the examiner believes should be disclosed to Plaintiff and its counsel, providing Defendant with an opportunity to challenge the proposed disclosure by the examiner of information from his hard drives that is privileged, confidential, or highly personal, and wholly irrelevant to any issue in this matter.  In our judgment, the risk, both in this case and in future cases, that privileged attorney-client communications, for example, will be disclosed to one's adversary compels such a procedure.  Unless and until the Court of Appeals has definitively ruled that there is no risk of such

circumstances constituting a waiver of attorney-client privilege, protection of the privilege should be of paramount concern.

3. The Court's Order with respect to this matter should provide that the Plaintiff complete the imaging and examination within a discrete period of time.  We believe that the Court should establish a date certain for completion.

4. The Plaintiff, before the deletion and erasure of any information from Defendant's hard drives, should fully inform Defendant and his counsel of the information that it believes properly should be deleted and erased forevermore.  It should do so by providing Defendant and his counsel with access to such information without counsel or Defendant being able to retain copies of such information, but being able to sufficiently identify any such information for the purposes of a challenge regarding the proposed deletion and erasure of same.  Dates certain for making the information Plaintiff proposes to delete available for examination by Defendant and his counsel, and for any challenge thereto should be established by any Order of the Court.

5. Promptly after either an agreement as to what should be deleted or erased forevermore or the resolution of any challenge in that regard, a date certain should be established for the completion of deletion and erasure.

6. And, a date certain should be established for the return to Defendant of the original five hard drives.

7. As the imaged hard drives contain privileged, confidential and highly personal information of the Defendant, the Court's Order should have protective provisions designed to assure that the examiner does not communicate any such information to

Plaintiff or its counsel, and the Order should provide for the destruction of the imaged hard drives at the conclusion of the litigation.

                        Respectfully submitted,

                        /s/ Robert B. Fitzptatrick
                        Robert B. Fitzpatrick
                        D.C. Bar No. 040410
                        Robert B. Fitzpatrick, PLLC
                        1825 Connecticut Ave., N.W.
                        Suite 640
                        Washington, DC 20009
                        Telephone: (202) 588-5300
                        Fax: (202) 588-5023
                        Fitzpatrick.law@verizon.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that: on this 31st day of March, 2008, I electronically filed the foregoing DEFENDANT'S RESPONSE TO AFFIDAVIT OF GERALD D. WEBER, by using the CM/ECF system, which will, in turn, send a notice of electronic filing to the following Counsel of Record for Plaintiff Equity Analytics, LLC:

>Robert T. Shaffer, III Esquire
>Bar No. 04074
>Murphy & Shaffer LLC
>36 S. Charles Street
>Suite 1400
>Baltimore, Maryland 21201
>Phone: 410-783-7000
>Fax: 410-783-8823
>Email: rshaffer@murphyshaffer.com
>
>Joseph J. McAlee, Esq.
>Rubin Fortunato
>MCS Building
>10 South Leopard Road
>Paoli, Pennsylvania 19301
>Phone: (610) 408-2004
>Fax: (610) 854-4317
>Email: jmcalee@rubinfortunato.com
>
>Attorneys for Plaintiff

>/s/__Robert B. Fitzpatrick_____
>Bar No. 040410
>Robert B. Fitzpatrick, PLLC
>Universal Building South
>Suite 640
>1825 Connecticut Avenue, N.W.
>Washington, D.C. 20009-5728

                Phone: 202-588-5300
                Fax: 202-588-5023
                Email: Fitzpatrick.law@verizon.net

Attorney for Defendant